**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK I. SOKOLOW et al.,

         Plaintiffs,

    -against-

PALESTINE LIBERATION ORGANIZATION and
PALESTINIAN AUTHORITY,

         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MEMORANDUM DECISION
AND ORDER

04 Civ. 397 (GBD)

GEORGE B. DANIELS, United States District Judge:

This action returns to this Court on remand from the Second Circuit for the "limited purposes of determining the applicability of the Promoting Security and Justice for Victims of Terrorism Act of 2019, Pub. L. No. 116-94, div. J, tit. IX, § 903, 133 State. 3082 (the "PSJVTA")" and "any issues regarding its application to this case including its constitutionality." (Mandate of the U.S.C.A., ECF No. 1006, at 3.)

Following remand, the parties, submitted briefing concerning: (1) whether the factual predicates for application of the PSJVTA have been met; and (2) whether application of the statute is unconstitutional. On May 19, 2021, this Court heard argument from the parties. After oral argument, the parties filed supplementing briefing. (Defendants' Letter dated June 9, 2021, ECF No. 1031; Plaintiff's Letter dated July 6, 2021, ECF No. 1035.) On September 7, 2021, the Government intervened in this action and filed a memorandum of law in support of the constitutionality of the PSJVTA. (Government's Brief in Support of PSJVTA, ECF No. 1043). Defendant responded to the Government's brief. (Defendants' Letter dated September 20, 2021,

1

ECF No. 146.) Having considered the parties' arguments, the Court finds (1) that the factual predicate for application of the PSJVTA to this case has been established, and (2) that the statute is unconstitutional.

## I.   BACKGROUND[1]

Plaintiffs brought this action against Defendants in 2004, asserting causes of action for international terrorism pursuant to the Anti-Terrorism Act ("ATA"), codified in 18 U.S.C. 2333, and various state law claims. Defendants moved to dismiss the Complaint for lack of personal jurisdiction in July 2007. (Notice of Mot. to Dismiss Complaint, ECF No. 45.) In a memorandum decision and order dated September 30, 2008, Defendants' motion was denied without prejudice; Plaintiffs' cross motion for jurisdictional discovery was granted. (ECF No. 58.) Defendants renewed their motion to dismiss the Complaint on May 29, 2009. (Notice of Renewed Mot. to Dismiss Complaint, ECF No. 66.) In a memorandum decision and order dated March 11, 2010, this Court denied Defendants' motion without prejudice to renew at the close of jurisdictional discovery. (ECF No. 79.) Following the close of jurisdictional discovery in April 2010, Defendants renewed their motion. (Notice of Mot. to Dismiss Complaint, ECF No. 81.) In a memorandum decision and order dated March 30, 2011, Defendants' motion was denied. (ECF No. 87.) Defendant next moved to transfer venue to the District of Columbia or, in the alternative, to dismiss the case for lack of personal jurisdiction. (Notice of Mot. to Transfer Venue, ECF No. 93.) That motion was denied in an Order dated June 2, 2011. (ECF No. 122.)

Following the Supreme Court's decision in *Daimler AG v. Bauman*, Defendants moved for reconsideration of this Court's March 2011 Memorandum Decision and Order. (Notice of Mot. for Reconsideration, ECF No. 421.) Defendants' motion was denied in an Order dated June 16,

---

[1] The Court references only the underlying facts and procedural history necessary to explain the Court's decision.

2014. (ECF No. 537.)  Defendants moved for summary judgment, arguing that *Daimler* required

dismissal for lack of personal jurisdiction. (Notice of Mot. for Summary Judgment, ECF 496.)

Defendants' motion for summary judgment was denied.  (Memorandum Decision and Order dated

December 1, 2014, ECF No. 657.) Defendants petitioned the Second Circuit for expedited review

of the decision and for a stay of all district court proceedings pending review, including of the trial

scheduled for January 1, 2015.  (Notice of Motion for Stay of Proceedings, ECF No. 665.)

Defendants' petition and motion were denied. (Mandate dated January 28, 2015, ECF No., 777.)

Following a seven-week trial, a jury returned a verdict for Plaintiffs.  (Judgment, ECF No.

980.) Defendants appealed the verdict.  On appeal, the Second Circuit found that Defendants did

not have sufficient minimum contacts with the forum to allow the Court to exercise general or

specific personal jurisdiction over them. *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 323

(2d Cir. 2016) ("Waldman I").  The Second Circuit vacated the judgment and remanded the case

with instructions to dismiss the action for lack of personal jurisdiction "over defendants with

respect to the claims in this action." (*Id.* at 4.)

In reaction to the Second Circuit's decision in *Waldman*, Congress passed the Anti-

Terrorism Clarification Act ("ATCA").  Pub. L. No. 115-253, 132 Stat. 3183 (2018).  The ATCA

amended the ATA, providing that a defendant is deemed to have consented to personal jurisdiction

in a civil action under the ATA (1) by accepting US foreign assistance, or (2) by benefitting from

a waiver or suspension of 22 U.S.C. § 5205.[2]  After the passage of the law, Plaintiffs petitioned

the Second Circuit to recall its mandate in light of the ATCA.  The Second Circuit denied the

petition, finding that the factual predicates of the ATCA had not been satisfied because, at the time

of the appeal,  Defendants were not accepting U.S. foreign assistance, they were not benefitting

---

[2] Section 5202 forbids the PLO and its successors and agents from expending funds or maintaining facilities within the jurisdiction of the United States

from a waiver or suspension of Section 1003 of the ATA, nor were Defendants maintaining an office or facility within the jurisdiction of the United States. *Waldman v. Palestine Liberation Org.*, 925 F.3d 570, 573 (2d Cir. 2019) ("*Waldman II*"). Plaintiffs appealed Waldman II to the Supreme Court. While the appeal was pending, Congress passed the PSJVTA, expanding the bases on which a defendant can consent to personal jurisdiction. Specifically, the statute states that a defendant may consent to personal jurisdiction in cases under the ATA by (1) making payments to the designees of individuals imprisoned or killed as a result of committing any act of terrorism that injured or killed a U.S. citizen, and (2) maintaining any premises in the United States or conducting any activity while physically present in the United States on behalf of the Palestinian Authority or the Palestinian Liberation Organization. 18 U.S.C.A. § 2334(e)(1). Following the passage of the PSJVTA, the Supreme Court vacated and remanded the Second Circuit's decision in *Waldman II* for further consideration in light of the PSJVTA. *Sokolow v. Palestine Liberation Org.*, 140 S. Ct. 2714, 206 L. Ed. 2d 852 (2020).

## II.    THE PSJVTA APPLIES TO THIS CASE

The PSJVTA creates personal jurisdiction over defendants on the basis of deemed consent where a defendant makes payments that trigger the application of the statute, or where a defendant engages in certain activities in the United States. 18 U.S.C. § 2334(e)(1).

Plaintiffs argue that the PSJVTA is applicable to this case under 18 U.S.C §2334(e)(1)(A)(i) and (ii) because Defendants have made payments after April 18, 2020 to individuals convicted for, or killed while, committing acts of terrorism that harmed U.S. nationals. (Plaintiffs' Memorandum of Law ("Plaintiffs' Brief"), ECF No. 1018, at 8.) Plaintiffs also argue that the statute applies under 18 § 2334(e)(1)(B)(i) and (ii) because Defendants maintained an

4

office in New York City, provided counselor services, held press conferences, and updated social media accounts for "the State of Palestine" after January 4, 2020. (*Id.* at 17-18.)

In their opposition, Defendants argue that the office in New York City is not "in" the United States for the purpose of the statute because it is part of the Palestinian Liberation Organization's ("PLO") Mission to the United Nations ("U.N.") headquartered in New York. (Defendants Memorandum of Law ("Defendants' Opposition"), ECF No. 1021, at 11.) In support, Defendants point to 18 U.S.C. § 2334(e)(3)(B). (*Id.*) Defendants also argue that their U.S. activities may not be considered for the purpose of determining applicability of the PSJVTA because their activities have been undertaken exclusively for the purpose of conducting official business of the U.N. or, alternatively, fall under exemptions to the application of the statute in 18 U.S.C. § 2334(e)(3) because their activities are part of official UN business. (*Id.* at 13.) With regards to the payment prong of the statute, Defendants do not contest that they made payments triggering application of the PSJVTA under 18 § 2334(e)(1)(A). (Defendants' Opposition at 2.) Instead, Defendants argue that terrorism convictions that were obtained in Israeli military trials were not "fairly tried," as required for application of the statute based on 18 § 2334(e)(1)(A)(i). (*Id.*)

The PSJVTA is codified at 18 U.S.C. 2334(e)(1). The statute states that "for the purposes of any civil action under Section 2333 of this title, a defendant shall be deemed to have consented to personal jurisdiction in such civil action if, regardless of the date of the occurrence of the act of international terrorism upon which such civil action was filled," defendant engages in certain conduct. *Id.* The statute has two factual predicates which, if established, triggers applicability. Under the first factual predicate, the statute will apply where a defendant,

> [A]fter the date that is 120 days after the date of enactment of the [PSJVTA], makes any payment directly or indirectly -- (i) to any payee designated by any individual who, after being fairly tried or pleading guilty, has been imprisoned for committing any act of

5

> terrorism that injured or killed a national of the United States, if such payment is made by reason of such imprisonment; or (ii) to any family member of any individual, following such individual's death while committing an act of terrorism that injured or killed a national of the United States, if such payment is made by reason of the death of such individual [.]

18 U.S.C. 2334(e)(1)(A). The second factual predicate states that the statute will apply where a defendant,

> [A]fter 15 days after the date of enactment of the [PSJVTA] -- (i) continues to maintain any office, headquarters, premises, or other facilities or establishments in the United States; (ii) establishes or procures any office, headquarters, premises, or other facilities or establishments in the United States; or (iii) conducts any activity while physically present in the United States on behalf of the Palestine Liberation Organization or the Palestinian Authority.

18 U.S.C. 2334(e)(1)(A).

Plaintiffs have presented sufficient evidence to support the determination that Defendants have made payments after April 18, 2020 to the families of individuals killed while committing acts of terrorism, and that those payments were made because the individual engaged in terrorism, and that the terrorism harmed U.S. nationals.

Defendants have a practice of making payments to the families of individuals who died while committing acts of terrorism. The Palestinian Authority ("PA") has administered monthly payments to the families of individuals who died while committing acts of terrorism since at least 1994. (Declaration of Arieh Spitzen ("Spitzen Declaration"), ECF No. 1020, at ¶ 8, 10.) Defendants have control over the payment program and are responsible for its operation. (*Id.* at ¶ 28.) These payments, known as "shahids," are administered by the Institution for Families of Martyrs and the Injured (the "Institution"). (*Id.* at ¶ 12.) Payment of shahids is made pursuant to a "Social Examination" form submitted by the families of the deceased terrorists and reviewed by the Institution's staff. (*Id.* at ¶ 13.)

6

Defendants have continued making payments to the families of individuals killed while committing acts of terrorism after April 18, 2020. On June 8, 2020, the Prime Minister of Palestine stated "we continued to pay the prisoner and the families of the martyrs in full." (Middle East Research Institute Special Dispatch dated June 11, 2020, ECF No. 1020-7, at 1.) Additionally, reports from the State Department confirm that Defendants have continued making shahid payments since October 2020. (Article dated October 30, 2020, ECF No 1018-28, at 1.)

Defendants have made shahid payments to the families of individuals killed while committing acts of terrorism because of the death of the individual or "martyrdom." The families of individuals who died in terror attacks would not be eligible for shahid payments from the Institution absent the individual's death. (*Id.* at 12.) To receive shahid payments, the family of deceased terrorists must submit a Social Examination form with information about the deceased, the date, place, and circumstances of their death, and proof of their death. (*Id.* at ¶ 13.) In one such application, which was approved, the Institution staff wrote in a section titled "Department Recommendations" that the deceased "was martyred during a heroic martyrdom operation against the Zionists in the occupied city of Jerusalem" and "[t]herefore, we recommend that she is considered one of the al-Awsa Intifada martyrs according to the regulations." (*Id.* at 5.)

Defendants have made shahid payments on behalf of individuals who died during an act of terrorism that harmed injured U.S. nationals. For example, Wafa Idris died on January 27, 2020 while committing an act of terrorism. (Spitzen Declaration ¶ 45; Declaration of Kent A. Yalowitz ("Yalowitz Declaration"), ECF No. 1018, at ¶ 78.) The attack injured five U.S. nationals: Mark Sokolow, Elana Sokolow, Jamie Sokolow, Lauren Sokolow, and Rena Sokolow. (Yalowitz Declaration at ¶ 77.) An application for shahid was filed by Idris' mother with the Institution for Families of Martyrs and the Injured. (Wafa Idris Social Examination, ECF No. 1020-13, at 1.)

7

The application was approved. (*Id.* at 5.) A shahid payment of 600 shekels a month was allocated. (*Id.*)

As Plaintiffs presented sufficient evidence to show that Defendants conduct meets the factual predicate in 18 U.S.C. §2334(e)(1)(A)(ii) has been met, the PSJVTA is applicable to this case.[3]

## III. THE PSJVTA IS UNCONSTITUTIONAL

The PSJVTA states that Defendants are "deemed to consent to personal jurisdiction" if they meet any of the factual predicates identified in 18 U.S.C. 2334(e)(1)(A) or (B).

Defendant argues that "deemed consent" under the PSJVTA violates the due process clause of the Constitution because it does not reflect a free and voluntary relinquishment of Defendants' right to personal jurisdiction. (Defendants' Supplemental Brief on the PSJVTA in *Fuld et al. v. PLO et al.*, 20 Civ 3374, ECF No. 42, at 5.) Defendants contend that for the conduct identified in the PSJVTA to reflect an agreement to consent to the forum's exercise of personal jurisdiction over it, Defendants must receive a reciprocal benefit in exchange. (*Id.* at 6-7.) Since the statute does not confer any benefit on Defendants, Defendants argue that the PSJVTA represents an unconstitutional imposition of personal jurisdiction. (*Id.* at 7.)

In opposition, Plaintiffs argue that the PSJVTA's deemed consent provision establishes constitutionally valid personal jurisdiction over Defendants on the basis of implied consent. (Plaintiffs' Response to Defs.' Supp. Brief ("Plaintiffs' Response"), ECF No. 1035, at 4.) Plaintiffs argue that the doctrine of implied consent does not require that Defendants receive a reciprocal benefit for the Court's exercise of judicial power to be constitutional. (*Id.* at 6.)

---

[3] Having determined that the PSJVTA applies under 18 U.S.C. 2334(e)(1)(A)(ii), this Court does not reach the issue of whether the factual predicates in 18 U.S.C. 2334(e)(1)(A)(ii) or 18 U.S.C. 2334(e)(1)(B) have been met.

Plaintiffs also argue that Defendants' decision to engage in conduct identified by the statute was knowing and voluntary. (*Id.*) Plaintiffs contend that Defendants' decision to engage in the conduct that triggered the application of the PSJVTA amounts to a legal submission that Defendants have impliedly consented to personal jurisdiction. (Plaintiffs' Response at 4.)

Under the due process clause of the Constitution, courts may not exercise judicial power over a defendant where maintenance of the suit offends traditional notions of fair play and substantial justice. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014). The requirement that courts have personal jurisdiction over defendants represents a restriction on judicial power as a matter of individual liberty. *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982). As an individual right, personal jurisdiction can be waived by a defendant. (*Id.*) A court's exercise of personal jurisdiction over a defendant comports with due process where defendant has sufficient contacts with the forum to support general or specific personal jurisdiction. *Daimler*, 571 U.S. at 126. A court may also exercise personal jurisdiction over a defendant, even absent minimum contacts, where the defendant consents to the court's personal jurisdiction. *Ins. Corp. of Ireland*, 456 U.S. at 704.

The conduct identified in the PSJVTA is insufficient to support a finding that Defendants have consented to personal jurisdiction. A defendant may consent to a court's jurisdiction expressly or by implication. *Id.* at 703-4. Courts have found that a defendant constructively consents to a court's personal jurisdiction where defendants refuses to comply with discovery orders regarding personal jurisdiction. *Hammond Packing Co. v. State of Ark.*, 212 U.S. 322, 351 (1909). Specifically, where a defendant violates court orders requiring them to produce evidence material to the issue of personal jurisdiction, courts have taken that conduct as a legal submission to support a presumption of the fact that "the refusal to produce evidence material to the

9

administration of due process was but an admission of the want of merit in the asserted defense." *Id.* The *Hammond* Court found that this presumption was like "many other presumptions attached by law to the failure of a party to a cause to specially set up or assert his supposed rights in the mode prescribed by law." *Id.* The presumption did not violate due process because it was based on the "undoubted right of the lawmaking power to create a presumption of fact as to the bad faith and untruth of an answer to be gotten from the suppression or failure to produce the proof ordered, when such proof concerned the rightful decision of the cause." *Id.*

Here, the parties do not dispute that Defendants' conduct in making payments to individuals killed while committing acts of terrorism that killed U.S. Nationals triggers application of the PSJVTA. (*Supra* at II.) This conduct is wholly unrelated to any court order in this litigation. Jurisdictional discovery took place in this case in 2008. Defendants did not violate any discovery orders. Accordingly, Defendants actions in violation of the statute is insufficiently related to the litigation to enable the court to exercise constitutionally valid personal jurisdiction over Defendants on the basis of constructive or implied consent.[4]

Plaintiffs argue that Defendants' decision to make payments that trigger the application of the PSJVTA represents a legal submission to this Court that Defendants have impliedly consented to personal jurisdiction. (Plaintiffs' Response at 4.) In support of its argument, Plaintiffs cite *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee.* In *Ins. Corp. of Ireland*, the trial court

---

[4] *See also Fuld v. Palestine Liberation Org.*, No. 20-CV-3374 (JMF), 2022 WL 62088, at *7 (S.D.N.Y. Jan. 6, 2022) (finding the PSJVTA did not constitutionally provide for personal jurisdiction over the Palestine Liberation Organization and the Palestinian Authority on the basis of implied consent because "the conduct to which Congress attached jurisdictional consequence in the PSJVTA is not 'of such a nature as to justify the fiction' that [d]efendants actually consented to the jurisdiction of the Court" and inferring consent from 'martyr payments' "that have no direct connection to the United States, let alone litigation in a United States court – would strain the idea of consent beyond its breaking point").

10

sanctioned the defendant for violating discovery orders under Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure by taking as established the fact that the defendant in that case had sufficient contacts with the forum to support personal jurisdiction, which is what plaintiff was trying to prove through discovery. *Ins. Corp of Ireland*, 456 U.S. at 705-7. Affirming the trial court, the Supreme Court found that the sanction did not violate due process because the facts of the case supported a *Hammond Packing* presumption, and "the sanction was specifically related to the particular 'claim' at issue in the order to provide discovery." (*Id.* at 706.) The conduct Plaintiffs point to, making shahid payments, does not support a *Hammond Packing* presumption.[5] The conduct at issue is unrelated to the underlying issues in the litigation, nor would the sanction of finding personal jurisdiction be specifically related to any court order. *Contra Ins. Corp of Ireland*, 456 U.S. at 703-4 (no due process violation where personal jurisdiction is based on a presumption of fact resulting from defendant's refusal to comply with discovery orders). Accordingly, finding that Defendants have impliedly consented to personal jurisdiction based solely on their conduct in violation of the PSJVTA would violate the due process clause of the constitution.[6]

---

[5] Nor could this Court make such a finding, as the Second Circuit already held, that there were insufficient contacts to support general or specific jurisdiction in this case. *Waldman I*, 835 F.3d at 344 (finding that general jurisdiction did not exist over defendants because they were not at home in New York; specific jurisdiction did not exist because the terror attacks at issue were not expressly aimed at the United States, deaths and injuries suffered by U.S. nationals were random, and lobbying activities regarding American policy toward Israel are insufficiently suit-related).

[6] In addition to its support for Plaintiff's arguments, in its memorandum of law in intervention, the Government contends that federal courts must accord deference to the PSJVTA because the statute represents an enactment by Congress and the President in the field of foreign affairs. (Govt. Mem ISO PSJVTA at 13.) The Government cites *Bank Marzai v. Peterson* in support. In that case, the Supreme Court noted that "[i]n pursuit of foreign policy objectives, the political branches have regulated specific foreign-state assets by, inter alia, blocking them or governing their availability for attachment . . . Such measures have never been rejected as invasions of the Article III judicial power." *Bank Markazi v. Peterson*, 578 U.S. 212, 235 (2016). As this Court finds that the PSJVTA is unconstitutional for its violation

11

## IV.    CONCLUSION

The PSJVTA of 2019 is applicable to this case.  The statute is unconstitutional.

Dated: March 10, 2022
      New York, New York

SO ORDERED.

*George B. Daniels*

GEORGE B. DANIELS
United States District Judge

_____

of the due process clause, not for its invasion of the separation of powers, the Government's argument is inapplicable.