# 15-3135(L)

## 15-3151(XAP), 22-1060(CON)

*To Be Argued By*:
BENJAMIN H. TORRANCE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket Nos. 15-3135(L), 15-3151(XAP), 22-1060(CON)

◄◆◆◆►

EVA WALDMAN, REVITAL BAUER, individually and as natural guardian of plaintiffs Yehonathon Bauer, Binyamin Bauer, Daniel Bauer and Yehuda Bauer, SHAUL MANDELKORN, NURIT MANDELKORN, OZ JOSEPH GUETTA, minor, by his next friend and guardian Varda Guetta, VARDA GUETTA, individually and as natural guardian of plaintiff Oz Joseph Guetta, NORMAN GRITZ, individually and as personal representative of the Estate of David Gritz, MARK I. SOKOLOW, individually and as a natural guardian of Plaintiff Jamie A. Sokolow, RENA M. SOKOLOW, individually and as a natural guardian of plaintiff Jamie A. Sokolow, JAMIE A. SOKOLOW, minor, by her next friends and guardian Mark I. Sokolow and Rena M. Sokolow,

*(Caption continued on inside cover)*

———————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR INTERVENOR-APPELLANT

BRIAN M. BOYNTON,
*Principal Deputy
Assistant Attorney
General*
SHARON SWINGLE,
*Attorney, Appellate Staff
Civil Division
Department of Justice*

DAMIAN WILLIAMS,
*United States Attorney for the
Southern District of New York,
Attorney for Intervenor-Appellant.*
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2703

BENJAMIN H. TORRANCE,
*Assistant United States Attorney,
Of Counsel.*

LAUREN M. SOKOLOW, ELANA R. SOKOLOW, SHAYNA EILEEN GOULD, RONALD ALLAN GOULD, ELISE JANET GOULD, JESSICA RINE, SHMUEL WALDMAN, HENNA NOVACK WALDMAN, MORRIS WALDMAN, ALAN J. BAUER, individually and as natural guardian of plaintiffs Yehonathon Bauer, Binyamin Bauer, Daniel Bauer and Yehuda Bauer, YEHONATHON BAUER, minor, by his next friend and guardians Dr. Alan J. Bauer and Revital Bauer, BINYAMIN BAUER, minor, by his next friend and guardians Dr. Alan J. Bauer and Revital Bauer, DANIEL BAUER, minor, by his next friend and guardians Dr. Alan J. Bauer and Revital Bauer, YEHUDA BAUER, minor, by his next friend and guardians Dr. Alan J. Bauer and Revital Bauer, RABBI LEONARD MANDELKORN, KATHERINE BAKER, individually and as personal representative of the Estate of Benjamin Blutstein, REBEKAH BLUTSTEIN, RICHARD BLUTSTEIN, individually and as personal representative of the Estate of Benjamin Blutstein, LARRY CARTER, individually and as personal representative of the Estate of Diane ("Dina") Carter, SHAUN COFFEL, DIANNE COULTER MILLER, ROBERT L COULTER, JR., ROBERT L. COULTER, SR., individually and as personal representative of the Estate of Janis Ruth Coulter, CHANA BRACHA GOLDBERG, minor, by her next friend and guardian Karen Goldberg, ELIEZER SIMCHA GOLDBERG, minor, by her next friend and guardian Karen Goldberg, ESTHER ZAHAVA GOLDBERG, minor, by her next friend and guardian Karen Goldberg, KAREN GOLDBERG, individually, as personal representative of the Estate of Stuart Scott Goldberg/natural guardian of plaintiffs Chana Bracha Goldberg, Esther Zahava Goldberg, Yitzhak Shalom Goldberg, Shoshana Malka Goldberg, Eliezer Simcha Goldberg, Yaakov Moshe Goldberg, Tzvi Yehoshua Goldberg, SHOSHANA MALKA GOLDBERG, minor, by her next friend and guardian Karen Goldberg, TZVI YEHOSHUA GOLDBERG, minor, by her next friend and guardian Karen Goldberg, YAAKOV MOSHE GOLDBERG, minor, by her next friend and guardian Karen Goldberg, YITZHAK SHALOM GOLDBERG, minor, by her next friend and guardian Karen Goldberg, NEVENKA GRITZ, sole heir of Norman Gritz, deceased,

*Plaintiffs-Appellants,*

UNITED STATES OF AMERICA,

*Intervenor-Appellant,*

—v.—

PALESTINE LIBERATION ORGANIZATION, PALESTINIAN AUTHORITY, aka Palestinian Interim Self-Government Authority and/or Palestinian Council and/or Palestinian National Authority,

*Defendants-Appellees,*

YASSER ARAFAT, MARWIN BIN KHATIB BARGHOUTI, AHMED TALEB MUSTAPHA BARGHOUTI, AKA Al-Faransi, NASSER MAHMOUD AHMED AWEIS, MAJID AL-MASRI, AKA Abu Mojahed, MAHMOUD AL-TITI, MOHAMMED ABDEL RAHMAN SALAM MASALAH, AKA Abu Satkhah, FARAS SADAK MOHAMMED GHANEM, AKA Hitawi, MOHAMMED SAMI IBRAHIM ABDULLAH, ESTATE OF SAID RAMADAN, deceased, ABDEL KARIM RATAB YUNIS AWEIS, NASSER JAMAL MOUSA SHAWISH, TOUFIK TIRAWI, HUSSEIN AL-SHAYKH, SANA'A MUHAMMED SHEHADEH, KAIRA SAID ALI SADI, ESTATE OF MOHAMMED HASHAIKA, deceased, MUNZAR MAHMOUD KHALIL NOOR, ESTATE OF WAFA IDRIS, deceased, ESTATE OF MAZAN FARITACH, deceased, ESTATE OF MUHANAD ABU HALAWA, deceased, JOHN DOES, 1-99, HASSAN ABDEL RAHMAN,

*Defendants.*

**TABLE OF CONTENTS**

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . .  1

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . .  3

Issue Presented . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . .  3

    A.  Procedural History . . . . . . . . . . . . . . . . . . . .  3

    B.  Statutory Background . . . . . . . . . . . . . . . .  4

    C.  The Present Action and the
        District Court's Opinions . . . . . . . . . . . . . .  11

Summary of Argument . . . . . . . . . . . . . . . . . . . . . .  15

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

The PSJVTA Is Consistent with Constitutional
    Requirements of Due Process . . . . . . . . . . . . . .  17

    A.  The PSJVTA Establishes Personal
        Jurisdiction Based on Defendants'
        Knowing and Voluntary Consent . . . . . . .  18

    B.  The PSJVTA, as an Enactment in the
        Field of Foreign Affairs, Must Be
        Accorded Deference . . . . . . . . . . . . . . . . . .  20

    C.  The District Court Erroneously Applied an
        Unduly Stringent Consent Standard . . . .  26

ii

PAGE

D. Due Process Standards of the Fifth
   Amendment, Not the Fourteenth
   Amendment, Apply to the PSJVTA . . . . . .  30

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  36

iii

## TABLE OF AUTHORITIES

*Cases*:

*ACLU v. Department of Defense*,
  901 F.3d 125 (2d Cir. 2018) . . . . . . . . . . . . . . . . 25

*Bank Markazi v. Peterson*,
  578 U.S. 212 (2016). . . . . . . . . . . . . . . . . . . . . . . . 20

*Bristol-Myers Squibb Co. v. Superior Court*,
  137 S. Ct. 1773 (2017). . . . . . . . . . . . . . . . . . . . 31, 32

*Brown v. Lockheed Martin Corp.*,
  814 F.3d 619 (2d Cir. 2016) . . . . . . . . . .  19, 28, 29

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985). . . . . . . . . . . . . . . .  18, 19, 20

*Burnet v. Brooks*,
  288 U.S. 378 (1933). . . . . . . . . . . . . . . . . . . . . . . 33

*Center for Constitutional Rights v. CIA*,
  765 F.3d 161 (2d Cir. 2014) . . . . . . . . . . . . . . . . 23

*Chew v. Dietrich*,
  143 F.3d 24 (2d Cir. 1998) . . . . . . . . . . . . . . . . . 31

*City of New York v. Mickalis Pawn Shop, LLC*,
  645 F.3d 114 (2d Cir. 2011) . . . . . . . . . . . . . . . . 28

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014). . . . . . . . . . . . . . . . . . . . . . 6, 20

*Dorchester Financial Securities, Inc. v.*
  *Banco BRJ, S.A.*,
  722 F.3d 81 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . 19

iv

PAGE

*Douglass v. Nippon Yusen Kabushiki Kaisha,*
    46 F.4th 226 (5th Cir. 2022) . . . . . . . . . .   32, 34, 35

*Durand v. Hollins,*
    8 F. Cas. 111 (C.C.S.D.N.Y. 1860) . . . . . . . . . . . 24

*EEOC v. Arabian American Oil Co.,*
    499 U.S. 244 (1991) . . . . . . . . . . . . . . . . . . . . . . . . 33

*Estate of Klieman v. PA,*
    467 F. Supp. 2d 107 (D.D.C. 2006) . . . . . . . . . . . . 6

*Ford Motor Co. v. Montana Eighth*
    *Judicial District Court,*
    141 S. Ct. 1017 (2021) . . . . . . . . . . . . . . . . . . . 18, 25

*Fuld v. PLO,*
    578 F. Supp. 3d 577 (S.D.N.Y. 2002) . . .   14, 29, 30

*Haig v. Agee,*
    453 U.S. 280 (1981) . . . . . . . . . . . . . . . . . . . . . . . 24

*Holder v. Humanitarian Law Project,*
    561 U.S. 1 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Insurance Corporation of Ireland v.*
    *Compagnie des Bauxites de Guinee,*
    456 U.S. 694 (1982) . . . . . . . . . . . . . . . . . . . *passim*

*International Shoe Co. v. Washington,*
    326 U.S. 310 (1945) . . . . . . . . . . . . . . . .   18, 25, 29

*J. McIntyre Machinery, Ltd. v. Nicastro,*
    564 U.S. 873 (2011) . . . . . . . . . . . . . . . . . . . . . . . 32

*Jesner v. Arab Bank, PLC,*
    138 S. Ct. 1386 (2018) . . . . . . . . . . . . . . . . . . . . . 34

v

PAGE

*Kleindienst v. Mandel,*
 408 U.S. 753 (1972) . . . . . . . . . . . . . . . . . . . . . . . 33

*Klieman v. PA,*
 82 F. Supp. 3d 237 (D.D.C. 2015) . . . . . . . . . . . . 6

*Klieman v. PA,*
 923 F.3d 1115 (D.C. Cir. 2019) . . . . . . . . . . . . . 7, 8

*Klinghoffer v. SNC Achille Lauro Ed*
 *Altri-Gestione Motonave Achille Lauro,*
 937 F.2d 44 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . 7

*Knox v. PLO,*
 248 F.R.D. 420 (S.D.N.Y. 2008) . . . . . . . . . . . . . . 6

*Landgraf v. USI Film Products,*
 511 U.S. 244 (1994) . . . . . . . . . . . . . . . . . . . . . . . 30

*Livnat v. PA,*
 851 F.3d 45 (D.C. Cir. 2017) . . . . . . . . . . .  6, 31, 33

*Malloy v. Hogan,*
 378 U.S. 1 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Mattel, Inc. v. Barbie-Club.com,*
 310 F.3d 293 (2d Cir. 2002) . . . . . . . . . . . . . . . . 29

*Moran v. Burbine,*
 475 U.S. 412 (1986) . . . . . . . . . . . . . . . . . . . . . . . 27

*Oregon v. Elstad,*
 470 U.S. 298 (1985) . . . . . . . . . . . . . . . . . . . . . . . 27

*Roell v. Withrow,*
 538 U.S. 580 (2003) . . . . . . . . . . . . . . . . . . . . . . . 27

vi

PAGE

*Schooner Exchange v. McFaddon*,
   11 U.S. (7 Cranch) 116 (1812) . . . . . . . . . . . . . . . 33

*Shatsky v. PLO*,
   18 Civ. 12355, 2022 WL 826409
   (S.D.N.Y. Mar. 18, 2022) . . . . . . . . . . . . . . . . . . 14

*Snyder v. Massachusetts*,
   291 U.S. 97 (1934) . . . . . . . . . . . . . . . . . . . . . . . . 25

*Sokolow v. PLO*,
   No. 04 Civ. 397, 2011 WL 1345086
   (S.D.N.Y. Mar. 30, 2011) . . . . . . . . . . . . . . . . . 6, 12

*Sokolow v. PLO*,
   No. 04 Civ. 397, 2014 WL 6811395
   (S.D.N.Y. Dec. 1, 2014) . . . . . . . . . . . . . . . . . . . . 12

*United States v. Curtiss-Wright Export Corp.*,
   299 U.S. 304 (1936) . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. O'Brien*,
   926 F.3d 57 (2d Cir. 2019) . . . . . . . . . . . . . . . . . 27

*United States v. Velez*,
   354 F.3d 190 (2d Cir. 2004) . . . . . . . . . . . . . . . . 27

*United States v. Wong Kim Ark*,
   169 U.S. 649 (1898) . . . . . . . . . . . . . . . . . . . . . . . 24

*United Student Aid Funds, Inc. v. Espinosa*,
   559 U.S. 260 (2010) . . . . . . . . . . . . . . . . . . . . . . . 25

*In re Vivendi, S.A. Securities Litigation*,
   838 F.3d 223 (2d Cir. 2016) . . . . . . . . . . . . . . . . 31

vii

PAGE

*Waldman v. PLO,*
    835 F.3d 317 (2d Cir. 2016) . . . . . . . . . . . . *passim*

*Waldman v. PLO,*
    925 F.3d 570 (2d Cir. 2018) . . . . . . . . . . 4, 7, 8, 12

*Wellness Int'l Network v. Sharif,*
    575 U.S. 665 (2015) . . . . . . . . . . . . . . . . . . . . . 19, 27

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980) . . . . . . . . . . . . . . . . . . . . . 32, 33

*Statutes*:

8 U.S.C. § 1189 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 2333 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

18 U.S.C. § 2334 . . . . . . . . . . . . . . . . . . . . . . . . *passim*

22 U.S.C. § 2378b . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

22 U.S.C. § 2378c-1 . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

22 U.S.C. § 5201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

22 U.S.C. § 5202 . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 22

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Pub. L. No. 102-572 . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pub. L. No. 103-125 . . . . . . . . . . . . . . . . . . . . . . . . 22

Pub. L. No. 109-446 . . . . . . . . . . . . . . . . . . . . . . . . 23

Pub. L. No. 115-141 . . . . . . . . . . . . . . . . . . . . 9, 23, 24

viii

PAGE

Pub. L. No. 115-253 . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Pub. L. No. 116-94 . . . . . . . . . . . . . . . . . . . . . . . . . 8

Pub. L. No. 117-103 . . . . . . . . . . . . . . . . . . . . . . . 23

*Legislative History*:

165 Cong. Rec. S7182 . . . . . . . . . . . . . . . . . . . . . 10, 21

165 Cong. Rec. S7183 . . . . . . . . . . . . . . . . . . . . . . . 11

166 Cong. Rec. S627 . . . . . . . . . . . . . . . . . . . . . . . . 21

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

### Docket No. 15-3135(L),
### 15-3151(xap), 22-1060(con)

---

## BRIEF FOR INTERVENOR-APPELLANT

---

## Preliminary Statement

Over the past four decades, Congress has acted re-
peatedly to ensure that United States nationals
harmed by acts of international terrorism can vindi-
cate their interests in United States courts and receive
just compensation for their injuries. This appeal con-
cerns an action brought by the families of U.S. victims
of terrorist attacks in Jerusalem under the Anti-Ter-
rorism Act of 1992 ("ATA"), which provides civil dam-
ages remedies to U.S. nationals injured by terrorist
acts abroad. In order to make the ATA's remedies func-
tion effectively—and in light of findings in other cases
that the defendants in this case, the Palestinian Au-
thority ("PA") and the Palestine Liberation Organiza-
tion ("PLO"), were not subject to personal jurisdiction
in U.S. courts—Congress has enacted the Promoting
Security and Justice for Victims of Terrorism Act of
2019 ("PSJVTA"). The PSJVTA specifies that if the PA
and PLO engage in certain activities, they will be
deemed to have consented to personal jurisdiction in
civil cases brought under the ATA.

2

The district court held that the deemed-consent provisions of the PSJVTA do not comply with the limits of due process, but that judgment should be reversed. Consent is undeniably a valid basis for personal jurisdiction, and the Supreme Court and this Court have held that a defendant may subject itself to the authority of the courts through a variety of means, expressly or implicitly, constructively, or even through inadvertence. In this case, Congress clearly stated what knowing and voluntary activities would be deemed to be consent to personal jurisdiction and gave defendants the opportunity to cease those activities before they could be haled into court. And Congress narrowly limited that consent to ATA actions for acts of terrorism that harmed U.S. nationals, where the defendants are the PA, the PLO, and their affiliates or successor entities. Moreover, the knowing and voluntary actions that will be deemed consent to jurisdiction —payments made to family members or designees of those who injure or kill U.S. nationals in terrorist attacks, or certain activities of the PA or PLO in the United States—are closely linked to the ATA claims that may be asserted against them. Congress's enactment was in accordance with the broad power of the political branches to act in the field of foreign affairs, a power Congress has repeatedly invoked in addressing issues of international terrorism, including in connection with the relationship between the United States and the PA and PLO. Given the limits on the deemed-consent provisions, the authority of Congress and the Executive Branch in conducting foreign affairs and the deference the courts owe the political branches in that area, and the strong national interest in

3

vindicating the interests of U.S. victims of terrorism and providing them just compensation, the PSJVTA's deemed-consent provisions should be upheld as consistent with due process.

## Jurisdictional Statement

The district court had subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the claims arise under the laws of the United States. This appeal arises from the final order of the district court entered on March 10, 2022. (Special Appendix ("SPA") 1–12). The government, which intervened in the district court, filed a timely notice of appeal of that order on May 9, 2022. (SPA 26, 45). This Court has jurisdiction over that appeal under 28 U.S.C. § 1291.

## Issue Presented

Whether the provisions of the PSJVTA, stating that certain activities by the PA, PLO, or affiliates or successor entities will be deemed consent to a district court's exercise of personal jurisdiction over those defendants in civil ATA actions, are consistent with the Due Process Clause of the Fifth Amendment.

## Statement of the Case

### A.  Procedural History

Plaintiffs filed this action on January 16, 2004. (Joint Appendix ("JA") 55, 274). Extensive proceedings in the district court—partly recited by this Court in *Waldman v. PLO*, 835 F.3d 317, 325–27 (2d Cir. 2016), *cert. denied*, 138 S. Ct. 1438 (2018)—led to a jury verdict in plaintiffs' favor. The district court (George B.

4

Daniels, J.) entered final judgment for plaintiffs on October 1, 2015. (JA 267).

Defendants appealed and this Court vacated the judgment. *Waldman*, 835 F.3d 317. In 2018, following the legislative enactments discussed below, plaintiffs filed a motion to recall this Court's mandate, which was denied. *Waldman v. PLO*, 925 F.3d 570 (2d Cir. 2018). On April 27, 2020, the Supreme Court vacated that determination and remanded to this Court, 140 S. Ct. 2714 (2020), which in turn remanded to the district court "for the limited purpose" of considering the issues now raised in this appeal (SPA 32–33).

On remand, the government intervened. (SPA 41). The district court entered a final order on March 10, 2022, concluding that the PSJVTA is unconstitutional. (SPA 42); __ F. Supp. 3d __, 2022 WL 719261 (S.D.N.Y. 2002). This Court, responding to a request by defendants, reinstated the prior appeal on March 24, 2022. (SPA 42–43). The same day, plaintiffs filed a motion for reconsideration in the district court, which was denied on June 15, 2002. (SPA 43, 46); __ F. Supp. 3d __, 2022 WL 2159351 (S.D.N.Y. 2002). The government filed a timely notice of appeal from the final order on May 9, 2022. (SPA 26, 45).

## B. Statutory Background

In 1992, in order "to develop a comprehensive legal response to international terrorism," Congress enacted the ATA, which creates a civil damages remedy for United States nationals injured by an act of international terrorism. H.R. Rep. No. 102-1040, at 5 (1992) ("1992 House Report"); *see* Pub. L. No. 102-572,

5

§ 1003(a), 106 Stat. 4506, 4521–24 (1992) (adding 18
U.S.C. §§ 2331, 2333–2338). Where the act of interna-
tional terrorism was "committed, planned, or author-
ized by an organization that had been designated as a
foreign terrorist organization under [8 U.S.C. § 1189],"
"liability may be asserted as to any person who aids
and abets, by knowingly providing substantial assis-
tance, or who conspires with the person who commit-
ted such an act of international terrorism." 18 U.S.C.
§ 2333(d)(2).

In the years that followed, courts—including the
district court in this case, before the 2015 trial and
judgment—regularly exercised personal jurisdiction in
ATA cases against the PLO and the PA,[1] holding that

_____

[1]  The PLO has been recognized by the United
Nations as the representative of the Palestinian
people; the PA was created pursuant to the 1993 Oslo
Accords to exercise interim governance authority for
the Palestinian people in Gaza and the West Bank.
The United States does not recognize either the PA or
PLO as a sovereign government. As a matter of histor-
ical practice, Congress and the Executive Branch have
worked together closely to determine U.S. policies with
respect to those entities. At present, the United States
is cooperating on training of PA security forces, a key
partner of the United States and Israel in stabilizing
the West Bank and combating terrorism. The United
States is also engaged with the PA in serious discus-
sions on how to reform or end the prisoner and "mar-
tyr" payment system that underlies one of the bases
for deemed personal jurisdiction under the PSJVTA.

6

"the totality of activities in the United States by the
PLO and the PA justifies the exercise of general per-
sonal jurisdiction." *Sokolow v. PLO*, No. 04 Civ. 397,
2011 WL 1345086, at *3 (S.D.N.Y. Mar. 30, 2011), *va-
cated sub nom. Waldman*, 835 F.3d 317; *accord, e.g.,
Knox v. PLO*, 248 F.R.D. 420, 427 (S.D.N.Y. 2008);
*Estate of Klieman v. PA*, 467 F. Supp. 2d 107, 113
(D.D.C. 2006).

   In 2014, the Supreme Court clarified that a state
could exercise general personal jurisdiction over a non-
resident defendant under the Fourteenth Amend-
ment's Due Process Clause only when the defendant
was "essentially at home in the forum," and explained
that for non-natural persons that was usually limited
to the place of incorporation or principal place of busi-
ness. *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014)
(quotation marks omitted). Courts (including this
Court in the present case) applied the *Daimler* stand-
ards to pending ATA cases and concluded that the PA
and PLO were not "at home" in the United States and
thus not subject to general jurisdiction. *Waldman*, 835
F.3d at 337; *Livnat v. PA*, 851 F.3d 45, 48–52 (D.C. Cir.
2017); *Klieman v. PA*, 82 F. Supp. 3d 237, 246 (D.D.C.
2015). Those courts also declined to exercise specific
personal jurisdiction (arising out of the nonresident
defendant's contacts with the forum) because "these
[terrorist] actions, as heinous as they were, were not
sufficiently connected to the United States to provide
specific personal jurisdiction in the United States."
*Waldman,* 835 F.3d at 337; *accord Livnat*, 851 F.3d at
57; *Klieman*, 82 F. Supp. 3d at 248–49.

7

Congress responded in 2018 by enacting the Anti-Terrorism Clarification Act ("ATCA"). Section 4 of the ATCA provides that "for purposes of any civil action" under the ATA, "a defendant shall be deemed to have consented to personal jurisdiction in such civil action if," after January 31, 2019, it either accepts specified forms of foreign assistance or maintains an office within the United States pursuant to a waiver or suspension of 22 U.S.C. § 5202 (which prohibits the PLO from maintaining an office in the United States). Pub. L. No. 115-253, § 4, 132 Stat. 3183, 3184 (2018) (adding 18 U.S.C. § 2334(e)).

After the ATCA's enactment, the PA and PLO structured their affairs to avoid consenting to jurisdiction. On December 26, 2018, the PA informed the Secretary of State that it was declining to accept the forms of foreign assistance listed in the ATCA. The PLO does not receive U.S. foreign assistance. The PLO continues to occupy its United Nations Observer Mission in New York, but that office does not require any waiver or suspension of 22 U.S.C. § 5202. *See Klinghoffer v. SNC Achille Lauro Ed Altri-Gestione Motonave Achille Lauro*, 937 F.2d 44, 46 (2d Cir. 1991). Nor has the PLO operated any other office in the United States pursuant to a waiver or suspension of 22 U.S.C. § 5202 since before the ATCA's enactment.

Because the ATCA's factual predicates were not satisfied, this Court and the D.C. Circuit continued to hold that U.S. courts could not exercise personal jurisdiction over the PA and PLO in the cases in question. *Waldman*, 925 F.3d at 575, *vacated*, 140 S. Ct. 2714 (2020); *Klieman v. PA*, 923 F.3d 1115, 1128 (D.C. Cir.

8

2019), *vacated*, 140 S. Ct. 2713 (2020). Concluding that "[t]he plaintiffs have not shown that either factual predicate of Section 4 of the ATCA has been satisfied," those courts did not analyze the constitutionality of the ATCA's provisions governing personal jurisdiction. *Waldman*, 925 F.3d at 574; *accord Klieman*, 923 F.3d at 1128.

Plaintiffs in this case and the *Klieman* case filed petitions for certiorari in the Supreme Court. While those petitions were pending, Congress enacted the PSJVTA. Pub. L. No. 116-94, § 903, 133 Stat. 2534, 3082 (2019). Among other things,[2] the PSJVTA supersedes the personal jurisdiction provisions in the ATCA. The Act defines "defendant" to mean "the Palestinian Authority," "the Palestine Liberation Organization," and their successors or affiliates. *Id.* § 903(c)(1)(A). The Act also removed the condition that accepting specified foreign assistance would constitute consent.

In addition, the PSJVTA provides new factual predicates for the conduct that will be deemed to constitute consent to personal jurisdiction for civil actions under the ATA. The Act first focuses on the "Palestinian Authority's practice of paying salaries to

---

[2] The PSJVTA included a number of provisions that are not at issue here, aimed at facilitating the resolution of ATA claims. *Id.* § 903(b). The portion of the PSJVTA challenged in this action is limited to the jurisdictional amendments contained in § 903(c), which, for ease of reference, this brief refers to as the PSJVTA.

9

terrorists serving in Israeli prisons, as well as to the families of deceased terrorists," which Congress had previously condemned.[3] The PSJVTA provides that a defendant "shall be deemed to have consented to personal jurisdiction" in civil ATA cases if, after 120 days following the date of enactment of the PSJVTA (i.e., after April 18, 2020), it "makes any payment, directly or indirectly—

> (i) to any payee designated by any individual who, after being fairly tried or pleading guilty, has been imprisoned for committing any act of terrorism that injured or killed a national of the United States, if such payment is made by reason of such imprisonment; or
>
> (ii) to any family member of any individual, following such individual's death while committing an act of terrorism that injured or killed a national of the United States, if such payment is made by reason of the death of such individual[.]"

18 U.S.C. § 2334(e)(1)(A).

----------

3  Taylor Force Act, Pub. L. No. 115-141, § 1002 (Findings), 132 Stat. 348, 1143 (2018). That Act is separate legislation relating specifically to assistance for the West Bank and Gaza that directly benefits the PA, where Congress further found that the PA's practice of making such payments "is an incentive to commit acts of terror."

10

Second, the PSJVTA provides that the PA and PLO will be deemed to have consented to personal jurisdiction in ATA civil actions if they undertake certain activities in the United States. Specifically, the Act provides that a defendant "shall be deemed to have consented to personal jurisdiction" if, after fifteen days following the date of enactment of the PSJVTA (i.e., after January 4, 2020), it maintains, establishes, or procures any office in the United States or "conducts any activity while physically present in the United States on behalf of the Palestine Liberation Organization or the Palestinian Authority," with the exception of certain business at the United Nations, activities involving government officials, participation in training or related activities funded or arranged by the United States government, or legal representation. 18 U.S.C. § 2334(e)(1)(B)(i)–(iii), (e)(3). As the PSJVTA's lead sponsor explained, the Act "allow[s] the PA/PLO to conduct a very narrow scope of activities on U.S. soil— such as activities pertaining to official business at the United Nations, engagements with U.S. officials necessary to our national interest, and legal expenses related to adjudicating or resolving claims filed in U.S. courts—without consenting to personal jurisdiction in civil ATA cases." 165 Cong. Rec. S7182 (Dec. 19, 2019) (Sen. Lankford).

Congress provided that the PSJVTA's personal jurisdiction provisions "apply to any case pending on or after August 30, 2016." PSJVTA § 903(d)(2). Activities that are deemed consent to personal jurisdiction following the PSJVTA's enactment are thus a basis for exercising jurisdiction over an ATA action "regardless of the date of the occurrence of the act of international

terrorism upon which such civil action was filed." 18 U.S.C. § 2334(e)(1). As Senator Grassley explained, the PSJVTA "sends a clear signal that Congress intends to empower courts to restore jurisdiction in cases previously dismissed." 165 Cong. Rec. S7183.

Following the PSJVTA's enactment, the Supreme Court granted the pending petitions for certiorari in this case and in *Klieman*, vacated the decisions of the courts of appeals, and remanded for consideration of the matters in light of the PSJVTA. 140 S. Ct. 2713–14 (2020).

## C. The Present Action and the District Court's Opinions

As this Court has previously described this action, plaintiffs consist of eleven American families who have sued the PA and PLO in connection with "a wave of violence known as 'the al Aqsa Intifada' " from 2001 to 2004 that killed or wounded plaintiffs or their family members. *Waldman*, 835 F.3d at 322, 324–25. Six attacks were at issue in the trial; plaintiffs presented evidence that members of the PA police force, PA intelligence officers, or PLO members planned or carried out those attacks, *id.* at 324–25, although "plaintiffs did not allege or submit evidence that the plaintiffs were targeted in any of the six attacks at issue because of their United States citizenship," *id.* at 326. The jury found the PA and PLO liable for all six attacks and awarded plaintiffs $218.5 million, which was tripled under the terms of the ATA to $655.5 million. *Id.* at 327.

12

Personal jurisdiction has been contested throughout the eighteen years that this action has been pending. The district court originally held that it had general personal jurisdiction over defendants. 2011 WL 1345086; *see Waldman*, 835 F.3d at 325–26. Following *Daimler*, the district court reaffirmed that holding, both before and after trial. 2014 WL 6811395 (S.D.N.Y. Dec. 1, 2014); *see Waldman*, 835 F.3d at 326. This Court, however, held that "[t]he district court could not constitutionally exercise either general or specific personal jurisdiction over the defendants in this case." *Waldman*, 835 F.3d at 344. Following enactment of the ATCA, this Court held that plaintiffs had not shown that the factual predicates required by that statute for personal jurisdiction had been satisfied. 925 F.3d at 574. After the Supreme Court vacated that judgment in light of the PSJVTA, this Court directed the district court to consider that statute's applicability and constitutionality.

In its March 2022 decision, the district court held the PSJVTA applies to this case, as plaintiffs had sufficiently shown that defendants made the payments described in 18 U.S.C. § 2334(e)(1)(A)(ii), that is, to family members of a person killed while committing an act of terrorism that injured or killed a U.S. national. (SPA 4–8).

The court then held the PSJVTA is unconstitutional. (SPA 2, 8–11). The court observed that it may exercise personal jurisdiction over a defendant even absent the minimum contacts required for general or specific personal jurisdiction "where the defendant consents to the court's personal jurisdiction." (SPA 9).

13

But the court concluded that "[t]he conduct identified in the PSJVTA is insufficient to support a finding that Defendants have consented to personal jurisdiction." (SPA 9). The predicate conduct that plaintiffs had demonstrated—namely, "making payments to individuals killed while committing acts of terrorism that killed U.S. Nationals"—"is wholly unrelated to any court order in this litigation" and "insufficiently related to the litigation to enable the court to exercise constitutionally valid personal jurisdiction over Defendants on the basis of constructive or implied consent." (SPA 10). The district court distinguished *Insurance Corporation of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694 (1982), where the Supreme Court upheld a ruling that a party's refusal to comply with discovery orders regarding personal jurisdiction was an admission of the facts supporting personal jurisdiction, on the ground that the sanction there was specifically related to the particular claim at issue in discovery. (SPA 10–11). Finally, the district court rejected the government's argument that the court should afford deference to Congress in the field of foreign affairs, concluding that it was "inapplicable" to a case not involving separation of powers. (SPA 11–12 n.6).

Plaintiffs then moved for reconsideration, which the district court denied. (SPA 13). The court concluded that even if defendants' conduct fell within the other factual predicates of the PSJVTA, specifically the activities in the United States described in 18 U.S.C. § 2334(e)(1)(B), those activities "are not sufficient to support an exercise of personal jurisdiction consistent with the Due Process Clause of the Fifth

14

Amendment." (SPA 15). The court determined that the U.S. activities alleged by plaintiffs do not demonstrate "any intention on the part of Defendants to legally submit to suit in the United States." (SPA 16). Following the decisions in two other cases concerning the constitutionality of the PSJVTA, also decided in March 2022 in the same district court, the court in this case determined that "in promulgating the PSJVTA, Congress 'simply took conduct in which the PLO and PA had previously engaged—conduct that the Second and D.C. Circuits had held was insufficient to support personal jurisdiction . . . —and declared that such conduct shall be deemed to be consent.' But Congress 'cannot simply declare anything it wants to be consent.'" (SPA 16 (quoting *Fuld v. PLO*, 578 F. Supp. 3d 577, 587, 595 (S.D.N.Y. 2002) (citations omitted))). "Constitutional due process," the court opined, "'requires more than notice and the opportunity to conform ones [*sic*] conduct for effective consent to jurisdiction.'" (SPA 16 (quoting *Shatsky v. PLO*, No. 18 Civ. 12355, 2022 WL 826409, at *5 (S.D.N.Y. Mar. 18, 2022))).[4] Finally, the district court held that defendants' receipt of benefits from their U.S. presence, if any, is irrelevant to whether they consented to jurisdiction, and in any event the actions that form the basis of this suit long predate the alleged activities in the United States that would form the basis for personal jurisdiction under the PSJVTA. (SPA 17–18).

_____

[4] Appeals to this Court are pending in *Fuld* (Nos. 22-76, 22-496 (2d Cir.)) and *Shatsky* (Nos. 22-791, 22-1138 (2d Cir.)).

15

## Summary of Argument

In the PSJVTA, Congress specified activities that will be deemed consent to personal jurisdiction, by a limited class of uniquely positioned defendants, for purposes of civil actions under the ATA. That is consistent with the constitutional requirements of due process under the Fifth Amendment. A defendant's consent has long been recognized as a basis for a court to exercise personal jurisdiction over it, and that consent may take many forms within the limits of the principles of fair play and substantial justice that define the due process inquiry. The PSJVTA provides the PA, the PLO, and their successors and affiliates with advance notice of the specific types of conduct that will confer authority on the courts to consider cases against them under the civil liability provisions of the ATA, and a fair opportunity to cease engaging in that activity. By continuing the specified conduct, defendants have knowingly and voluntarily consented to personal jurisdiction. *See infra* Point A.

Critically, the fairness and reasonableness of the PSJVTA must be assessed in the context of Congress's exercise of its foreign-affairs power, to which the courts owe deference. The statute furthers crucial interests of the federal government in responding to terrorism against U.S. nationals and protecting U.S. nationals from terrorist acts. It applies only to the PA, PLO, and their affiliates or successors—unique, nonsovereign foreign entities that have historically been the subject of conditions placed by Congress and the Executive Branch on their presence and activities in the United States. The PA and PLO activities that are

16

deemed consent to personal jurisdiction by the
PSJVTA are linked to Congress's and the Executive
Branch's interests in incentivizing the PA and PLO's
commitment to renounce terrorism and in deterring
international terrorism, in particular where it injures
U.S. nationals. In light of those circumstances, the
deemed-consent provisions are constitutional. *See
infra* Point B.

The district court erred in concluding otherwise. It
applied a test under which a defendant must inten-
tionally consent to personal jurisdiction, but that is not
consistent with the case law, which recognizes that a
defendant may constructively consent consistent with
due process. *See infra* Point C.

Finally, although this Court's precedent holds to
the contrary, the Fifth Amendment allows a more ex-
pansive assertion of personal jurisdiction than the
Fourteenth Amendment, and permits the deemed-con-
sent provisions of the PSJVTA even if states could not
impose similar provisions through state law. The lim-
itations on personal jurisdiction imposed by the Four-
teenth Amendment are tied to states' limited territo-
rial sovereignty, and the need to ensure against states'
incursion onto the sovereignty of other states of the
Union or of foreign states. But in contrast, the federal
government's powers extend both nationally and out-
side its borders, and include authority over matters of
foreign affairs and foreign commerce. In these circum-
stances, where the federal foreign-affairs interests in
deterring international terrorism against U.S.
nationals abroad and in vindicating their rights are
strong, the narrow assertion of personal jurisdiction

17

over these foreign defendants is within the federal government's authority under the Fifth Amendment. *See infra* Point D.

Accordingly, the judgment of the district court should be reversed.

# **ARGUMENT**

## **The PSJVTA Is Consistent with Constitutional Requirements of Due Process**

The PSJVTA is the most recent of Congress's efforts to "open[ ] the courthouse door to victims of international terrorism."[5] In passing the statute, Congress acted to better realize the civil damages remedy of the ATA, a critical component of the United States' efforts against terrorism, by ensuring that U.S. courts could exercise personal jurisdiction in ATA actions in a manner consistent with due process under the Fifth Amendment. But Congress drafted the personal jurisdiction provisions of the PSJVTA narrowly, limiting them to civil ATA claims for acts of terrorism injuring U.S. nationals, brought against the PA, PLO, and their successors or affiliates. And the activities that are deemed consent to personal jurisdiction are closely linked to terrorist acts against U.S. nationals or to the activities in the United States of the PA and PLO themselves. In sum, nothing about the PSJVTA derogates from constitutional requirements for consent-based personal jurisdiction. Moreover, Congress

---

[5]  S. Rep. 102-342, at 45 (1992).

18

enacted the deemed-consent provisions in furtherance of the broad authority of the political branches over foreign affairs—indeed, the PSJVTA is a part of a long history of terrorism-related conditions Congress and the Executive Branch have placed on the presence and activities of the PA and PLO in the United States. Considered under all these circumstances, the PSJVTA's deemed-consent provisions are consistent with the Fifth Amendment Due Process Clause's principles of fair play and substantial justice.

**A. The PSJVTA Establishes Personal Jurisdiction Based on Defendants' Knowing and Voluntary Consent**

This Court has held that the PA and PLO are entitled to due process rights, and therefore the Fifth Amendment requires a federal court to establish personal jurisdiction over those entities. *Waldman*, 835 F.3d at 329. "[T]he test for personal jurisdiction requires that 'the maintenance of the suit not offend traditional notions of fair play and substantial justice.' " *Bauxites*, 456 U.S. at 702–03 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17 (1945) (some quotation marks omitted)); *accord Ford Motor Co. v. Montana Eighth Judicial District Court*, 141 S. Ct. 1017, 1024 (2021); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476–77 (1985).

But "[b]ecause the requirement of personal jurisdiction represents first of all an individual right," it "can, like other such rights, be waived." *Bauxites*, 456 U.S. at 703. Specifically, a defendant may consent to a court's exercise of personal jurisdiction through a

19

"variety of legal arrangements." *Id.*; *accord Burger King*, 471 U.S. at 472 n.14; *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 625 (2d Cir. 2016) ("a party may simply consent to a court's exercise of personal jurisdiction . . . notwithstanding the remoteness from the state of its operations and organization"). As long as a defendant's consent is "knowing and voluntary," the court's exercise of jurisdiction is permissible and consistent with due process, *Wellness Int'l Network v. Sharif*, 575 U.S. 665, 685 (2015)—and personal jurisdiction based on such consent "does not offend due process" as long as the consent was not "unreasonable and unjust," *Burger King*, 471 U.S. at 472 n.14 (quotation marks omitted); *accord Dorchester Financial Securities, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013).

Consistent with those principles, the PSJVTA sets out a reasonable "legal arrangement[ ]" through which Congress specified the conduct by which the PA and PLO may, knowingly and voluntarily, constructively consent to personal jurisdiction to ATA claims, *Bauxites*, 456 U.S. at 703, and gives the PA and PLO "fair warning that a particular activity may subject [them] to the jurisdiction" of U.S. courts, *Burger King*, 471 U.S. at 472 (quotation marks omitted). The statute expressly describes what actions will cause the PA and PLO to be "deemed to have consented to personal jurisdiction" in ATA cases in U.S. courts. 18 U.S.C. § 2334(e)(1). And it provides a 120-day implementation period before consent will be deemed based on the payments prong, *id.* § 2334(e)(1)(A), and a fifteen-day period before consent will be deemed from non-excepted activities in the United States, *id.*

20

§ 2334(e)(1)(B), such that a court will not have personal jurisdiction unless the PA or PLO knowingly and voluntarily engage in the specified activities after those safe-harbor periods end. Thus, the PA and PLO were given a reasonable period to " 'structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.' " *Daimler*, 571 U.S. at 139 (quoting *Burger King*, 471 U.S. at 472).

## B. The PSJVTA, as an Enactment in the Field of Foreign Affairs, Must Be Accorded Deference

Furthermore, whether an assertion of personal jurisdiction comports with fair play and substantial justice depends on "the circumstances of the particular case." *Waldman*, 835 F.3d at 331. Here, a critical circumstance is the fact that the PSJVTA was enacted "on a matter of foreign policy," and therefore "warrants respectful review by courts." *Bank Markazi v. Peterson*, 578 U.S. 212, 215 (2016). Specifically, Congress enacted, and the President signed into law, the PSJVTA to facilitate providing a meaningful response to international terrorism against U.S. nationals, and the political branches acted against an extensive backdrop of statutes concerning the PLO and PA. And the narrow limits of the consent to personal jurisdiction required by the PSJVTA—only *sui generis* foreign entities, sued under the ATA for claims related to acts of international terrorism that injure U.S. victims, are deemed to have consented, 18 U.S.C. § 2334(e)(1), (5) —underscore that the deemed-consent provision is a reasonable exercise of Congress's foreign-affairs powers.

21

The ATA's civil-liability provision is intended "to develop a comprehensive legal response to international terrorism." 1992 House Report at 5. Congress found in the ATCA, however, that because courts had determined that the PA and PLO were not subject to general personal jurisdiction in the United States, the ATA's goals were not being realized. *See* H.R. Rep. No. 115-858, at 6. Congress thus determined that it was necessary to enact the ATCA so the ATA's civil-liability provision could function effectively to "halt, deter, and disrupt international terrorism." *Id.* at 7–8; *see also id.* at 2–3. In amending the ATCA's deemed-consent provisions through the PSJVTA, Congress acted with the same purpose. *See* 166 Cong. Rec. S627 (Jan. 28, 2020) (Sen. Leahy) ("Congress is committed to pursuing justice for American victims of terrorism while ensuring appropriate standards regarding the ability of foreign missions to conduct official business in the United States."); 165 Cong. Rec. S7182 (Dec. 19, 2019) (Sen. Lankford) (bill "strike[s] a balance between Congress's desire to provide a path forward for American victims of terror to have their day in court and the toleration by the Members of this body to allow the PA/PLO to conduct a very narrow scope of activities on U.S. soil"); *id.* (Sen. Grassley) ("these lawsuits disrupt and deter the financial support of terrorist organizations. By cutting terrorists' financial lifelines, the ATA is a key part of the U.S. arsenal in fighting terrorism and protecting American citizens.").

Congress's framework for deemed consent under the PSJVTA is consistent with this legislative purpose. First, the only defendants that may be deemed to have consented to personal jurisdiction are the PA, PLO,

22

and their successors or affiliates. 18 U.S.C. § 2334(e)(5). And one of the two prongs of the deemed-consent provision directly concerns those entities' presence and activities in the United States. *Id.* § 2334(e)(1)(B). Conditioning permission for the PA and PLO to operate in the United States on their consent to personal jurisdiction in ATA actions is both reasonable and proportional, and arises from a long history of congressional and Executive actions. The PA and PLO are *sui generis* foreign entities that exercise governmental power but have not been recognized as a sovereign government by the Executive Branch, and that have a unique relationship with the United States government premised on their renunciation of terrorism and commitment to peace in the Middle East. Their ability to operate within the United States is dependent on the judgments of the political branches, which have long imposed restrictions on their U.S. activities and operations based in part on the same concerns that motivated enactment of the ATCA and PSJVTA—namely, concerns about their historical support for acts of terrorism. *See* 22 U.S.C. § 5201 (enacted 1987; determining "that the PLO and its affiliates are a terrorist organization and a threat to the interests of the United States, its allies, and to international law and should not benefit from operating in the United States"); *id.* § 5202 (prohibiting PLO from maintaining an office in the United States); Middle East Peace Facilitation Act of 1993, Pub. L. No. 103-125, § 3(b)(2), (d)(2), 107 Stat. 1309, 1310 (authorizing temporary waiver of that prohibition if the President certifies that "it is in the national interest of the United States" and "the Palestine Liberation

23

Organization continues to abide by" its Oslo Accords commitments); Department of State, Foreign Operations, and Related Programs Appropriations Act, 2022, Pub. L. No. 117-103, div. K, § 7041(*l*)(3)(B), 136 Stat. 49, 641 (authorizing temporary waiver of that prohibition if President determines the Palestinians have not obtained United Nations membership status as a state and have not "actively supported an [International Criminal Court] investigation against Israeli nationals for alleged crimes against Palestinians"); *see also* Palestinian Anti-Terrorism Act of 2006, Pub. L. No. 109-446, § 7*,* 22 U.S.C. § 2378b note, 120 Stat. 3318 (prohibiting the establishment or maintenance in the United States of any office of the PA during any period for which it is effectively controlled by or unduly influenced by Hamas, in the absence of a statutory waiver).

Similarly, in deeming payments to designees and family members of persons imprisoned for or killed while committing acts of terrorism that kill or injure U.S. nationals to constitute consent to personal jurisdiction, Congress furthered critical interests in national security and foreign affairs by acting to discourage support for violence harming U.S. nationals abroad. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 8–10 (2010) (discussing national security interests in deterring support for terrorism); *Center for Constitutional Rights v. CIA*, 765 F.3d 161, 169 (2d Cir. 2014) ("incit[ing] violence against American interests at home and abroad [will cause] damage to the national security"); Taylor Force Act, Pub. L. No. 115-141, § 1002 (Findings), 132 Stat. 348, 1143 (22 U.S.C. § 2378c-1 note) (Mar. 23, 2018). Congress specifically tied the qualifying payments to acts of terrorism that

24

injure U.S. nationals, thus implicating the vital duty of the Executive and Legislative Branches to protect Americans abroad. *See Haig v. Agee*, 453 U.S. 280, 299 (1981); *United States v. Wong Kim Ark*, 169 U.S. 649, 692 (1898); *Durand v. Hollins*, 8 F. Cas. 111, 112 (C.C.S.D.N.Y. 1860) (Nelson, Circuit Justice). The link between the payments prong and opening the courts to vindicate the claims of U.S. terrorism victims is obvious: in connection with separate legislation, Congress has found that such payments by the PA/PLO incentivize the very type of terrorism harming U.S. nationals that Congress sought to combat in creating a civil action under the ATA. *See* Taylor Force Act, Pub. L. No. 115-141, § 1002(1) (Findings) (22 U.S.C. § 2378c-1 note).

In this context, it was reasonable and consistent with the Fifth Amendment for Congress and the Executive Branch to determine that the PLO's or PA's voluntarily and knowingly engaging in specified activities in the United States, or making payments by reason of terrorist acts injuring or killing U.S. nationals, should be "deemed" consent to personal jurisdiction in ATA civil cases—the very purpose of which is to deter terrorism against U.S. nationals. *See* H.R. Rep. No. 115-858, at 7 (2018) (committee report in support of ATCA) (explaining that "Congress has repeatedly tied [the PA's and PLO's] continued receipt of these privileges [including presence in the United States] to their adherence to their commitment to renounce terrorism," and that it is appropriate to deem the continued acceptance of these benefits to be "consent to jurisdiction in cases in which a person's terrorist acts injure or kill U.S. nationals").

25

Because the PSJVTA is centrally concerned with matters of foreign affairs, it requires deferential consideration by the Judicial Branch. That deference is consonant with this Court's responsibility to preserve constitutional due process limits. *Cf. ACLU v. Department of Defense*, 901 F.3d 125, 136 (2d Cir. 2018) ("Judges do not abdicate their judicial role by acknowledging their limitations and deferring to an agency's logical and plausible justification in the context of national security; they fulfill it."). Whether an exercise of personal jurisdiction is permissible turns on the question of whether it is " 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.' " *Ford Motor Co.*, 141 S. Ct. at 1024 (quoting *International Shoe*, 326 U.S. at 316–17). The broad authority and extensive expertise of Congress and the Executive Branch to act in matters of foreign affairs, and the courts' relative lack of competence in those matters, are important factors in the due process analysis, which turns on consideration of "all the circumstances." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010) (in assessing service of process, due process depends on "all the circumstances" (quotation marks omitted)); *accord Snyder v. Massachusetts*, 291 U.S. 97, 117 (1934) (Cardozo, J.) (in due process analysis, "[w]hat is fair in one set of circumstances may be an act of tyranny in others"), *overruled on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964). That holistic approach, and the deference courts must afford to the political branches in foreign-affairs matters, are fully consistent with the Supreme

26

Court's established tests for considering the due process limits of personal jurisdiction.

In sum, the PSJVTA's provisions deeming certain actions by the PLO and PA to be consent to personal jurisdiction—limited to specified foreign entities, applicable only to ATA claims, and in furtherance of U.S. foreign policy—must be seen in light of the federal government's constitutional responsibilities for, and broad authority over, international relations and the protection of U.S. nationals abroad. And those important government interests are closely linked to the two prongs of the PSJVTA's deemed-consent provisions. In this context, requiring the PA and PLO to answer civil suits in U.S. courts for any alleged role in specific acts of terrorism that injure U.S. nationals is reasonable, just, and in accordance with due process.

## C.   The District Court Erroneously Applied an Unduly Stringent Consent Standard

In concluding that to find "Defendants have impliedly consented to personal jurisdiction based solely on their conduct in violation of the PSJVTA would violate the due process clause of the constitution" (SPA 11), the district court misconstrued the requirements of due process and the conditions that make a party's waiver of due process protections fair and reasonable. Bounded by the specific limitations described above, the PSJVTA's deemed-consent provisions meet the Fifth Amendment's standards.[6]

---

[6]   In the district court, the PA/PLO's primary argument was that they must receive some benefit in

27

The district court's analysis focused entirely on the facts of *Bauxites*, where the Supreme Court upheld the assertion of personal jurisdiction over a party for that party's failure to comply with a discovery order meant to establish jurisdictional facts. (SPA 9–11); *see Bauxites*, 456 U.S. at 695. But the point is not that *Bauxites* was a similar case. Rather, contrary to the district court's suggestion that defendants' conduct must manifest "intention . . . to legally submit to suit in the United States" (SPA 16), the Supreme Court recognized that while "the requirement of personal jurisdiction may be intentionally waived," in the alternative, "for various reasons a defendant may be estopped from raising the issue." 456 U.S. at 704–05. Put differently,

_____

return for their "deemed" consent to be constitutionally valid. (SPA 8). The district court did not address that contention, but no appellate court has held that a waiver of personal jurisdiction requires a benefit to the party waiving, and other cases addressing consent to waive constitutional rights do not require any kind of reciprocity or consideration. *See, e.g.*, *Wellness Int'l*, 575 U.S. at 683–85; *Roell v. Withrow*, 538 U.S. 580, 590 (2003); *Moran v. Burbine*, 475 U.S. 412, 421 (1986) (waiver of *Miranda* rights); *Oregon v. Elstad*, 470 U.S. 298, 302 (1985) (waiver of privilege against self-incrimination); *United States v. O'Brien*, 926 F.3d 57, 76 (2d Cir. 2019) (consent to search); *United States v. Velez*, 354 F.3d 190, 196 (2d Cir. 2004) (waiver of inadmissibility of statements made during plea discussions). Thus, consent can be valid even where the person consenting receives no benefit in return.

28

"[t]he actions of the defendant may amount to a legal submission to the jurisdiction of the court, *whether voluntary or not*." *Id*. at 704–05 (emphasis added). A "constructive waiver" may support personal jurisdiction, *id*. at 706; similarly, the personal jurisdiction requirement can be "inadvertently forfeited," *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011). The PSJVTA carefully and narrowly sets out the conditions for such a constructive waiver: it expressly states that the PA, the PLO, and their affiliates or successors are deemed to have consented to personal jurisdiction in U.S. courts for claims that they materially assisted terrorist attacks injuring U.S. nationals, only if they engage in specifically enumerated activities in the United States or with a nexus to terrorism injuring U.S. nationals, and in an area in which the political branches have long imposed restrictions on the PA and the PLO to effectuate foreign policy. *See Brown*, 814 F.3d at 641 ("a carefully drawn . . . statute that expressly required consent to general jurisdiction . . . might well be constitutional" under the Due Process Clause of the Fourteenth Amendment).[7]

---------

[7] *Brown* concerned whether an out-of-state defendant consented to general personal jurisdiction in a state's courts by registering to do business in the state and appointing an in-state agent to accept service, in accordance with a statutory requirement. 814 F.3d at 622. The Supreme Court recently granted certiorari to review the question of whether a state can constitutionally require a corporation to consent to general personal jurisdiction as a condition of doing business

29

To be sure, it would not be consistent with "traditional notions of fair play and substantial justice," *International Shoe*, 326 U.S. at 316–17 (quotation marks omitted), for Congress to "deem" a defendant to have consented to personal jurisdiction based on conduct entirely unrelated to the forum or to the lawsuit. (SPA 16 ("Congress 'cannot simply declare anything it wants to be consent.'" (quoting *Fuld*, 578 F. Supp. 3d at 595))). But as explained above, that is not what the PSJVTA does: the activities that are deemed consent to personal jurisdiction are closely linked to the only claim for which personal jurisdiction is permitted, a civil ATA action concerning terrorist attacks on U.S. nationals, brought against two specified defendants (and their successors or affiliates) whose conduct has historically been the subject of foreign-policy concern by the Executive and Legislative Branches, in an area where Congress and the Executive have wide latitude to act. Whether a defendant has consented to personal jurisdiction must be determined under "all of the relevant circumstances." *Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 307 (2d Cir. 2002) (quotation marks omitted). And here, the circumstances—particularly the actions that are deemed consent, the circumscribed class of cases in which that deemed consent applies, and the nature of the political branches' authority over

─────────

in the state. *Mallory v. Norfolk Southern Railway Co.*, No. 21-1168. The government takes no position here on that question. *See id.*, Br. for U.S. as Amicus Curiae Supporting Respondent (Sept. 2, 2022).

30

foreign affairs—demonstrate the reasonableness of personal jurisdiction under the PSJVTA.[8]

### D. Due Process Standards of the Fifth Amendment, Not the Fourteenth Amendment, Apply to the PSJVTA

Lastly, the constitutionality of the PSJVTA should be assessed under the due process standards of the Fifth Amendment—standards that allow federal courts to assert personal jurisdiction over a foreign defendant in ways that have no analogue for a state court exercising personal jurisdiction under the Fourteenth Amendment. In *Waldman*, this Court reiterated its prior holding that "'the due process analysis for purposes of the court's *in personam* jurisdiction is basically the same under both the Fifth and

---

[8] It is also irrelevant, contrary to the district court's suggestion, if the PA and PLO had "'previously engaged'" in the conduct that the PSJVTA deems to be consent going forward. (SPA 16 (quoting *Fuld*, 578 F. Supp. 3d at 587)). Congress certainly has the authority to attach new legal consequences to conduct that an entity has undertaken in the past and may repeat after the statutory change. *Cf. Landgraf v. USI Film Products*, 511 U.S. 244, 269–70 (1994). What matters is not what the defendants did previously, or even how Congress selected the predicates for deeming consent to personal jurisdiction; rather, the issue is whether deeming consent on that basis is reasonable under the circumstances and comports with due process notions of fair play and substantial justice.

31

Fourteenth Amendments.'" 835 F.3d at 330 (quoting *Chew v. Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998) (alterations omitted)).[9] The government recognizes that this panel is bound by that holding.[10] But the Court's conclusion, reached with little analysis in either *Waldman* or *Chew*, disregards important differences between the competences of federal and state sovereigns under our Constitution's allocation of authorities, and should be reconsidered.

The Supreme Court has never held that the analysis that applies to a federal statute establishing personal jurisdiction under the Fifth Amendment is the same analysis that applies to a state long-arm statute under the Fourteenth Amendment. *See Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1784 (2017) ("[W]e leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court."). But members of the Court have observed that "personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis," and "[b]ecause the United States is a distinct sovereign, a defendant may

---

[9] The District of Columbia Circuit has reached a similar conclusion. *Livnat*, 851 F.3d at 54–55.

[10] The government did not raise this issue in the district court. But "parties are not required to raise arguments directly contrary to controlling precedent to avoid waiving them." *In re Vivendi, S.A. Securities Litigation*, 838 F.3d 223, 264 (2d Cir. 2016) (quotation marks omitted).

32

in principle be subject to the jurisdiction of the courts of the United States but not of any particular State." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (plurality opinion). Moreover, the Court has tied the limitations of its Fourteenth Amendment personal jurisdiction jurisprudence to principles of states' sovereignty in a federal system. The "concept of minimum contacts" serves "two related, but distinguishable, functions": to protect defendants from litigating in distant forums, but also "to ensure that the States through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980). Thus, because "[t]he sovereignty of each State . . . implie[s] a limitation on the sovereignty of all of its sister States," the Fourteenth Amendment's Due Process Clause "act[s] as an instrument of interstate federalism" and limits the jurisdictional reach of state courts. *Id.* at 293–94; *accord Bristol-Myers Squibb*, 137 S. Ct. at 1780–81 ("at times, this federalism interest may be decisive"); *J. McIntyre Machinery*, 564 U.S. at 884 (plurality opinion) ("if another State were to assert jurisdiction in an inappropriate case, it would upset the federal balance, which posits that each State has a sovereignty that is not subject to unlawful intrusion by other States"); *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 282 (5th Cir. 2022) (en banc) (Higginson, J., dissenting) ("Fourteenth Amendment constraints on personal jurisdiction [are] born out of federalism concerns").

But those federalism concerns do not apply to the federal government. Unlike a state, which is subject to

33

"territorial limitations" on its power, *World-Wide Volkswagen*, 444 U.S. at 294 (quotation marks omitted), the United States has authority "to enforce its laws beyond [its] territorial boundaries," *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991), *superseded by statute on other grounds*. And rather than the limited and mutually exclusive sovereignty of the several states, the federal government's sovereignty includes authority over foreign commerce and foreign affairs. Indeed, the United States' "powers of external sovereignty" and its ability to conduct its relationships with foreign actors are grounded in the United States' status in international law as an independent state. *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 318 (1936); *see Burnet v. Brooks*, 288 U.S. 378, 396 (1933) ("As a nation with all the attributes of sovereignty, the United States is vested with all the powers of government necessary to maintain an effective control of international relations."); *The Schooner Exchange v. McFaddon*, 11 U.S. (7 Cranch) 116, 136 (1812); *Kleindienst v. Mandel*, 408 U.S. 753, 765–66 (1972) (political branches of federal government have powers "inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers" (quotation marks omitted)).[11]

---

[11] In *Livnat*, the D.C. Circuit cited "the sovereign concerns of other nations" and "risks to international comity" as reasons to conclude the Fifth Amendment personal jurisdiction test mirrors the Fourteenth

34

Thus, the United States' constitutional powers and special competence in matters of foreign affairs and international commerce, in contrast to the limited and geographically cabined sovereignty of each of the several states, permit the exercise of federal judicial power in certain ways that are not analogous to the state level. *Douglass*, 46 F.4th. at 263 (Elrod, J., dissenting) ("principles of interstate federalism" that animate Fourteenth Amendment jurisprudence "are irrelevant in the *Fifth* Amendment context of *federal* court personal jurisdiction"). In particular, subject to the due process principles of fair play and substantial justice, the Fifth Amendment permits a greater scope of personal jurisdiction for legal claims that Congress has determined can be adjudicated in federal courts than the Fourteenth Amendment allows for claims that the states authorize for their courts.

In this case, Congress has made just such a determination—it has enacted numerous laws, including the ATA, combating acts of international terrorism outside the United States that affect U.S. persons and interests. And Congress has sought to make that legislation effective by putting the PA and PLO on reasonable notice that engaging in certain related activities will subject them to the adjudicative authority of U.S. courts for purposes of these specific causes of

---

Amendment's. 851 F.3d at 55 (quotation marks omitted). But those "delicate judgments[ ] involv[e] a balance that it is the prerogative of the political branches to make." *Jesner v. Arab Bank, PLC*, 138 S. Ct. 1386, 1408 (2018).

35

action. Even if a state could not enact similar legisla-
tion consistent with the Fourteenth Amendment, the
Fifth Amendment does not prohibit the United States
government from deeming certain actions of the PA
and PLO to be consent to personal jurisdiction in the
United States in these limited circumstances—where
the activities that are deemed consent to personal ju-
risdiction are closely linked to the only claim for which
personal jurisdiction is established, the suits concern
terrorist attacks injuring U.S. nationals and are
brought against two specified defendants (and their
successors or affiliates) whose conduct has historically
been the subject of foreign-policy concern by the Exec-
utive and Legislative Branches, and those Branches
have acted in an area where the Constitution affords
them broad latitude. *See Douglass*, 46 F.4th at 265 (El-
rod, J., dissenting) (because "ordering of relations with
other countries" is left to Executive and Legislative
Branches, "Congress can open the federal courthouse
door to lawsuits against foreign defendants").

36

## CONCLUSION

**The judgment of the district court should be reversed.**

Dated:     New York, New York
           October 28, 2022

                    Respectfully submitted,

                    DAMIAN WILLIAMS,
                    *United States Attorney for the*
                    *Southern District of New York,*
                    *Attorney for Intervenor-Appellant.*

                    BENJAMIN H. TORRANCE,
                    *Assistant United States Attorney,*
                        *Of Counsel.*

BRIAN M. BOYNTON,
*Principal Deputy Assistant Attorney General*

SHARON SWINGLE,
*Attorney, Appellate Staff*
*Civil Division*
*Department of Justice*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 8596 words in this brief.

DAMIAN WILLIAMS,
*United States Attorney for the*
*Southern District of New York*

By: BENJAMIN H. TORRANCE,
*Assistant United States Attorney*