

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

86 Chambers Street
New York. New York 10007

July 26, 2023

**BY ECF**
Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re: *Waldman v. Palestine Liberation Organization*,
    15-3135(L), 15-3151(xap), 22-1060(con)
*Fuld v. Palestine Liberation Organization*, 22-76(L), 22-496(con)
Argued in tandem May 3, 2023 (Judges Leval, Bianco, and Koeltl)

Dear Ms. Wolfe:

Intervenor-appellant the United States of America (the "government") respectfully submits this supplemental letter brief in accordance with this Court's order of July 14, 2023, directing the parties to address *Mallory v. Norfolk Southern Railway*, 143 S. Ct. 2028 (2023).

In *Mallory*, the Supreme Court considered a Pennsylvania state law that requires out-of-state companies with regular in-state operations to register to do business in the state. Under that law, any company that registers also agrees to appear in Pennsylvania's courts "on any cause of action" against them, regardless of whether such actions, or the plaintiffs bringing them, have any connection to the

state. 143 S. Ct. at 2033. The Supreme Court held that such a state law does not violate constitutional due process, as previously determined in *Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917). *Mallory*, 143 S. Ct. at 2037–38.

The plurality opinion in *Mallory*, joined by four justices, summarized the points on which it agreed with Justice Alito's concurrence, and were therefore supported by a majority of the Court. As relevant here: "*Pennsylvania Fire*'s rule for consent-based jurisdiction has not been overruled. *International Shoe* governs where a defendant has not consented to exercise of jurisdiction. Exercising jurisdiction here is hardly unfair. The federalism concerns in our due process cases have applied only when a defendant has not consented. Nor will this Court now overrule *Pennsylvania Fire*." *Id.* at 2044 n.11 (citations omitted).

## *Mallory* reaffirmed a flexible approach to a defendant's consent to personal jurisdiction

*Mallory* supports the government's position in the cases before this Court in several ways. First, a majority of the Court clearly reaffirmed that "personal jurisdiction is a *personal* defense that may be waived or forfeited." *Id.* at 2043 (plurality); *id.* at 2045 (Jackson, J.,

concurring) ("due process 'requirement of personal jurisdiction' is an individual, waivable right"); *id.* at 2051 (Alito, J., concurring in judgment) ("If a person voluntarily waives that right, that choice should be honored."). That is true even though the requirement of personal jurisdiction is rooted in the Constitution's due process clause. *See id.* at 2037 (majority) ("suits premised on [agreement to answer suit] do not deny a defendant due process of law"); *id.* at 2046 (Jackson, J., concurring) (defendant who "voluntarily relinquished the due process rights our general-jurisdiction precedents afford . . . cannot be heard to complain that its due process rights are violated"). "In other areas of the law, [courts] permit States to ask defendants to waive individual rights and safeguards," including constitutional rights to trial, against self-incrimination, and to a speedy trial; the same is true of personal jurisdiction. *Id.* at 2046 (Jackson, J., concurring).

Moreover, a majority of the justices in *Mallory* endorsed a flexible approach to determining if a defendant consented to suit. "'[E]xpress or implied consent' can continue to ground personal jurisdiction—and consent may be manifested in various ways by word or deed." *Id.* at 2039 (plurality) (quoting *Insurance Corporation of Ireland v. Compagnie*

*des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)); *accord id.* 2038 n.5

(majority) ("'a variety of legal arrangements'" can constitute consent

"consistent with due process" (quoting *Bauxites*, 456 U.S. at 703;

quotation marks and alteration omitted)); *id.* at 2045–46 (Jackson, J.,

concurring) (defendant's consent is valid where consequence of its action

was clear and not compelled); *id.* at 2047 (Alito, J., concurring in

judgment) (consent occurred where defendant "acted with knowledge"

that its registration constituted consent to jurisdiction (quotation marks

omitted)).

*Mallory* observed that even "mere formalities," such as the

decision where to incorporate, can have "jurisdictional consequences"; so

too can a litigant's failure to raise the defense of personal jurisdiction,

or to comply with court rules or orders. *Id.* at 2044 (plurality). And

while the dissenting opinion contended that consent by registration was

a form of "compel[ling]," "manufactur[ing]," or unreasonably

"extract[ing]" consent, *id.* at 2055, 2058 (Barrett, J., dissenting), the

remaining five justices rejected the proposition that the defendant had

"not *really* submitted" to the state court's jurisdiction solely by

registering to do business in the state. *Id.* at 2043 (plurality); *id.* at 2048 (Alito, J., concurring in judgment).

Those principles put to rest the PA/PLO's arguments that the "'surrender of constitutional rights'" requires a strong "'presumption against waiver,'" or that only express consent or actions taken in the litigation itself can constitute consent. (*Fuld* PA/PLO Br. 28–29 (quoting *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 527 U.S. 666, 682 (1999))). "[T]here is nothing 'unique about the requirement of personal jurisdiction that prevents it from being waived like other individual rights.'" *Id.* at 2046 (Jackson, J., concurring) (quoting *Bauxites*, 456 U.S. at 706). Rather than "put[ting] the personal-jurisdiction requirement on a pedestal," the Supreme Court has "h[e]ld [defendants] to [their] choice" to waive personal jurisdiction, just as they may waive other constitutional protections. *Id.* (Jackson, J., concurring); *see id.* at 2038 n.5 (majority) (no "'magic words'" are required to effect consent to personal jurisdiction).

Instead of the PA/PLO's proposed strict test, the majority in *Mallory* recognized that the defendant's consent was valid because the

statute gave fair warning that a particular voluntary activity may subject it to jurisdiction. *Id*. at 2037 (majority) (defendant "understood it would be amenable to suit on any claim" because it registered to do business in the state). Because the PSJVTA similarly establishes personal jurisdiction over the PA/PLO based on knowing and voluntary consent, it, like the statute in *Mallory*, is also consistent with due process. (*Fuld* Gov't Opening Br. 20–22, 28–35).

## *Mallory* reaffirmed that personal jurisdiction by consent is separate from jurisdiction through contacts with the forum

*Mallory* also reaffirmed that consent provides an independent basis for personal jurisdiction, entirely separate from any consideration of the defendant's contacts with the forum. The "minimum contacts" analysis required by *International Shoe v. Washington*, 326 U.S. 310 (1945), applies only where a defendant "*has not consented* to suit in the forum." 143 S. Ct. at 2039 (plurality) (quotation marks omitted). The *International Shoe* test constitutes "an *additional* road to jurisdiction," supplementing rather than supplanting the rule that a defendant "that *has* consented to in-state suits . . . is susceptible to suit there." *Id*. (plurality); *accord id*. at 2046 (Jackson, J., concurring) ("Whether Pennsylvania could have asserted general jurisdiction over Norfolk

Southern absent any waiver is beside the point." (citation omitted)); *id.* at 2048 (Alito, J., concurring in judgment) ("the *International Shoe* line of cases . . . involve constitutional limits on jurisdiction over *non-consenting* corporations. Consent is a separate basis for personal jurisdiction." (citations omitted)). Thus, the PA/PLO's contention—that their lack of contacts with the United States, or prior decisions rejecting personal jurisdiction over them based on an analysis of contacts, precludes the exercise of personal jurisdiction under the deemed-consent provisions of the PSJVTA (*Fuld* PA/PLO Br. 19–26, 54)—must be rejected.

### *Mallory* **imposed a stringent test for a violation of due process**

As for whether a statute specifying when a defendant consents to personal jurisdiction violates due process, *Mallory* set a high bar. To demonstrate a due process violation, a defendant has the burden to "establish[] that consent statutes . . . 'offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked' among those secured by the Due Process Clause." *Id.* at 2035 n.4 (plurality) (quoting *Medina v. California*, 505 U.S. 437, 445–48 (1992); some quotation marks omitted); *accord id.* 2049 (Alito, J., concurring in

judgment) (assertion of jurisdiction "is not so deeply unfair that it violates the railroad's constitutional right to due process"). As the plurality observed, no case from the nineteenth century, when the Fourteenth Amendment was adopted, appears to have held "that all-purpose jurisdiction premised on a consent statute violates the Due Process Clause." *Id.* at 2035 n.4 (plurality). The far narrower personal jurisdiction established by deemed consent under the PSJVTA—limited to a specific claim under the Anti-Terrorism Act for injuries to U.S. nationals, against specified defendants who were on notice of the conduct that would be deemed consent—cannot meet the demanding standard for a due process violation articulated in *Mallory*.

We thank the Court for its consideration of this matter.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

By:   s/Benjamin H. Torrance
BENJAMIN H. TORRANCE
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Telephone: (212) 637-2703
E-mail: benjamin.torrance@usdoj.gov

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the above-named counsel hereby certifies that this letter brief complies with type-volume limitation in the Court's July 14, 2023, order. As measured by the word processing system used to prepare it, this letter brief contains 1360 words.