# 15-3135(L)

## 15-3151 (XAP); 22-1060 (CON)

# United States Court of Appeals
### FOR THE
# Second Circuit

EVA WALDMAN, REVITAL BAUER, INDIVIDUALLY AND AS NATURAL GUARDIAN OF PLAINTIFFS YEHONATHON BAUER, BINYAMIN BAUER, DANIEL BAUER AND YEHUDA BAUER, SHAUL MANDELKORN, NURIT MANDELKORN, OZ JOSEPH GUETTA, MINOR, BY HIS NEXT FRIEND AND GUARDIAN VARDA GUETTA, VARDA GUETTA, INDIVIDUALLY AND AS NATURAL GUARDIAN OF PLAINTIFF OZ JOSEPH GUETTA, NORMAN GRITZ, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DAVID GRITZ, MARK I. SOKOLOW, INDIVIDUALLY AND AS A NATURAL GUARDIAN OF PLAINTIFF JAMIE A. SOKOLOW, RENA M. SOKOLOW, INDIVIDUALLY AND AS A NATURAL GUARDIAN OF PLAINTIFF JAIME A. SOKOLOW, JAMIE A. SOKOLOW, MINOR, BY HER

**(*Caption Continued on Inside Cover*)**

On Appeal from the United States District Court for the
Southern District of New York, Case No. 2004 Civ. 0397

**DEFENDANTS-APPELLEES' SUPPLEMENTAL BRIEF REGARDING *MALLORY V. NORFOLK SOUTHERN RY.***

NEXT FRIENDS AND GUARDIAN MARK I. SOKOLOW AND RENA M. SOKOLOW, LAUREN M. SOKOLOW, ELANA R. SOKOLOW, SHAYNA EILEEN GOULD, RONALD ALLAN GOULD, ELISE JANET GOULD, JESSICA RINE, SHMUEL WALDMAN, HENNA NOVACK WALDMAN, MORRIS WALDMAN, ALAN J. BAUER, INDIVIDUALLY AND AS NATURAL GUARDIAN OF PLAINTIFFS YEHONATHON BAUER, BINYAMIN BAUER, DANIEL BAUER AND YEHUDA BAUER, YEHONATHON BAUER, MINOR, BY HIS NEXT FRIEND AND GUARDIANS DR. ALAN J. BAUER AND REVITAL BAUER, BINYAMIN BAUER, MINOR, BY HIS NEXT FRIEND AND GUARDIANS DR. ALAN J. BAUER AND REVITAL BAUER, DANIEL BAUER, MINOR, BY HIS NEXT FRIEND AND GUARDIANS DR. ALAN J. BAUER AND REVITAL BAUER, YEHUDA BAUER, MINOR, BY HIS NEXT FRIEND AND GUARDIANS DR. ALAN J. BAUER AND REVITAL BAUER, RABBI LEONARD MANDELKORN, KATHERINE BAKER, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BENJAMIN BLUTSTEIN, REBEKAH BLUTSTEIN, RICHARD BLUTSTEIN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BENJAMIN BLUTSTEIN, LARRY CARTER, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DIANE ("DINA") CARTER, SHAUN COFFEL, DIANNE COULTER MILLER, ROBERT L COULTER, JR., ROBERT L. COULTER, SR., INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JANIS RUTH COULTER, CHANA BRACHA GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, ELIEZER SIMCHA GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, ESTHER ZAHAVA GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, KAREN GOLDBERG, INDIVIDUALLY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF STUART SCOTT GOLDBERG/NATURAL GUARDIAN OF PLAINTIFFS CHANA BRACHA GOLDBERG, ESTHER ZAHAVA GOLDBERG, YITZHAK SHALOM GOLDBERG, SHOSHANA MALKA GOLDBERG, ELIEZER SIMCHA GOLDBERG, YAAKOV MOSHE GOLDBERG,TZVI YEHOSHUA GOLDBERG, SHOSHANA MALKA GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, TZVI YEHOSHUA GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, YAAKOV MOSHE GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, YITZHAK SHALOM

GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, NEVENKA GRITZ, SOLE HEIR OF NORMAN GRITZ, DECEASED,

        *Plaintiffs-Appellants,*

UNITED STATES OF AMERICA,

        *Intervenor-Appellant,*

v.

PALESTINE LIBERATION ORGANIZATION, PALESTINIAN AUTHORITY, AKA PALESTINIAN INTERIM SELF-GOVERNMENT AUTHORITY AND OR PALESTINIAN COUNCIL AND OR PALESTINIAN NATIONAL AUTHORITY,

        *Defendants-Appellees,*

YASSER ARAFAT, MARWIN BIN KHATIB BARGHOUTI, AHMED TALEB MUSTAPHA BARGHOUTI, AKA AL-FARANSI, NASSER MAHMOUD AHMED AWEIS, MAJID AL-MASRI, AKA ABU MOJAHED, MAHMOUD AL-TITI, MOHAMMED ABDEL RAHMAN SALAM MASALAH, AKA ABU SATKHAH, FARAS SADAK MOHAMMED GHANEM, AKA HITAWI, MOHAMMED SAMI IBRAHIM ABDULLAH, ESATATE OF SAID RAMADAN, DECEASED, ABDEL KARIM RATAB YUNIS AWEIS, NASSER JAMAL MOUSA SHAWISH, TOUFIK TIRAWI, HUSSEIN AL-SHAYKH, SANA'A MUHAMMED SHEHADEH, KAIRA SAID ALI SADI, ESTATE OF MOHAMMED HASHAIKA, DECEASED, MUNZAR MAHMOUD KHALIL NOOR, ESTATE OF WAFA IDRIS, DECEASED, ESTATE OF MAZAN FARITACH, DECEASED, ESTATE OF MUHANAD ABU HALAWA, DECEASED, JOHN DOES, 1-99, HASSAN ABDEL RAHMAN,

        *Defendants.*

        Gassan A. Baloul
        Mitchell R. Berger
        SQUIRE PATTON BOGGS (US) LLP
        2550 M Street, NW
        Washington, DC  20037
        Telephone: (202) 457-6000
        Facsimile: (202) 457-6315

        *Counsel for Defendants-Appellees*

The Supreme Court's recent decision in *Mallory v. Norfolk Southern Railway Co.*, 143 S. Ct. 2028 (2023), reaffirms two points that are central to Defendants-Appellees' arguments in this case: (1) the Court's prior decision in *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee* ("*Bauxites*"), 456 U.S. 694 (1982), provides the appropriate framework for evaluating "consent" to personal jurisdiction; and (2) a court may infer "consent" or submission to personal jurisdiction from a defendant's choice to accept a government benefit "with jurisdictional strings attached." Neither of these points is novel. Rather, *Mallory* applies the same, well-established standards for "consent" addressed in Defendants' prior briefs. Applying those standards, the PSJVTA fails to provide valid "consent" in these cases because none of the conduct relied upon by Plaintiffs supports the presumption that Defendants knowingly and voluntarily submitted to personal jurisdiction in the United States. *Mallory* thus lends further support to the district courts' conclusions that Plaintiffs' claims must be dismissed for lack of personal jurisdiction. Those judgments should be affirmed.

**I.** ***Mallory* Confirms that the Court's Prior Decision in *Bauxites* Supplies the Correct Standard for "Consent" to Personal Jurisdiction.**

Despite the fractured nature of the Court's decision in *Mallory*, all nine Justices agreed on one thing: *Bauxites* provides the governing standard for "consent"

1

to personal jurisdiction under the Due Process Clause.[1]  *See Mallory*, 143 S. Ct. at 2039, 2044 (plurality opinion); *id.* at 2045-46 (Jackson, J., concurring) (finding *Bauxites* "particularly instructive"); *id.* at 2048, 2051 (Alito, J., concurring in part); *id.* at 2057 (Barrett, J., dissenting).

As Defendants explained in their briefs, *Bauxites* distinguishes between valid "consent" to jurisdiction and "mere assertions of power" by the forum to unilaterally <u>impose</u> jurisdiction.  *See* 456 U.S. at 705; Defs.' Fuld Br. 29-31; Defs.' Sokolow Br. 31-33, 42-43 & n.13.  The dividing line focuses on the nature of the defendant's specific conduct.  To give rise to valid "consent," the defendant's conduct must be sufficient to support a "presumption of fact" that the defendant submitted to jurisdiction in the forum.  456 U.S. at 705-06 (explaining that compliance with the "*Hammond Packing* presumption" is necessary to "secure[]" the "preservation of due process").  Inferring consent "is reasonable," in other words, "only where the defendant's statements or conduct actually signal approval or acceptance" of the court's jurisdiction, and thereby serve as a reasonable "proxy" for consent.  *Fuld v. PLO*, 578 F. Supp. 3d 577, 586-87 (S.D.N.Y. 2022); *see also Volkart Bros. v. M/V*

---

[1] The Court's specific holding in *Mallory* is quite narrow.  A majority of the Justices agreed only on a statement of the case and a single holding that the Court's prior decision in *Pennsylvania Fire*—which upheld a similar business-registration statute—"controls this case" and remains good law.  *See Mallory*, 143 S. Ct. at 2032-33 (section I), 2037-38 (section III-B); *see also Penn. Fire Ins. Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917).

2

*Palm Trader*, 130 F.R.D. 285, 289 (S.D.N.Y. 1990) (applying *Bauxites* and holding "there must be some indication, either from the record or from the nature of [the defendant's specific conduct], supporting a jurisdictional finding"); Defs.' Sokolow Br. 42 n.13.

Relying on *Pennsylvania Fire*, the *Mallory* majority held that the defendant's specific conduct—registering to do business in Pennsylvania and then "tak[ing] full advantage" of that opportunity by hiring nearly 5,000 employees, maintaining 2,400 miles of track, and spending over $1 billion in the State—was sufficient to support the presumption it had submitted to jurisdiction. 143 S. Ct. at 2041-42; *see also id.* at 2049 (Alito, J., concurring). By complying with the registration statute, the Court held that Norfolk Southern obtained all of "the benefits and burdens shared by domestic corporations" and "agreed to be found in Pennsylvania and answer any suit there." 143 S. Ct. at 2037. Four Justices disagreed, disputing the majority's conclusion that registering to do business in Pennsylvania supported an inference of valid "consent" to jurisdiction. *See* 143 S. Ct. at 2057-58 (Barrett, J., dissenting) ("Corporate registration triggers a statutory repercussion, but that is not 'consent' in a conventional sense of the word.").

In this case, by contrast, there can be no dispute that the specific conduct relied upon by Plaintiffs—Defendants' limited diplomatic activities in the U.S. and social welfare payments made in Palestine—does not support the presumption that

3

Defendants knowingly and voluntarily submitted to personal jurisdiction in the United States. Courts (including this Court) have repeatedly held that those <u>same</u> activities are insufficient to support the exercise of personal jurisdiction under the Due Process Clause. *See* Defs.' Fuld Br. 19-27; Defs.' Sokolow Br. 20-28. Unlike Norfolk Southern's decision to register to do business in Pennsylvania, Defendants' decision to continue engaging in the same, jurisdictionally-insufficient conduct cannot signal their implied agreement to consent to jurisdiction, because that conduct signifies nothing about jurisdiction. Conduct that cannot support jurisdiction likewise cannot support a presumption that Defendants submitted to jurisdiction by engaging in such conduct.

Because the conduct relied upon by Plaintiffs does not support a presumption that Defendants submitted to jurisdiction in the United States, the PSJVTA reflects the improper imposition of personal jurisdiction on Defendants as a penalty, rather than knowing and voluntary consent. *See Bauxites*, 456 U.S. at 705-06 (distinguishing between valid "consent" and the improper imposition of jurisdiction as a "punishment").

II. ***Mallory* Reaffirms that Acceptance of a Government Benefit May Give Rise to Valid "Consent" to Personal Jurisdiction—But the PSJVTA Fails to Provide Any Such Benefit.**

In holding that Norfolk Southern consented to jurisdiction by registering to do business in the State, the Court relied on the same "exchange-of-benefits" theory

4

described at length in Defendants' briefs. *See* Defs.' Fuld Br. 33-39; Defs.' Sokolow Br. 34-40. The statute at issue in *Mallory* required out-of-state corporations to consent to personal jurisdiction "in exchange for status as a registered foreign corporation and the benefits that entails." 143 S. Ct. at 2033 (emphasis added).

Consistent with Defendants' prior briefing, the Court explained that "state laws requiring consent to suit in exchange for access to [the State's] markets" are one of the "variety of legal arrangements" that can give rise to implied consent to jurisdiction. *Id.* at 2041 n.8 (plurality opinion) (emphasis added); *see also id.* at 2041 (explaining the statute "gave the company the right to do business in-state in return for agreeing to answer any suit against it," and "the company had taken full advantage of its opportunity to do business in the Commonwealth" (emphasis added)). By accepting the privilege of registering to do business in the State, the Court held that Norfolk Southern agreed to "both the benefits and burdens shared by domestic corporations"—including consent to jurisdiction in the State. *Id.* at 2037.

The PSJVTA, by contrast, fails to provide any government benefit for Defendants to accept or reject, in exchange for their implied agreement to consent to jurisdiction in the forum. Unlike its predecessor statute, the Anti-Terrorism Clarification Act (ATCA), the PSJVTA does not ground "deemed consent" on Defendants' acceptance of foreign assistance or a waiver of the Anti-Terrorism Act's prohibition on Defendants' operations in the United States, in exchange for their

5

consent to jurisdiction.[2]  *See* Defs.' Fuld Br. 49-51; Defs.' Sokolow Br. 51-52.  The PSJVTA thus falls outside the "exchange-of-benefits" line of cases reaffirmed in *Mallory*, which hinge—in Justice Gorsuch's words—on the defendant "<u>accepting an in-[forum] benefit</u> with jurisdictional strings attached."  143 S. Ct. at 2044 (emphasis added).

Despite offering a substantial benefit to Norfolk Southern (the right to do business in the State), the statute at issue in *Mallory* presented a close case—as the fractured opinions and vigorous dissent attest.  The PSJVTA goes much further than exchange-of-benefits cases like *Mallory*, imposing "deemed consent" on Defendants even though they have not accepted any government benefit conditioned on consent, or engaged in any other conduct that would support the presumption they have submitted to suit in the United States.  Nothing in *Mallory* suggests the Court would accept the legislative imposition of personal jurisdiction over Defendants in the absence of such conduct.  *See* 143 S. Ct. at 2038 ("To decide this case, we need not speculate whether any other statutory scheme and set of facts would suffice to establish consent to suit.").  To the contrary, the Court's repeated references to the

---

[2] Indeed, the OLC opinion cited by Plaintiffs (46 Op. O.L.C. __, 2022 WL 16859386, at *3 (2022)) confirms Defendants engage only in "diplomatic activities" that, under pre-existing law, cannot give rise to personal jurisdiction.  *See* Defs.' Fuld Br. 23-24.  Further, such activities do not create jurisdiction under the PSJVTA.  *See* 18 U.S.C. § 2334(e)(3).

6

"benefits" that Norfolk Southern accepted in exchange for its consent confirms that *Bauxites* means what it says: to give rise to valid "consent" to jurisdiction, the defendant's specific conduct must support the "presumption" that it has submitted to jurisdiction in the forum, either by accepting a benefit or by otherwise engaging in jurisdictionally-significant conduct.

The PSJVTA fails that test, and therefore is unconstitutional as applied to Defendants in these cases.

Dated: July 26, 2023                     Respectfully submitted,

                                         By:  *Gassan A. Baloul*
                                         Gassan A. Baloul
                                         Mitchell R. Berger
                                         SQUIRE PATTON BOGGS (US) LLP
                                         2550 M Street, NW
                                         Washington, D.C. 20037
                                         Telephone: (202) 457-6000
                                         Facsimile: (202) 457-6315

                                         *Counsel for Defendants-Appellees*

7

# **CERTIFICATE OF COMPLIANCE**

The undersigned certifies that the foregoing supplemental brief complies with this Court's Order dated July 14, 2023, because it contains 1,497 words, as determined by the word-count function of Microsoft Word, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Microsoft Word in Times New Roman, 14-point font.


*Gassan A. Baloul*
Gassan A. Baloul

*Counsel for Defendants-Appellees*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of July 2023, the foregoing document was filed with the Clerk of the Court and served via CM/ECF upon counsel of record for Appellants.

*Gassan A. Baloul*
Gassan A. Baloul

*Counsel for Defendants-Appellees*