# 15-3135(L)

**15-3151(XAP), 22-1060(CON)**  *To Be Argued By*:
BENJAMIN H. TORRANCE

## 𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔆𝔬𝔲𝔯𝔱 𝔬𝔣 𝔄𝔭𝔭𝔢𝔞𝔩𝔰

### FOR THE SECOND CIRCUIT

### Docket Nos. 15-3135(L), 15-3151(XAP), 22-1060(CON)

EVA WALDMAN, REVITAL BAUER, individually and as natural guardian of plaintiffs Yehonathon Bauer, Binyamin Bauer, Daniel Bauer and Yehuda Bauer, SHAUL MANDELKORN, NURIT MANDELKORN, OZ JOSEPH GUETTA, minor, by his next friend and guardian Varda Guetta, VARDA GUETTA, individually and as natural guardian of plaintiff Oz Joseph Guetta, NORMAN GRITZ, individually and as personal representative of the Estate of David Gritz, MARK I. SOKOLOW, individually and as a natural guardian of Plaintiff Jamie A. Sokolow, RENA M. SOKOLOW, individually and as a natural guardian of plaintiff Jamie A. Sokolow, JAMIE A. SOKOLOW, minor, by her next

*(Caption continued on inside cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## INTERVENOR-APPELLANT'S PETITION FOR REHEARING EN BANC

BRIAN M. BOYNTON,
*Principal Deputy
Assistant Attorney
General*
SHARON SWINGLE,
COURTNEY L. DIXON,
*Attorneys, Appellate Staff
Civil Division
Department of Justice*

DAMIAN WILLIAMS,
*United States Attorney for the
Southern District of New York,
Attorney for Intervenor-Appellant.*
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2703

BENJAMIN H. TORRANCE,
    *Assistant United States Attorney,
    Of Counsel.*

friends and guardian Mark I. Sokolow and Rena M. Sokolow, LAUREN M. SOKOLOW, ELANA R. SOKOLOW, SHAYNA EILEEN GOULD, RONALD ALLAN GOULD, ELISE JANET GOULD, JESSICA RINE, SHMUEL WALDMAN, HENNA NOVACK WALDMAN, MORRIS WALDMAN, ALAN J. BAUER, individually and as natural guardian of plaintiffs Yehonathon Bauer, Binyamin Bauer, Daniel Bauer and Yehuda Bauer, YEHONATHON BAUER, minor, by his next friend and guardians Dr. Alan J. Bauer and Revital Bauer, BINYAMIN BAUER, minor, by his next friend and guardians Dr. Alan J. Bauer and Revital Bauer, DANIEL BAUER, minor, by his next friend and guardians Dr. Alan J. Bauer and Revital Bauer, YEHUDA BAUER, minor, by his next friend and guardians Dr. Alan J. Bauer and Revital Bauer, RABBI LEONARD MANDELKORN, KATHERINE BAKER, individually and as personal representative of the Estate of Benjamin Blutstein, REBEKAH BLUTSTEIN, RICHARD BLUTSTEIN, individually and as personal representative of the Estate of Benjamin Blutstein, LARRY CARTER, individually and as personal representative of the Estate of Diane ("Dina") Carter, SHAUN COFFEL, DIANNE COULTER MILLER, ROBERT L COULTER, JR., ROBERT L. COULTER, SR., individually and as personal representative of the Estate of Janis Ruth Coulter, CHANA BRACHA GOLDBERG, minor, by her next friend and guardian Karen Goldberg, ELIEZER SIMCHA GOLDBERG, minor, by her next friend and guardian Karen Goldberg, ESTHER ZAHAVA GOLDBERG, minor, by her next friend and guardian Karen Goldberg, KAREN GOLDBERG, individually, as personal representative of the Estate of Stuart Scott Goldberg/natural guardian of plaintiffs Chana Bracha Goldberg, Esther Zahava Goldberg, Yitzhak Shalom Goldberg, Shoshana Malka Goldberg, Eliezer Simcha Goldberg, Yaakov Moshe Goldberg, Tzvi Yehoshua Goldberg, SHOSHANA MALKA GOLDBERG, minor, by her next friend and guardian Karen Goldberg, TZVI YEHOSHUA GOLDBERG, minor, by her next friend and guardian Karen Goldberg, YAAKOV MOSHE GOLDBERG, minor, by her next friend and guardian Karen Goldberg, YITZHAK SHALOM GOLDBERG, minor, by her next friend and guardian Karen Goldberg, NEVENKA GRITZ, sole heir of Norman Gritz, deceased,

*Plaintiffs-Appellants,*

UNITED STATES OF AMERICA,

*Intervenor-Appellant,*

—v.—

PALESTINE LIBERATION ORGANIZATION, PALESTINIAN AUTHORITY, aka Palestinian Interim Self-Government Authority and/or Palestinian Council and/or Palestinian National Authority,

*Defendants-Appellees,*

YASSER ARAFAT, MARWIN BIN KHATIB BARGHOUTI, AHMED
TALEB MUSTAPHA BARGHOUTI, AKA Al-Faransi, NASSER
MAHMOUD AHMED AWEIS, MAJID AL-MASRI, AKA Abu Mojahed,
MAHMOUD AL-TITI, MOHAMMED ABDEL RAHMAN SALAM
MASALAH, AKA Abu Satkhah, FARAS SADAK MOHAMMED
GHANEM, AKA Hitawi, MOHAMMED SAMI IBRAHIM ABDULLAH,
ESTATE OF SAID RAMADAN, deceased, ABDEL KARIM RATAB
YUNIS AWEIS, NASSER JAMAL MOUSA SHAWISH, TOUFIK
TIRAWI, HUSSEIN AL-SHAYKH, SANA'A MUHAMMED
SHEHADEH, KAIRA SAID ALI SADI, ESTATE OF MOHAMMED
HASHAIKA, deceased, MUNZAR MAHMOUD KHALIL NOOR,
ESTATE OF WAFA IDRIS, deceased, ESTATE OF MAZAN
FARITACH, deceased, ESTATE OF MUHANAD ABU HALAWA,
deceased, JOHN DOES, 1-99, HASSAN ABDEL RAHMAN,

*Defendants.*

**TABLE OF CONTENTS**

PAGE

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . .  2

    A.   Background . . . . . . . . . . . . . . . . . . . . . . . . .  2

        1.   The PA and PLO . . . . . . . . . . . . . . . . .  2

        2.   The ATA and PSJVTA. . . . . . . . . . . . .  3

    B.   District Court Proceedings. . . . . . . . . . . . .  5

    C.   The Panel Decision . . . . . . . . . . . . . . . . . . . .  6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

    A.   The PSJVTA Reasonably Establishes
        Personal Jurisdiction . . . . . . . . . . . . . . . . . .  8

    B.   The Panel Misapplied the
        Requirements of Due Process . . . . . . . . . .  10

    C.   The Fifth Amendment's Due Process
        Standards Permit the PSJVTA's
        Basis for Jurisdiction . . . . . . . . . . . . . . . . .  14

ii

# TABLE OF AUTHORITIES

*Cases*:

*Bank Markazi v. Peterson*,
  578 U.S. 212 (2016)........................ 14

*Bristol-Myers Squibb Co. v. Superior Court*,
  582 U.S. 255 (2017)..................... 14, 15

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985)....................... 8, 9

*Burnet v. Brooks*,
  288 U.S. 378 (1933)......................... 16

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)......................... 4

*EEOC v. Arabian American Oil Co.*,
  499 U.S. 244 (1991)........................ 15

*Fuld v. PLO*,
  82 F.4th 74 (2d Cir. 2023) .............. *passim*

*Fuld v. PLO*,
  578 F. Supp. 3d 577 (S.D.N.Y. 2022)........ 6, 11

*Insurance Corporation of Ireland v.
  Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982).................... *passim*

*J. McIntyre Machinery, Ltd. v. Nicastro*,
  564 U.S. 873 (2011)........................ 15

*Klinghoffer v. S.N.C. Achille Lauro*,
  937 F.2d 44 (2d Cir. 1991) ................... 3

iii

PAGE

*Mallory v. Norfolk Southern Railway Co.*,
   600 U.S. 122 (2023). . . . . . . . . . . . . . . . . . . *passim*

*Sokolow v. PLO*,
   590 F. Supp. 3d 589 (S.D.N.Y. 2022) . . . . . . . . . . 6

*United States v. Curtiss-Wright Export Corp.*,
   299 U.S. 304 (1936). . . . . . . . . . . . . . . . . . . . . . . 16

*Waldman v. PLO*,
   835 F.3d 317 (2d Cir. 2016) . . . . . . . . . . . . . . 4, 14

*Waldman v. PLO*,
   82 F.4th 64 (2d Cir. 2023) . . . . . . . . . . . . . . . . . 7

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980). . . . . . . . . . . . . . . . . . . . . . . 15

*Statutes*:

18 U.S.C. § 2334 . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

22 U.S.C. § 2378b . . . . . . . . . . . . . . . . . . . . . . . . . . 2

22 U.S.C. § 5201 . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

22 U.S.C. § 5202 . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Pub. L. No. 102-572 . . . . . . . . . . . . . . . . . . . . . . . . 4

Pub. L. No. 109-446 . . . . . . . . . . . . . . . . . . . . . . . . 2

Pub. L. No. 115-253 . . . . . . . . . . . . . . . . . . . . . . . . 4

Pub. L. No. 116-94 . . . . . . . . . . . . . . . . . . . . . . . . . 4

Pub. L. No. 117-103 . . . . . . . . . . . . . . . . . . . . . . . . 2

iv

PAGE

*Rules*:

Fed. R. App. P. 35(a)(2) . . . . . . . . . . . . . . . . . . . . . . . 2

*Other Authorities*:

Restatement (Third) of Foreign Relations Law
  § 421(2)(j) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

### Docket Nos. 15-3135(L), 15-3151(xap), 22-1060(con)

———————

### INTERVENOR-APPELLANT'S PETITION FOR REHEARING EN BANC

———————

To ensure American victims of international terrorism are able to seek redress in U.S. courts, Congress enacted the Promoting Security and Justice for Victims of Terrorism Act ("PSJVTA"). That statute provides that if the Palestinian Authority ("PA"), the Palestine Liberation Organization ("PLO"), or their successors or affiliates engage in certain activities, they will be deemed to have consented to personal jurisdiction in civil cases under the Anti-Terrorism Act of 1992 ("ATA"). By ensuring this nation's courts can exercise personal jurisdiction over those defendants, Congress sought to make the ATA's civil-remedies provision effective and to advance important foreign-policy objectives.

A panel of this Court erroneously held the PSJVTA's jurisdictional provision is inconsistent with due process. Consent, including implicit or constructive consent, is a valid basis for personal jurisdiction, and Congress's decision to "deem" specified activities of the PA and PLO to be consent to jurisdiction in the PSJVTA—activities in the United States or closely linked to the civil ATA claims at issue, with advance notice to the PA and PLO and an opportunity to cease

2

engaging in them, and in furtherance of the political branches' authority over foreign affairs—was entirely reasonable and proportional. That is particularly true under the standards of the Fifth Amendment, which, properly understood, permits a federal court to exercise more expansive personal jurisdiction over a foreign defendant in a case like this than state courts may exercise under the Fourteenth Amendment.

Because the invalidation of an Act of Congress is a "question of exceptional importance," Fed. R. App. P. 35(a)(2), rehearing en banc is warranted to correct the panel's errors.

## Statement of the Case

### A. Background

#### 1. The PA and PLO

In 1987, Congress "determine[d] that the PLO and its affiliates are a terrorist organization and a threat to the interests of the United States, its allies, and to international law and should not benefit from operating in the United States." 22 U.S.C. § 5201(b). Congress thus made it unlawful for the PLO or "its constituent groups" to "establish or maintain an office, headquarters, premises, or other facilities or establishments" within the U.S. *Id.* § 5202; *see also* Pub. L. No. 109-446, § 7, 22 U.S.C. § 2378b note (prohibition of PA facilities in U.S. under certain circumstances). Although the Executive Branch has authority to waive this prohibition, *e.g.,* Pub. L. No. 117-103,

3

§ 7041(*l*)(3)(B) (2022), no such waiver is currently in effect.[1]

The PLO has been recognized by the United Nations as the representative of the Palestinian people, and the United States has engaged with it on that basis since the time of the Oslo Accords. The PA was created under the Oslo Accords to exercise interim governance authority for the Palestinian people in Gaza and the West Bank. The United States does not recognize either the PA or the PLO as a sovereign government. As a matter of historical practice, Congress and the Executive Branch have worked together closely to determine U.S. policies with respect to those entities.[2]

## 2. The ATA and PSJVTA

In the ATA, "to develop a comprehensive legal response to international terrorism," Congress created a civil damages remedy for U.S. nationals harmed by an act of international terrorism. H.R. Rep. No. 102-1040,

---

[1]   The PLO's U.N. Observer Mission is not subject to this prohibition. *Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 46 (2d Cir. 1991).

[2]   The United States currently assists training of PA security forces, a key partner in efforts to stabilize the West Bank. Anticipating an end to the current conflict between Hamas and Israel, the United States has expressed the view that the future of Gaza must include Palestinian-led governance and Gaza unified with the West Bank under the PA.

4

at 5 (1992) ("1992 House Report"); *see* Pub. L. No. 102-572, § 1003(a), 106 Stat. 4506, 4521-24 (1992).

Before 2014, courts regularly exercised general personal jurisdiction in ATA cases against the PA and PLO based on their contacts with the United States. But following *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014), courts—including this Court—concluded the PA and PLO were not subject to general jurisdiction; they also declined to exercise specific personal jurisdiction over those entities. *Waldman v. PLO*, 835 F.3d 317, 337 (2d Cir. 2016).

Congress responded in 2018 by enacting the Anti-Terrorism Clarification Act, which provided that in an ATA action, "a defendant shall be deemed to have consented to personal jurisdiction" if it satisfied certain conditions. Pub. L. No. 115-253, § 4, 132 Stat. 3183, 3184. After this Court and others held those factual predicates were not satisfied in cases against the PA and PLO, Congress enacted the PSJVTA. Pub. L. No. 116-94, § 903, 133 Stat. 2534, 3082 (Dec. 20, 2019). The PSJVTA defines "defendant" to include the PA, PLO, and their affiliates and successors, and revises the factual predicates for those defendants' conduct that will be deemed consent to personal jurisdiction in civil ATA actions. *Id.* § 903(c)(1)(A).

The PSJVTA first focuses on payments to terrorists in Israeli prisons and to the families of those killed while committing terrorist acts that injure or kill a U.S. national. A defendant "shall be deemed to have consented to personal jurisdiction" in ATA cases if, more than 120 days after the PSJVTA's enactment (i.e., after April 18, 2020), it

5

makes any payment, directly or indirectly—

(i) to any payee designated by any individual who, after being fairly tried or pleading guilty, has been imprisoned for committing any act of terrorism that injured or killed a national of the United States, if such payment is made by reason of such imprisonment; or

(ii) to any family member of any individual, following such individual's death while committing an act of terrorism that injured or killed a national of the United States, if such payment is made by reason of the death of such individual . . . .

18 U.S.C. § 2334(e)(1)(A).

The PSJVTA next provides a defendant "shall be deemed to have consented to personal jurisdiction" if more than fifteen days after the PSJVTA's enactment (i.e., after January 4, 2020), it maintains, establishes, or procures any office in the U.S. or "conducts any activity while physically present in the United States on behalf of" the PLO or PA, outside exceptions related to U.N. business, activities involving government officials or certain training activities, legal representation, or ancillary activities. 18 U.S.C. § 2334(e)(1)(B), (e)(3).

## B. District Court Proceedings

These two ATA actions were brought against the PA and PLO by U.S.-national victims of terrorism or

their families. In both cases, plaintiffs assert personal jurisdiction under the PSJVTA, alleging the payments prong and U.S.-activities prong are satisfied.

The district courts held the PSJVTA's deemed-consent provision is inconsistent with Fifth Amendment due process. The courts recognized that due process permits personal jurisdiction based on a defendant's express or implied consent. *Fuld v. PLO*, 578 F. Supp. 3d 577, 585-86 (S.D.N.Y. 2022); *Sokolow v. PLO*, 590 F. Supp. 3d 589, 595-96 (S.D.N.Y. 2022). But they concluded it is not reasonable to infer the PA and PLO have knowingly and voluntarily consented to jurisdiction, even if they have undertaken the activities the PSJVTA deems to constitute consent. *Fuld*, 578 F. Supp. 3d at 586-94; *Sokolow*, 590 F. Supp. 3d at 596-97.

## C. The Panel Decision

A panel of this Court affirmed both decisions, writing its primary analysis in *Fuld* ("Op."; 82 F.4th 74 (2d Cir. 2023)). The panel recognized that express or implied consent can be manifested through a "variety of legal arrangements." (Op. 24-25 (quotation marks omitted)). The panel reasoned, however, that "consent cannot be found based solely on a government decree pronouncing that activities unrelated to being sued in the forum will be 'deemed' to be 'consent' to jurisdiction there." (Op. 26).

In the panel's view, the PSJVTA's payments prong improperly imposed a "jurisdictional sanction" on the PA and PLO in order to "deter a congressionally disfavored activity." (Op. 33-34). The panel found the U.S.-

activities prong similarly insufficient, reasoning that
separate laws prohibit the PA and PLO from engaging
in activity in the U.S. absent "specific executive or
statutory waivers"; the PSJVTA does not "purport to
relax or override" those statutory prohibitions and
thus does not confer any "rights or benefits on the [PA
and PLO] in return" for their consent to jurisdiction.
(Op. 35-37).

Regarding the Supreme Court's decision in *Mallory
v. Norfolk Southern Railway Co.*, 600 U.S. 122 (2023),
which upheld a state law conditioning registration to
do business in the state on a business's agreement to
appear in the state's courts, the panel determined the
out-of-state defendant had received a "benefit" in "ex-
change" for agreeing to "be sued in that jurisdiction,"
and the acceptance of that benefit was sufficient to
constitute implied consent. (Op. 42-43). But the panel
stated its view that the PSJVTA offers no similar ben-
efit to the PA and PLO, and therefore consent to juris-
diction could not be inferred. (Op. 44).

The panel also held the Fifth Amendment does not
subject Congress to a more "lenient due process stand-
ard" than states under the Fourteenth Amendment.
(Op. 59). The panel reaffirmed this Court's precedent
that the Fifth Amendment and Fourteenth Amend-
ment analyses are the same, and regardless found no
reason to treat them differently. (Op. 60-61).

In *Waldman*, the panel incorporated its analysis in
*Fuld* and again held the PSJVTA violates due process.
82 F.4th 64, 73 (2d Cir. 2023).

8

# **A R G U M E N T**

Rehearing is warranted to correct the panel's erroneous decision, which held unconstitutional an Act of Congress designed to ensure the ATA's civil-liability provision functions effectively to combat international terrorism harming Americans.

## A. The PSJVTA Reasonably Establishes Personal Jurisdiction

"'[E]xpress or implied consent' can . . . ground personal jurisdiction—and consent may be manifested in various ways by word or deed." *Mallory*, 600 U.S. at 138 (plurality op.) (quoting *Insurance Corporation of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). "'[A] variety of legal arrangements'" can therefore constitute consent "consistent with due process." *Id.* at 136 n.5 (majority op.) (quoting *Bauxites*, 456 U.S. at 703; quotation marks and alteration omitted).

The PSJVTA creates one such legal arrangement, and it was "hardly unfair" for Congress to have done so. *Id.* at 146 n.11 (plurality op.); *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14 (1985) (consent-based personal jurisdiction arrangement "does not offend due process" where consent was not "unreasonable and unjust" (quotation marks omitted)). The statute permits "deemed" consent to personal jurisdiction only in a limited class of cases: civil actions under the ATA by U.S. nationals who were victims of terrorism. It applies only to a limited group of defendants: the PLO and PA and their successors and affiliates—*sui generis* foreign entities that exercise governmental

9

power but have not been recognized as a sovereign government by the Executive Branch. The only payments it deems to constitute consent to jurisdiction are those connected to attacks that killed or injured U.S. nationals, closely linking that prong to the ATA's cause of action for U.S. nationals who are victims of international terrorism. And the U.S.-activities prong is connected to longstanding antiterrorism-related conditions that Congress and the Executive have imposed on the PA and PLO.

Thus, since the PSJVTA's enactment the PA and PLO have had fair notice of what actions will be deemed to be consent for civil ATA claims, and those actions are reasonably connected to the ATA claims that may proceed. And the PA and PLO have had the opportunity to choose whether to continue such actions —that is, to "structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King*, 471 U.S. at 472 (quotation marks omitted). A federal court's exercise of jurisdiction over them under the PSJVTA therefore does "not offend traditional notions of fair play and substantial justice." *Bauxites*, 456 U.S. at 702-03 (quotation marks omitted).

*Mallory* confirms the PSJVTA's constitutionality. The Supreme Court upheld as consistent with due process a Pennsylvania law providing that an out-of-state company's registration as a foreign corporation made the company amenable to suit in Pennsylvania courts "on any claim." 600 U.S. at 135 (majority op.). The Court explained that Pennsylvania's law was "explicit" that registration in the state would permit state courts

10

"to exercise general personal jurisdiction" over a foreign corporation, and that the out-of-state defendant "understood" it would be "amenable to suit on any claim" as a result of registering. *Id.* at 135 (majority op.) (quotation marks omitted); *accord id.* at 150-52 (Alito, J., concurring in part and concurring in judgment) (consent occurred where defendant "acted with knowledge" or "took steps" that "were understood as consent" (quotation marks omitted)); *id.* at 148 (Jackson, J., concurring) (when defendant "made th[e] decision" to register "the jurisdictional consequences of registration were clear").

The PSJVTA similarly gives clear notice to the PA and PLO as to what conduct will be deemed consent to jurisdiction in U.S. courts. Indeed, the PSJVTA's deemed-consent provision is much narrower than the business-registration statute in *Mallory*: the PSJVTA is targeted to a specific type of claim—civil ATA claims—and is limited to a class of defendants that are *sui generis* foreign entities that have a unique relationship with the U.S. government and that may seek to engage in activities in the United States, or to have made payments to those responsible for injuring U.S. nationals or their families.

## B. The Panel Misapplied the Requirements of Due Process

In reaching its contrary conclusion, the panel took too narrow a view of the circumstances in which consent may be implied from a defendant's conduct and failed to give sufficient weight to the limitations in the

11

PSJVTA and the unique foreign-affairs context in which it was enacted.

The panel recognized that "a variety of legal arrangements" may represent a defendant's consent to personal jurisdiction, which may be express or implied. (Op. 24-26 (quotation marks omitted)). But the panel interpreted the case law to essentially recognize only two ways a defendant may impliedly consent: through "litigation-related conduct" (Op. 27-28), or due to a defendant's "reciprocal bargain[ ]" to accept a "government benefit" in exchange for submission to the forum (Op. 26-27, 29-30). The panel concluded that neither circumstance was present here and therefore consent could not fairly be implied under the PSJVTA.

But that is too narrow an understanding of the circumstances under which consent to jurisdiction can be inferred. *See Bauxites*, 456 U.S. at 704-05 (even absent intentional waiver of the personal jurisdiction requirement, there are "various reasons" a defendant may lose that protection). Nothing in the Fifth Amendment's text or history or in the case law concerning personal jurisdiction limits implied consent to litigation-related conduct or a "reciprocal bargain" for a government benefit. *See Fuld*, 578 F. Supp. 3d at 595 n.10 (no case holds "receipt of a benefit is a necessary condition" to consent). Nor is *Mallory*'s reasoning limited to only an "exchange" of benefits. As discussed above, *Mallory* relied on the fact that the defendant had "understood" that by registering in the jurisdiction it would be "amenable to suit" there, and reiterated that a "variety" of mechanisms may demonstrate consent to jurisdiction. 600 U.S. at 135-36 & n.5 (majority

12

op.); *id.* at 150-52 (op. of Alito, J.); *id.* at 148 (Jackson, J., concurring). Indeed, even "mere formalities" unconnected to litigation can have "jurisdictional consequences." *Id.* at 145 (plurality op.).

Where, as here, Congress provided fair notice to a limited, *sui generis* class of defendants of what conduct will be deemed consent for a specific type of claim, and the identified conduct is fairly connected to the subject matter of the litigation and the United States as a forum, it is fair and reasonable for federal courts to exercise jurisdiction over defendants on that specific type of claim, even if there is not a "reciprocal" exchange of benefits. (Op. 30). Moreover, at least with respect to the U.S.-activities prong, the United States has indeed conferred a "benefit" (Op. 37): to the extent the PA and PLO are performing activities in the U.S. that satisfy that prong, they are receiving the benefit of being permitted to do so because the United States could limit or prohibit them from engaging in those activities in the U.S.—and, in some cases, has done so. *See supra* Statement A.1. The activities prong thus serves the same function as registration in *Mallory* in subjecting defendants to suit. It does "not offend traditional notions of fair play and substantial justice" for Congress to specify that the performance of such activities will be considered consent to personal jurisdiction in U.S. courts. *Bauxites*, 456 U.S. at 702-03 (quotation marks omitted).

The panel further erred in concluding the PSJVTA's prongs lack a sufficient "connection" to the subject matter of the litigation and the U.S. as a forum. (Op. 40). The panel's reasoning fails to account for the

13

United States' unique relationship with the PA and PLO and the particular foreign-affairs context in which the PSJVTA was enacted.

The civil-liability provision of the ATA is intended to be part of Congress's "comprehensive legal response to international terrorism." 1992 House Report at 5. Congress determined, however, that because courts have held that the PA and PLO are not subject to general personal jurisdiction in the U.S., the goals of the ATA were not being realized; Congress therefore enacted the PSJVTA so that the ATA's civil-liability provision could function effectively.

The actions of the PA and PLO that Congress selected in the PSJVTA as a basis for personal jurisdiction for civil ATA claims are consistent with this legislative purpose and have a reasonable connection to the subject matter of the litigation and the U.S. as a forum. Where Congress has found that payments by the PA and PLO to designees and family members of persons who committed acts of terrorism that killed or injured U.S. nationals incentivize terrorist actions, it is fair and reasonable for Congress to deem the PA's and PLO's continuation of such payments to constitute their consent to personal jurisdiction in U.S. courts on civil claims for the same type of conduct. Similarly, where Congress and the Executive Branch have long conditioned the PA's and PLO's ability to engage in a range of activities in the U.S. on the judgments of the political branches concerning their renunciation of terrorism and commitment to peace, it is fair and reasonable for Congress to specify that to the extent the PA and PLO continue to perform certain activities in the

14

United States, the performance of those activities will be deemed consent to personal jurisdiction in U.S. courts for terrorism-related claims.

The PSJVTA's provisions must be understood in light of this foreign-affairs context. Significantly, Congress's judgment on such "matter[s] of foreign policy" "warrants respectful review by courts." *Bank Markazi v. Peterson*, 578 U.S. 212, 215 (2016). Rehearing en banc should be granted to correct the panel's errors.

## C.   The Fifth Amendment's Due Process Standards Permit the PSJVTA's Basis for Jurisdiction

In holding the PSJVTA unconstitutional, the panel also reaffirmed this Court's precedent that the personal-jurisdiction analysis is "basically the same" under the Fifth and Fourteenth Amendments. (Op. 21 & n.6 (citing *Waldman*, 835 F.3d at 330)). Although the PSJVTA is constitutional even under the Fourteenth Amendment's limitations, this Court should grant review to reconsider its prior conclusion that the analyses are the "same." *Id.* Properly understood, the Fifth Amendment permits federal courts to assert personal jurisdiction over a foreign defendant in certain circumstances that have no analogue for a state court exercising personal jurisdiction under the Fourteenth Amendment.

The Supreme Court has "le[ft] open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court" as the Fourteenth Amendment. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S.

15

255, 268-69 (2017). But members of the Court have observed that "personal jurisdiction requires a forum-by-forum, or sovereign-by-sovereign, analysis." *J. McIntyre Machinery, Ltd. v. Nicastro*, 564 U.S. 873, 884 (2011) (plurality op.).

Importantly, the limitations recognized in the Fourteenth Amendment context reflect not only concerns about fairness to individual defendants but also concerns about federalism and the limited and mutually exclusive sovereignty of the several states. *See, e.g.*, *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-94 (1980). The panel minimized those federalism concerns, reasoning that the restrictions on personal jurisdiction are "'ultimately a function of the individual liberty interest.'" (Op. 60-61 (quoting *Bauxites*, 456 U.S. at 702 & n.10)). But that individual liberty interest "depends on whether the sovereign has authority to render" a judicial judgment against that individual. *Nicastro*, 564 U.S. at 884 (plurality op.). The states' authority to do so turns on "territorial limitations" on their power, meaning that "at times, th[e] federalism interest may be decisive." *Bristol-Myers*, 582 U.S. at 263.

But that federalism interest does not apply to the United States, which has authority over foreign commerce and foreign affairs and, unlike a state, power "to enforce its laws beyond [its] territorial boundaries." *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 248 (1991). Moreover, the United States' "powers of external sovereignty" and its ability to conduct relationships with foreign actors are grounded in the United States' status in international law as an independent

16

state. *United States v. Curtiss-Wright Export Corp.*, 299 U.S. 304, 318 (1936). While "[t]he limits of [an individual U.S. state's] power are defined in view of the relation of the states to each other in the Federal Union," the United States' power "in relation to other countries and their subjects" is informed by "the principles of jurisdiction recognized in international relations." *Burnet v. Brooks*, 288 U.S. 378, 396, 403-06 (1933).

At a minimum, this context suggests the Fourteenth Amendment's limitations should not be adopted reflexively into the Fifth Amendment. *See, e.g.*, Restatement (Third) of Foreign Relations Law § 421(2)(j) ("In general, a state's exercise of jurisdiction to adjudicate with respect to a person . . . is reasonable if, at the time jurisdiction is asserted . . . the person . . . had carried on outside the state an activity having a substantial, direct, and foreseeable effect within the state . . . ."). The United States' position as a sovereign in the international community and its special competence in matters of foreign affairs and international commerce are relevant to whether a federal court's exercise of jurisdiction over a foreign defendant pursuant to congressional authorization is fair and reasonable, and those considerations should inform the analysis of what conduct is fair for Congress to deem consent to jurisdiction in U.S. courts on a particular type of claim. That is particularly so with respect to foreign entities such as the PA and PLO that exercise governmental power but have not been recognized as a sovereign government by the Executive.

17

As discussed above, Congress has enacted numer-
ous laws, including the ATA, combating acts of inter-
national terrorism outside the United States that
affect U.S. persons and interests, and Congress has
sought to make that legislation effective by putting the
PA and PLO on reasonable notice that engaging in cer-
tain related activities will subject them to the adjudi-
cative authority of federal courts for purposes of those
specific claims. Even if a state could not enact similar
legislation consistent with structural limitations on
state authority and the Fourteenth Amendment, the
Fifth Amendment does not prohibit the United States
from determining that certain actions of the PA and
PLO properly subject them to personal jurisdiction in
U.S. courts in these limited circumstances.

\* \* \*

18

**The Court should grant rehearing en banc.**

Dated:    New York, New York
            November 22, 2023

                Respectfully submitted,

                DAMIAN WILLIAMS,
                *United States Attorney for the*
                *Southern District of New York,*
                *Attorney for Intervenor-Appellant.*

                BENJAMIN H. TORRANCE,
                *Assistant United States Attorney,*
                   *Of Counsel.*

BRIAN M. BOYNTON,
*Principal Deputy Assistant Attorney General*

SHARON SWINGLE,
COURTNEY L. DIXON,
*Attorneys, Appellate Staff*
*Civil Division*
    *Department of Justice*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), the undersigned counsel hereby certifies that this brief complies with the type-volume limitation of the Federal Rules of Appellate Procedure and this Court's Local Rules. As measured by the word processing system used to prepare this brief, there are 3900 words in this brief.

DAMIAN WILLIAMS,
*United States Attorney for the*
*Southern District of New York*

By: BENJAMIN H. TORRANCE,
*Assistant United States Attorney*

**ADDENDUM**

# Add. 1

15-3135-cv (L)

Waldman v. Palestine Liberation Organization

### UNITED STATES COURT OF APPEALS

#### FOR THE SECOND CIRCUIT
_____

August Term 2022

Argued: May 3, 2023

Decided: September 8, 2023

Docket Nos. 15-3135-cv (L), 15-3151-cv (XAP), 22-1060-cv (Con)
_____

EVA WALDMAN, REVITAL BAUER, INDIVIDUALLY AND AS NATURAL GUARDIAN OF PLAINTIFFS YEHONATHON BAUER, BINYAMIN BAUER, DANIEL BAUER AND YEHUDA BAUER, SHAUL MANDELKORN, NURIT MANDELKORN, OZ JOSEPH GUETTA, MINOR, BY HIS NEXT FRIEND AND GUARDIAN VARDA GUETTA, VARDA GUETTA, INDIVIDUALLY AND AS NATURAL GUARDIAN OF PLAINTIFF OZ JOSEPH GUETTA, NORMAN GRITZ, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DAVID GRITZ, MARK I. SOKOLOW, INDIVIDUALLY AND AS A NATURAL GUARDIAN OF PLAINTIFF JAMIE A. SOKOLOW, RENA M. SOKOLOW, INDIVIDUALLY AND AS A NATURAL GUARDIAN OF PLAINTIFF JAIME A. SOKOLOW, JAMIE A. SOKOLOW, MINOR, BY HER NEXT FRIENDS AND GUARDIAN MARK I. SOKOLOW AND RENA M. SOKOLOW, LAUREN M. SOKOLOW, ELANA R. SOKOLOW, SHAYNA EILEEN GOULD, RONALD ALLAN GOULD, ELISE JANET GOULD, JESSICA RINE, SHMUEL WALDMAN, HENNA NOVACK WALDMAN, MORRIS WALDMAN, ALAN J. BAUER, INDIVIDUALLY AND AS NATURAL GUARDIAN OF PLAINTIFFS YEHONATHON BAUER, BINYAMIN BAUER, DANIEL BAUER AND YEHUDA BAUER, YEHONATHON BAUER, MINOR, BY HIS NEXT FRIEND AND GUARDIANS DR. ALAN J. BAUER AND REVITAL BAUER, BINYAMIN BAUER, MINOR, BY HIS NEXT FRIEND AND GUARDIANS DR. ALAN J. BAUER AND REVITAL BAUER, DANIEL BAUER, MINOR, BY HIS NEXT FRIEND AND GUARDIANS DR. ALAN J. BAUER AND REVITAL BAUER, YEHUDA BAUER, MINOR, BY HIS NEXT FRIEND AND GUARDIANS DR. ALAN J. BAUER AND REVITAL BAUER, RABBI LEONARD MANDELKORN, KATHERINE BAKER, INDIVIDUALLY AND AS PERSONAL

**Add. 2**

REPRESENTATIVE OF THE ESTATE OF BENJAMIN BLUTSTEIN, REBEKAH BLUTSTEIN, RICHARD BLUTSTEIN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BENJAMIN BLUTSTEIN, LARRY CARTER, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DIANE ("DINA") CARTER, SHAUN COFFEL, DIANNE COULTER MILLER, ROBERT L COULTER, JR., ROBERT L. COULTER, SR., INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JANIS RUTH COULTER, CHANA BRACHA GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, ELIEZER SIMCHA GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, ESTHER ZAHAVA GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, KAREN GOLDBERG, INDIVIDUALLY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF STUART SCOTT GOLDBERG/NATURAL GUARDIAN OF PLAINTIFFS CHANA BRACHA GOLDBERG, ESTHER ZAHAVA GOLDBERG, YITZHAK SHALOM GOLDBERG, SHOSHANA MALKA GOLDBERG, ELIEZER SIMCHA GOLDBERG, YAAKOV MOSHE GOLDBERG, TZVI YEHOSHUA GOLDBERG, SHOSHANA MALKA GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, TZVI YEHOSHUA GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, YAAKOV MOSHE GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, YITZHAK SHALOM GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, NEVENKA GRITZ, SOLE HEIR OF NORMAN GRITZ, DECEASED,

*Plaintiffs – Appellants,*

UNITED STATES OF AMERICA,

*Intervenor – Appellant,*

—v.—

PALESTINE LIBERATION ORGANIZATION, PALESTINIAN AUTHORITY, AKA PALESTINIAN INTERIM SELF-GOVERNMENT AUTHORITY AND/OR PALESTINIAN COUNCIL AND/OR PALESTINIAN NATIONAL AUTHORITY,

*Defendants – Appellees,*

2

**Add. 3**

YASSER ARAFAT, MARWIN BIN KHATIB BARGHOUTI, AHMED TALEB MUSTAPHA
BARGHOUTI, AKA AL-FARANSI, NASSER MAHMOUD AHMED AWEIS, MAJID AL-
MASRI, AKA ABU MOJAHED, MAHMOUD AL-TITI, MOHAMMED ABDEL RAHMAN
SALAM MASALAH, AKA ABU SATKHAH, FARAS SADAK MOHAMMED GHANEM, AKA
HITAWI, MOHAMMED SAMI IBRAHIM ABDULLAH, ESTATE OF SAID RAMADAN,
DECEASED, ABDEL KARIM RATAB YUNIS AWEIS, NASSER JAMAL MOUSA SHAWISH,
TOUFIK TIRAWI, HUSSEIN AL-SHAYKH, SANA'A MUHAMMED SHEHADEH, KAIRA
SAID ALI SADI, ESTATE OF MOHAMMED HASHAIKA, DECEASED, MUNZAR MAHMOUD
KHALIL NOOR, ESTATE OF WAFA IDRIS, DECEASED, ESTATE OF MAZAN FARITACH,
DECEASED, ESTATE OF MUHANAD ABU HALAWA, DECEASED, JOHN DOES, 1-99,
HASSAN ABDEL RAHMAN,

*Defendants.*\*

_____

Before: LEVAL AND BIANCO, *Circuit Judges*, AND KOELTL, *District Judge*.\*\*

The plaintiffs, a group of United States citizens injured during terror attacks
in Israel and the estates or survivors of United States citizens killed in such attacks,
brought this action against the Palestine Liberation Organization ("PLO") and the
Palestinian Authority ("PA") pursuant to the Anti-Terrorism Act ("ATA"), 18
U.S.C. § 2333, seeking damages for alleged violations of the ATA related to those
attacks. This Court concluded on appeal that the district court lacked both general
and specific jurisdiction over the PLO and the PA, and we therefore vacated the
judgment entered against the defendants and remanded the action for dismissal.
The plaintiffs later moved to recall the mandate in this case based on a new statute,
the Anti-Terrorism Clarification Act of 2018, Pub. L. No. 115-253, 132 Stat. 3183.
We denied that motion because the statute's prerequisites had not been met.

Congress responded with the statute now at issue, the Promoting Security
and Justice for Victims of Terrorism Act of 2019 ("PSJVTA"), Pub. L. No. 116-94,
§ 903(c), 133 Stat. 2534, 3082. The PSJVTA provides that the PLO and the PA "shall
be deemed to have consented to personal jurisdiction" in any civil ATA action if,
after a specified time, those entities either (1) make payments, directly or

_____

\* The Clerk of Court is directed to amend the official caption as set forth above.

\*\* Judge John G. Koeltl, of the United States District Court for the Southern District of
New York, sitting by designation.

3

**Add. 4**

indirectly, to the designees or families of incarcerated or deceased terrorists, respectively, whose acts of terror injured or killed a United States national, or (2) undertake any activities within the United States, subject to limited exceptions. 18 U.S.C. § 2334(e). In light of this new statute, the Supreme Court vacated and remanded our decision denying the motion to recall the mandate, and we in turn remanded the case to the district court for the limited purpose of considering the PSJVTA. The district court (Daniels, <u>J.</u>) concluded that the defendants had engaged in jurisdiction-triggering conduct under the statute, but that the PSJVTA violated constitutional due process requirements. Both the plaintiffs and the Government now dispute the latter conclusion, and the plaintiffs argue generally that the PSJVTA justifies recalling the mandate.

In <u>Fuld v. Palestine Liberation Organization</u>, __ F.4th __, No. 22-76 (2d Cir. Sept. 8, 2023), which we also decide today, we conclude that the PSJVTA's provision for "deemed consent" to personal jurisdiction is inconsistent with the Fifth Amendment's Due Process Clause. Thus, no basis exists to recall the mandate in this case, and the plaintiffs' motion to recall the mandate is **DENIED.**

———————

KENT A. YALOWITZ, Arnold & Porter Kaye Scholer LLP, New York, NY (Avishai D. Don, Arnold & Porter Kaye Scholer LLP, New York, NY, Allon Kedem, Dirk C. Phillips, Stephen K. Wirth, Bailey M. Roe, Arnold & Porter Kaye Scholer LLP, Washington, D.C., *on the brief*), *for Plaintiffs-Appellants.*

MITCHELL R. BERGER, Squire Patton Boggs (US) LLP, Washington, D.C. (Gassan A. Baloul, Squire Patton Boggs (US) LLP, Washington, D.C., *on the brief*), *for Defendants-Appellees.*

BENJAMIN H. TORRANCE, Assistant United States Attorney, Of Counsel *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY (Brian M. Boynton, Principal Deputy Assistant Attorney General, Sharon Swingle, Attorney, Appellate Staff, Civil Division, U.S. Department of Justice,

**Add. 5**

Washington, D.C., *on the brief*), *for Intervenor-Appellant United States of America.*

Tejinder Singh, Sparacino PLLC, Washington, D.C., *for Amici Curiae Abraham D. Sofaer and Louis J. Freeh in Support of Plaintiffs-Appellants and Intervenor-Appellant.*

J. Carl Cecere, Cecere PC, Dallas, TX, *for Amici Curiae Senators and Representatives Charles E. Grassley, Jerrold Nadler, Richard Blumenthal, James Lankford, Sheldon Whitehouse, Kathleen Rice, Bradley E. Schneider, and Grace Meng in Support of Plaintiffs-Appellants and Intervenor Appellant.*

Joshua E. Abraham, Abraham Esq. PLLC, New York, NY, *for Amici Curiae Constitutional Law Scholars Philip C. Bobbitt, Michael C. Dorf, and H. Jefferson Powell in Support of Plaintiffs-Appellants.*

Dina Gielchinsky, Osen LLC, Hackensack, NJ, *for Amici Curiae Organizations Providing Support to Victims of Terror in Support of Plaintiffs-Appellants.*

Tad Thomas, Jeffrey R. White, American Association for Justice, Washington, D.C., *for Amici Curiae American Association for Justice in Support of Plaintiffs-Appellants.*

———————

PER CURIAM:

The plaintiffs, a group of United States citizens injured during terror attacks

in Israel and the estates or survivors of United States citizens killed in such attacks,

brought this action against the Palestine Liberation Organization ("PLO") and the

5

**Add. 6**

Palestinian Authority ("PA") pursuant to the Anti-Terrorism Act ("ATA"), 18 U.S.C. § 2333, seeking damages for alleged violations of the ATA related to those attacks. See id. § 2333(a). On appeal from a substantial post-trial judgment entered against the defendants, this Court concluded that the district court lacked both general and specific personal jurisdiction over the PLO and the PA. See Waldman v. Palestine Liberation Org., 835 F.3d 317, 344 (2d Cir. 2016) ("Waldman I"), cert. denied sub nom. Sokolow v. Palestine Liberation Org., 138 S. Ct. 1438 (2018) (mem.). We accordingly vacated the judgment and remanded the action for dismissal of the plaintiffs' claims. Id. Our mandate issued on November 28, 2016.

Since that time, Congress has twice enacted statutes purporting to establish personal jurisdiction over the PLO and the PA on the basis of consent, which, when validly given, may constitute an independent basis for subjecting a defendant to suit in a forum lacking general and specific jurisdiction. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 & n.14 (1985); Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703–04 (1982); see also Mallory v. Norfolk S. Ry. Co., 143 S. Ct. 2028, 2039 (2023) (plurality opinion). After the passage of the first such statute, the Anti-Terrorism Clarification Act of 2018 ("ATCA"), Pub. L. No. 115-253, 132 Stat. 3183, the plaintiffs moved to recall the

6

**Add. 7**

mandate in this case. In June 2019, we denied that motion because the ATCA's prerequisites for personal jurisdiction had not been satisfied. See Waldman v. Palestine Liberation Org., 925 F.3d 570, 574–76 (2d Cir. 2019) ("Waldman II") (per curiam), cert. granted, judgment vacated sub nom. Sokolow v. Palestine Liberation Org., 140 S. Ct. 2714 (2020) (mem.).

Congress responded with the enactment of the statute now at issue, the Promoting Security and Justice for Victims of Terrorism Act of 2019 ("PSJVTA"), Pub. L. No. 116-94, § 903(c), 133 Stat. 2534, 3082. The PSJVTA provides that the PLO and the PA "shall be deemed to have consented to personal jurisdiction" in any civil ATA action, irrespective of "the date of the occurrence" of the underlying "act of international terrorism," upon engaging in certain forms of post-enactment conduct, namely (1) making payments, directly or indirectly, to the designees or families of incarcerated or deceased terrorists, respectively, whose acts of terror injured or killed a United States national, or (2) undertaking any activities within the United States, subject to a handful of exceptions. 18 U.S.C. § 2334(e)(1).

The Supreme Court vacated and remanded our decision in Waldman II in light of the PSJVTA's enactment, see Sokolow, 140 S. Ct. 2714, and we in turn remanded to the district court for the limited purpose of considering the new

7

**Add. 8**

statute's effect on this case. The district court (Daniels, <u>J.</u>) concluded that the defendants had engaged in jurisdiction-triggering conduct under the statute, but that the PSJVTA's "deemed consent" provision violated constitutional due process requirements. The plaintiffs dispute the latter conclusion, and they argue generally that the PSJVTA justifies recalling this Court's mandate. The Government, as intervenor pursuant to 28 U.S.C. § 2403(a) and Federal Rule of Civil Procedure 5.1(c), joins the plaintiffs in defending the PSJVTA's constitutionality.

We address the very same constitutional issue in <u>Fuld v. Palestine Liberation Organization</u>, __ F.4th __, No. 22-76 (2d Cir. Sept. 8, 2023), which we also decide today. In <u>Fuld</u>, we conclude that the PSJVTA's provision for "deemed consent" to personal jurisdiction is inconsistent with the Due Process Clause of the Fifth Amendment. Thus, the statute cannot be applied to establish personal jurisdiction over the PLO or the PA, and as a result, no basis exists to recall the mandate in this case.

## I. BACKGROUND

We assume familiarity with <u>Waldman I</u>, <u>Waldman II</u>, and our decision today in <u>Fuld</u>, which collectively detail the history of this litigation and the relevant statutory background.

8

**Add. 9**

The plaintiffs commenced this action against the PLO and the PA in 2004, invoking the ATA's civil damages remedy for "national[s] of the United States injured . . . by reason of an act of international terrorism."[1] 18 U.S.C. § 2333(a). Throughout the pretrial proceedings, the PLO and the PA repeatedly moved to dismiss the claims against them for lack of personal jurisdiction. All of those motions were denied. The district court determined that it could exercise general jurisdiction over the defendants, see Sokolow v. Palestine Liberation Org., No. 04-cv-397, 2011 WL 1345086, at *7 (S.D.N.Y. Mar. 30, 2011), even after the Supreme Court narrowed the applicable test for general jurisdiction in Daimler AG v. Bauman, 571 U.S. 117 (2014).[2] See Sokolow v. Palestine Liberation Org., No. 04-cv-397, 2014 WL 6811395, at *1 (S.D.N.Y. Dec. 1, 2014).

After a seven-week trial beginning in January 2015, a jury found the defendants liable for six of the terror attacks at issue and awarded damages of

---

[1] As explained in Fuld, the PA was established under the 1993 Oslo Accords to serve as the non-sovereign and interim governing body of parts of the Gaza Strip and the West Bank (collectively referred to here as "Palestine"). The PLO, an entity founded in 1964, conducts Palestine's foreign affairs and serves as a Permanent Observer to the United Nations on behalf of the Palestinian people.

[2] For procedural reasons not relevant here, the proceedings before the district court are captioned differently, as Sokolow v. Palestine Liberation Organization, No. 04-cv-397 (S.D.N.Y.).

**Add. 10**

$218.5 million, an amount automatically trebled to $655.5 million pursuant to the ATA. See Waldman I, 835 F.3d at 322, 324; 18 U.S.C. § 2333(a). During the trial and again in post-trial briefing, the defendants unsuccessfully reasserted their argument that the case should be dismissed for lack of personal jurisdiction. The district court rejected those arguments and entered final judgment. The defendants then made the same arguments on appeal to this Court.

In Waldman I, this Court agreed with the defendants. The decision explained that the PLO and the PA have a Fifth Amendment due process right not to be sued in a forum with which they have insufficient contacts, see Waldman I, 835 F.3d at 329, and that the personal jurisdiction analysis is "basically the same under both the Fifth and Fourteenth Amendments," id. at 330. Applying Daimler, we determined that the district court lacked general jurisdiction because the PLO and the PA are not "at home" in the United States, but "in Palestine, where these entities are headquartered and from where they are directed." Id. at 334 (emphasis omitted) (citing Daimler, 571 U.S. at 139 n.20). We also found that the district court could not subject the defendants to specific jurisdiction, given the absence of any "substantial connection" between their "suit-related conduct — their role in the six terror attacks at issue — [and] . . . the forum." Id. at 335 (citing Walden v. Fiore,

10

**Add. 11**

571 U.S. 277, 284 (2014)). Thus, "[t]he district court could not constitutionally exercise either general or specific personal jurisdiction over the defendants." Id. at 344. We vacated the judgment of the district court and remanded the action "with instructions to dismiss the case for want of personal jurisdiction."[3] Id. at 322.

Our mandate issued on November 28, 2016. See Judgment Mandate, No. 15-3135, Doc. No. 248 (2d Cir. Nov. 28, 2016). The plaintiffs then filed a petition for a writ of certiorari, which was denied in April 2018. See Sokolow, 138 S. Ct. at 1438.

Congress responded to Waldman I and similar decisions with the enactment of the ATCA, Pub. L. No. 115-253, 132 Stat. 3183, a precursor to the statute at issue here. The ATCA amended the ATA to include a new subsection, 18 U.S.C. § 2334(e), which provided that a defendant would "be deemed to have consented to personal jurisdiction in . . . [a civil ATA] action if," following a 120-day period after the ATCA's enactment, the defendant (1) "accept[ed]" certain "form[s] of

---

[3] As discussed in Fuld, the United States Court of Appeals for the District of Columbia Circuit similarly concluded that federal courts lacked both general and specific jurisdiction over the PLO and the PA in civil ATA cases related to terrorist activity abroad. See Livnat v. Palestinian Auth., 851 F.3d 45, 54–58 (D.C. Cir. 2017) (concluding that exercising general or specific jurisdiction over the PA would not "meet the requirements of the Fifth Amendment's Due Process Clause"), cert. denied, 139 S. Ct. 373 (2018) (mem.); see also Shatsky v. Palestine Liberation Org., 955 F.3d 1016, 1036–37 (D.C. Cir. 2020) (same as to both the PLO and the PA); Est. of Klieman v. Palestinian Auth., 923 F.3d 1115, 1123–26 (D.C. Cir. 2019) (same), judgment vacated on other grounds, 140 S. Ct. 2713 (2020) (mem.), opinion reinstated in part, 820 F. App'x 11 (D.C. Cir. 2020) (mem.).

**Add. 12**

assistance" from the United States, or (2) "maintain[ed]" an office "within the jurisdiction of the United States" pursuant to a waiver or suspension of 22 U.S.C. § 5202, a provision barring the PLO from operating any such office. ATCA § 4, 132 Stat. at 3184. The ATCA took effect on October 3, 2018.

Several days later, on October 8, 2018, the plaintiffs filed a motion to recall the November 2016 mandate issued in this action. The plaintiffs argued that the ATCA established personal jurisdiction over the defendants with regard to the previously dismissed claims. We rejected that contention in <u>Waldman II</u>, reasoning that "[t]he plaintiffs ha[d] not shown that either factual predicate . . . of the ATCA [was] satisfied." 925 F.3d at 574. Specifically, the plaintiffs did not dispute that the PLO and the PA were no longer "accept[ing] qualifying assistance" from the United States, and they had failed to show that the defendants were maintaining any offices "within the jurisdiction of the United States" while "benefit[ing] from a waiver or suspension" of 22 U.S.C. § 5202. <u>Id.</u> at 574–75. For these reasons, and in light of "[t]his Court's interest in finality," we concluded that the circumstances did not "warrant invoking the extraordinary remedy of recalling a mandate issued two and a half years" earlier. <u>Id.</u> at 575–76.

12

**Add. 13**

Accordingly, on June 3, 2019, the plaintiffs' motion to recall the mandate was denied. Id. at 576.

While the plaintiffs' petition for a writ of certiorari from Waldman II was pending, Congress acted again, this time enacting the PSJVTA on December 20, 2019. See Pub. L. No. 116-94, § 903(c), 133 Stat. 2534, 3082. A detailed description of the PSJVTA is set forth in Fuld. Briefly, § 903(c) of the PSJVTA superseded the ATCA provision codified at 18 U.S.C. § 2334(e), resulting in a narrowed definition of the term "defendant," which now refers solely to the PLO, the PA, and any "successor[s]" or "affiliate[s]" thereof.[4] 18 U.S.C. § 2334(e)(5). The PSJVTA also specified new post-enactment conduct that would be "deemed" to constitute "consent" to personal jurisdiction in civil ATA actions, "regardless of the date of the occurrence of the act of international terrorism upon which such civil action was filed." Id. § 2334(e)(1).

These new factual predicates for "deemed consent" are listed in two prongs, subparagraphs (A) and (B) of 18 U.S.C. § 2334(e)(1). The first prong provides that

---

[4] As stated in Fuld, the PSJVTA also includes a number of additional provisions, but we do not pass on the constitutionality of any portion of the PSJVTA other than § 903(c). For purposes of clarity, this opinion refers to § 903(c) as the PSJVTA, which is consistent with the opinion in Fuld, as well as with the nomenclature used in the district court's decisions and the parties' briefs on appeal.

13

**Add. 14**

"a defendant shall be deemed to have consented to personal jurisdiction" if, after

April 18, 2020, the defendant "makes any payment, directly or indirectly":

> (i) to any payee designated by any individual who, after being fairly tried or pleading guilty, has been imprisoned for committing any act of terrorism that injured or killed a national of the United States, if such payment is made by reason of such imprisonment; or

> (ii) to any family member of any individual, following such individual's death while committing an act of terrorism that injured or killed a national of the United States, if such payment is made by reason of the death of such individual.

Id. § 2334(e)(1)(A). Under the second prong, "a defendant shall be deemed to have

consented to personal jurisdiction" if, after January 4, 2020, the defendant

"continues to maintain," "establishes," or "procures any office, headquarters,

premises, or other facilities or establishments in the United States," or otherwise

"conducts any activity while physically present in the United States on behalf of

the [PLO] or the [PA]." Id. § 2334(e)(1)(B). The PSJVTA exempts "certain activities

and locations" from the reach of this second prong, including, among others,

conduct related to "official business of the United Nations."[5] Id. § 2334(e)(3).

---

[5] In particular, and as discussed in Fuld, the PSJVTA includes exceptions for facilities and activities devoted "exclusively [to] the purpose of conducting official business of the United Nations," id. § 2334(e)(3)(A)–(B), specified activities related to engagements with United States officials or legal representation, id. § 2334(e)(3)(C)–(E), and any activities "ancillary to [those] listed" in these exceptions, id. § 2334(e)(3)(F). Congress also provided

**Add. 15**

Several months after the PSJVTA's enactment, the Supreme Court granted the plaintiffs' petition for a writ of certiorari, vacated the judgment in <u>Waldman II</u>, and remanded the case "for further consideration in light of the [PSJVTA]." <u>Sokolow</u>, 140 S. Ct. at 2714. On September 8, 2020, this Court in turn issued an order pursuant to <u>United States v. Jacobson</u>, 15 F.3d 19, 22 (2d Cir. 1994), remanding the action to the district court "for the limited purposes of determining the applicability of the PSJVTA to this case, and, if the PSJVTA is determined to apply, any issues regarding its application to this case including its constitutionality," Order, No. 15-3135, Doc. No. 368 (Sept. 8, 2020). We stated that "[a]fter the district court has concluded its consideration, the case will be returned to this Court for further proceedings," and that in the meantime, the plaintiffs' motion to recall the November 2016 mandate would be "held in abeyance." <u>Id.</u>

After this limited remand to the district court, the Government intervened in the action to defend the constitutionality of the PSJVTA. <u>See</u> 28 U.S.C. § 2403(a); Fed. R. Civ. P. 5.1(c). Several months later, on March 10, 2022, the district court issued a decision related to the questions presented in our <u>Jacobson</u> remand order. <u>See</u> <u>Sokolow v. Palestine Liberation Org.</u>, 590 F. Supp. 3d 589 (S.D.N.Y.),

---

that the PSJVTA "shall apply to any case pending on or after August 30, 2016," PSJVTA § 903(d)(2), 133 Stat. at 3085, just one day before this Court's decision in <u>Waldman I</u>.

15

**Add. 16**

reconsideration denied, 607 F. Supp. 3d 323 (S.D.N.Y. 2022). The district court found that the defendants had triggered the PSJVTA's first prong, 18 U.S.C. § 2334(e)(1)(A), because the "[p]laintiffs ha[d] presented sufficient evidence to support the determination that [the] [d]efendants . . . made [qualifying] payments after April 18, 2020."[6] Id. at 594. Nonetheless, the district court determined that "[t]he conduct identified in the [first prong] is insufficient to support a finding that [the] [d]efendants have consented to personal jurisdiction," id. at 596, and accordingly, the statute "violate[s] [constitutional] due process," id. at 597.

On March 24, 2022, we reinstated the proceedings concerning the plaintiffs' motion to recall the mandate. The plaintiffs then moved for reconsideration of the district court's March 10, 2022 decision, specifically requesting that the district court make factual findings under the PSJVTA's second prong and consider its constitutionality. We stayed the proceedings in this Court pending the resolution of that motion.

---

[6] Specifically, the district court found that the defendants had made payments "to the families of individuals killed while committing acts of terrorism . . . [that] harmed U.S. nationals," thereby triggering 18 U.S.C. § 2334(e)(1)(A)(ii). Sokolow, 590 F. Supp. 3d at 594. The district court did not address whether the defendants had made payments to the designees of incarcerated terrorists, see 18 U.S.C. § 2334(e)(1)(A)(i), and it also declined to "reach the issue of whether the factual predicates in . . . 18 U.S.C. § 2334(e)(1)(B)," the PSJVTA's second prong, "ha[d] been met." Sokolow, 590 F. Supp. 3d at 595 n.3.

**Add. 17**

The district court denied the motion for reconsideration on June 15, 2022.

See Sokolow v. Palestine Liberation Org., 607 F. Supp. 3d 323, 324 (S.D.N.Y. 2022).

It declined to resolve the parties' factual dispute as to whether the defendants'

United States activities were exempt from the PSJVTA's second prong, because

"[e]ven accepting [the] [p]laintiffs' argument" that no exception applied, the

"types of conduct" at issue did not evince "any intention on the part of [the]

[d]efendants to legally submit to suit in the United States."[7]  Id. at 326. In light of

that determination and its March 10, 2022 decision, the district court concluded

that "the exercise of [personal] jurisdiction under either of the PSJVTA's two

jurisdiction-triggering prongs would violate due process." Id. at 327–28.

    With the plaintiffs' motion for reconsideration resolved, we lifted the stay

on these proceedings concerning the motion to recall the mandate.

---

[7] To support their argument that the defendants had engaged in nonexempt activities "while physically present in the United States," 18 U.S.C. § 2334(e)(1)(B)(iii), the plaintiffs pointed to the defendants' "provision of consular services in the United States, their interviews with prominent media and social media activity, and their maintenance of an office in New York." Sokolow, 607 F. Supp. 3d at 325. The defendants did "not dispute" that they had engaged in these activities; instead, the defendants argued that all of the conduct in question fell within the PSJVTA's exemptions for UN-related conduct. Id. at 325–26; see 18 U.S.C. § 2334(e)(3)(A), (F). The district court found that it was unnecessary to resolve this issue, and we need not resolve it on appeal.

**Add. 18**

## II. DISCUSSION

Our principal task is to give "further consideration" to the motion at issue in <u>Waldman II</u> — that is, the plaintiffs' October 2018 motion to recall this Court's November 2016 mandate — "in light of the [PSJVTA]." <u>Sokolow</u>, 140 S. Ct. at 2714.

"We possess an inherent power to recall a mandate, subject to review for abuse of discretion." <u>Taylor v. United States</u>, 822 F.3d 84, 90 (2d Cir. 2016) (internal quotation marks omitted and alteration adopted). However, "[i]n recognition of the need to preserve finality in judicial proceedings, . . . we exercise [this] authority sparingly and only in exceptional circumstances." <u>Id.</u> (internal quotation marks omitted and alteration adopted); <u>see also</u> <u>Calderon v. Thompson</u>, 523 U.S. 538, 550 (1998). In some cases, the enactment of a new statute might justify the exercise of our power to recall a previously issued mandate. <u>Cf.</u> <u>Sargent v. Columbia Forest Prods., Inc.</u>, 75 F.3d 86, 90 (2d Cir. 1996) (noting that a recall may be warranted where changes in governing law cast serious doubt on a previous judgment). But given today's decision in <u>Fuld</u>, this case is not one of them.

The plaintiffs make a variety of arguments in support of their position that "[t]his Court should recall the mandate, apply the PSJVTA in this case, and remand to the district court with instructions to reinstate its original judgment

18

**Add. 19**

based on the jury's verdict." Pls.' Br. at 2. All of those arguments, however, flow from the premise that the PSJVTA "establishes [consent-based] personal jurisdiction" over the PLO and the PA in a manner consistent with due process. Id. at 26. We reach the opposite conclusion today in Fuld, and we incorporate the entirety of Fuld's analysis here. Thus, as set forth in Fuld, the PSJVTA's provision for "deemed consent" to personal jurisdiction violates the Fifth Amendment's Due Process Clause.

Because we find in Fuld that the PSJVTA is unconstitutional, the statute cannot be applied to establish personal jurisdiction over the PLO or the PA in this case. Accordingly, no basis exists to recall the November 2016 mandate that issued after Waldman I, where we determined that the plaintiffs' claims had to be "dismiss[ed] . . . for want of personal jurisdiction." 835 F.3d at 322. In view of this conclusion, it is unnecessary to address the parties' various disputes that assume the constitutionality of the PSJVTA.

We reiterate that the terror attacks at issue in this litigation were "unquestionably horrific." Id. at 344. But as we stated in Waldman I and reaffirm today in Fuld, "the federal courts cannot exercise jurisdiction in a civil case beyond the limits" of the Due Process Clause, "no matter how horrendous the underlying

19

**Add. 20**

attacks or morally compelling the plaintiffs' claims." <u>Id.</u> The PSJVTA's provision

for "deemed consent" to personal jurisdiction exceeds those constitutional limits,

and accordingly, the statute supplies no basis for taking the extraordinary step of

recalling this Court's mandate.

### CONCLUSION

We have considered all of the arguments of the parties and their <u>amici</u>. To

the extent not specifically addressed above, those arguments are either moot or

without merit. For the foregoing reasons, the plaintiffs' motion to recall the

November 2016 mandate is **DENIED.**