UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): 15-3135(L); 15-3151(xap); 22-1060(con) 22-76(L), 22-496(con)      Caption [use short title]

Motion for: (1) remand to the district court in Fuld v. PLO; and (2) to file supplemental briefs in Waldman.

Fuld v. PLO

Waldman v. PLO

Set forth below precise, complete statement of relief sought:

(1) A remand to the district court in Fuld for further proceedings in light of the Supreme Court's decision (unopposed).

(2) To file supplemental briefs in Waldman regarding three issues that should be resolved prior to remand to the district court (opposed).

MOVING PARTY: PLO, et al.          OPPOSING PARTY: Fuld, et al. & Waldman, et al.

☐ Plaintiff          ☒ Defendant

☐ Appellant/Petitioner          ☒ Appellee/Respondent

MOVING ATTORNEY: Gassan A. Baloul          OPPOSING ATTORNEY: Kent Yalowitz

[name of attorney, with firm, address, phone number and e-mail]

Squire Patton Boggs          Arnold & Porter

2550 M Street NW          250 West 55th Street

Washington, DC 20037          New York, New York 10019-9710

Court- Judge/ Agency appealed from: S.D.N.Y -- Hon. Jesse M. Furman & Hon. George B. Daniels

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☒ Yes   ☐ No (explain): 
Plaintiffs do not oppose in Fuld; but will oppose in Waldman.

Opposing counsel's position on motion:
☒ Unopposed   ☒ Opposed   ☐ Don't Know

Does opposing counsel intend to file a response:
☒ Yes   ☐ No   ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**

Has this request for relief been made below?   ☐ Yes   ☐ No
Has this relief been previously sought in this court?   ☐ Yes   ☐ No

Requested return date and explanation of emergency:

Is the oral argument on motion requested?   ☐ Yes   ☒ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?   ☒ Yes   ☐ No  If yes, enter date: May 3, 2023

**Signature of Moving Attorney:**

/s/ Gassan A. Baloul          Date: 7/22/25          Service : ☒ Electronic   ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

# 15-3135(L)

## 15-3151 (XAP); 22-1060 (CON); 22-76(L); 22-496(CON)

# United States Court of Appeals
### FOR THE
## Second Circuit

◆▬◆

EVA WALDMAN, REVITAL BAUER, individually and as natural guardian of plaintiffs YEHONATHON BAUER, BINYAMIN BAUER, DANIEL BAUER and YEHUDA BAUER, SHAUL MANDELKORN, NURIT MANDELKORN, OZ JOSEPH GUETTA, minor, by his next friend and guardian VARDA GUETTA, VARDA GUETTA, individually and as natural guardian of OZ JOSEPH GUETTA, NORMAN GRITZ, individually and as personal representative of the ESTATE OF DAVID GRITZ, MARK I. SOKOLOW, individually and as a natural guardian of plaintiff JAMIE A. SOKOLOW, RENA M. SOKOLOW, individually and as a natural guardian of plaintiff JAIME A. SOKOLOW,

*(Caption Continued on Inside Cover)*

On Appeal from the United States District Court for the Southern District of New York, Case No. 2004 Civ. 0397

**Defendants-Appellees' Motion to Remand in *Fuld* and to File Supplemental Briefs in *Waldman***

JAMIE A. SOKOLOW, minor, by her next friends and guardian MARK I. SOKOLOW AND RENA M. SOKOLOW, LAUREN M. SOKOLOW, ELANA R. SOKOLOW, SHAYNA EILEEN GOULD, RONALD ALLAN GOULD, ELISE JANET GOULD, JESSICA RINE, SHMUEL WALDMAN, HENNA NOVACK WALDMAN, MORRIS WALDMAN, ALAN J. BAUER, individually and as natural guardian of plaintiffs YEHONATHON BAUER, BINYAMIN BAUER, DANIEL BAUER and YEHUDA BAUER, YEHONATHON BAUER, minor, by his next friend and guardians DR. ALAN J. BAUER and REVITAL BAUER, BINYAMIN BAUER, minor, by his next friend and guardians DR. ALAN J. BAUER AND REVITAL BAUER, DANIEL BAUER, minor, by his next friend and guardians DR. ALAN J. BAUER AND REVITAL BAUER, YEHUDA BAUER, minor, by his next friend and guardians DR. ALAN J. BAUER and REVITAL BAUER, RABBI LEONARD MANDELKORN, KATHERINE BAKER, individually and as personal representative of the ESTATE OF BENJAMIN BLUTSTEIN, REBEKAH BLUTSTEIN, RICHARD BLUTSTEIN, individually and as personal representative of the ESTATE OF BENJAMIN BLUTSTEIN, LARRY CARTER, individually and as personal representative of THE ESTATE OF DIANE ("DINA") CARTER, SHAUN COFFEL, DIANNE COULTER MILLER, ROBERT L COULTER, JR., ROBERT L. COULTER, SR., individually and as personal representative of the ESTATE OF JANIS RUTH COULTER, CHANA BRACHA GOLDBERG, minor, by her next friend and guardian KAREN GOLDBERG, ELIEZER SIMCHA GOLDBERG, minor, by her next friend and guardian KAREN GOLDBERG, ESTHER ZAHAVA GOLDBERG, minor, by her next friend and guardian KAREN GOLDBERG, KAREN GOLDBERG, individually, as personal representative of the ESTATE OF STUART SCOTT GOLDBERG/natural guardian of plaintiffs CHANA BRACHA GOLDBERG, ESTHER ZAHAVA GOLDBERG, YITZHAK SHALOM GOLDBERG, SHOSHANA MALKA GOLDBERG, ELIEZER SIMCHA GOLDBERG, YAAKOV MOSHE GOLDBERG, TZVI YEHOSHUA GOLDBERG, SHOSHANA MALKA GOLDBERG, minor, by her next friend and guardian KAREN GOLDBERG, TZVI YEHOSHUA GOLDBERG, minor, by her next friend and guardian KAREN GOLDBERG, YAAKOV MOSHE GOLDBERG, minor, by her next friend and guardian KAREN GOLDBERG, YITZHAK SHALOM GOLDBERG, minor, by her next friend and guardian KAREN GOLDBERG, NEVENKA GRITZ, sole heir of NORMAN GRITZ, DECEASED,

*Plaintiffs - Appellants,*

UNITED STATES OF AMERICA,

*Intervenor - Appellant,*

v.

PALESTINE LIBERATION ORGANIZATION, PALESTINIAN AUTHORITY, a/k/a PALESTINIAN INTERIM SELF-GOVERNMENT AUTHORITY and/or PALESTINIAN COUNCIL and/or PALESTINIAN NATIONAL AUTHORITY,

*Defendants - Appellees,*

YASSER ARAFAT, MARWIN BIN KHATIB BARGHOUTI, AHMED TALEB MUSTAPHA BARGHOUTI, a/k/a AL-FARANSI, NASSER MAHMOUD AHMED AWEIS, MAJID AL-MASRI, a/k/a ABU MOJAHED, MAHMOUD AL-TITI, MOHAMMED ABDEL RAHMAN SALAM MASALAH, a/k/a ABU SATKHAH, FARAS SADAK MOHAMMED GHANEM, a/k/a HITAWI, MOHAMMED SAMI IBRAHIM ABDULLAH, ESTATE OF SAID RAMADAN, DECEASED, ABDEL KARIM RATAB YUNIS AWEIS, NASSER JAMAL MOUSA SHAWISH, TOUFIK TIRAWI, HUSSEIN AL-SHAYKH, SANA'A MUHAMMED SHEHADEH, KAIRA SAID ALI SADI, ESTATE OF MOHAMMED HASHAIKA, deceased, MUNZAR MAHMOUD KHALIL NOOR, ESTATE OF WAFA IDRIS, deceased, ESTATE OF MAZAN FARITACH, deceased, ESTATE OF MUHANAD ABU HALAWA, DECEASED, JOHN DOES, 1-99, HASSAN ABDEL RAHMAN,

*Defendants.*



MIRIAM FULD, individually, as natural guardian of plaintiff NATAN SHAI FULD, and as personal representative and administrator of the ESTATE OF ARI YOEL FULD, deceased; NATAN SHAI FULD, minor, by his next friend and guardian MIRIAM FULD; NAIOMI FULD; TAMAR GILA FULD; ELIEZER YAKIR FULD,

*Plaintiffs-Appellants,*

UNITED STATES OF AMERICA,

*Intervenor-Appellant,*

v.

PALESTINE LIBERATION ORGANIZATION; PALESTINIAN AUTHORITY, a/k/a PALESTINIAN INTERIM SELF-GOVERNMENT AUTHORITY and/or PALESTINIAN COUNCIL and/or PALESTINIAN NATIONAL AUTHORITY,

*Defendants-Appellees.*

Gassan A. Baloul
Mitchell R. Berger
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Counsel for Defendants-Appellees*

Defendants-Appellees the Palestinian Authority ("PA") and the Palestine Liberation Organization ("PLO") respectfully move for supplemental briefing addressing the impact on these appeals of the Supreme Court's recent decision regarding the constitutionality of the Promoting Security and Justice for Victims of Terrorism Act of 2019, Pub. L. No. 116-94, § 903, 18 U.S.C. § 2334 (Dec. 20, 2019) ("PSJVTA"). *See Fuld v. PLO*, 606 U.S. ---, 145 S. Ct. 2090, 2105 (2025).

In *Fuld*, the Supreme Court held, for the first time, that the due process standards applicable under the Fifth and Fourteenth Amendments are not the same. *See Fuld*, 145 S. Ct. at 2103-05. Although "the Due Process Clauses of the Fourteenth and Fifth Amendments both implicitly limit the jurisdictional authority of courts," the Court held that "they do so with respect to the distinct sovereignties from which those courts derive their authority." *Id.* at 2105. The Fifth Amendment "permits a more flexible jurisdictional inquiry commensurate with the Federal Government's broader sovereign authority." *Id.* The Court affirmed Congress's and the President's "considered judgment to subject the PLO and PA to liability in U.S. courts" under the PSJVTA. *Id.* at 2107.

1

In light of the Supreme Court's ruling, this motion addresses next steps in these appeals. As explained below, the only issue before this Court in *Fuld* was the PSJVTA's jurisdictional provisions. The Court therefore should remand *Fuld* to the district court for further proceedings consistent with the Supreme Court's opinion.

In *Waldman*, however, three additional issues—whether to recall the mandate despite the entry of final judgment in 2016, whether the trial court's proceedings before the PSJVTA were void for lack of personal jurisdiction at that time, and whether Plaintiffs' use of improper expert testimony requires a new trial—remain pending.

After remand, this Court often seeks supplemental briefing from the parties on how to proceed in light of the Supreme Court's decision. *See, e.g.,* Order, *Bissonnette v. LePage Bakeries Park St., LLC*, No. 20-1681 (2d Cir. May 24, 2024); Order, *Cunningham v. Cornell Univ.*, No. 21-88 (2d Cir. June 10, 2025). Defendants respectfully submit that this Court must resolve those issues before any remand in *Waldman*, and that supplemental briefs on all three issues will assist the Court.

2

**I.     The Court Should Remand *Fuld* to the District Court for Further Proceedings.**

The *Fuld* plaintiffs filed suit against Defendants on April 30, 2020 (more than five months after passage of the PSJVTA), relying solely on the PSJVTA's jurisdictional provisions to establish personal jurisdiction. Defendants moved to dismiss Plaintiffs' claims, challenging the constitutionality of the PSJVTA's jurisdictional provisions and arguing, among other things, that Plaintiffs failed to state a claim against Defendants. ECF 25, 42, *Fuld v. PLO*, No. 1:20-cv-3374-JMF (S.D.N.Y.).

Given its ruling that the PSJVTA's jurisdictional provisions violated due process, the district court did not reach Defendants' Rule 12(b)(6) arguments for dismissal. *See Fuld v. PLO*, 578 F. Supp. 3d 577, 596 (S.D.N.Y. 2022). Now that the Supreme Court has settled the jurisdictional issues, *Fuld* should be remanded to the district court for consideration of Defendants' remaining arguments for dismissal.

**II.    Several Issues Remain Pending Before This Court in *Waldman.***

In contrast to *Fuld*, the factual and procedural history in *Waldman* is far more complicated. The *Waldman* plaintiffs originally filed suit in 2004, over 15 years prior to passage of the PSJVTA. After a jury found

3

Defendants liable, Defendants appealed to this Court, arguing that (1) the district court lacked personal jurisdiction over Defendants, and (2) Plaintiffs' improper use of "ultimate-issue" expert testimony required a new trial. *See* ECF 119, *Waldman v. PLO*, No. 15-3151 (Jan. 29, 2016).

On appeal, this Court held that Defendants were not subject to general or specific jurisdiction in the United States, vacated the judgment, and remanded the case to the district court with instructions to dismiss Plaintiffs' claims for want of personal jurisdiction. *See Waldman v. PLO*, 835 F.3d 317, 322 (2d Cir. 2016). Given its ruling, this Court did not reach Defendants' arguments regarding the use of improper expert testimony. *Id.*

On remand, the district court entered final judgment and dismissed Plaintiffs' claims for lack of personal jurisdiction on December 2, 2016. *See* ECF 1003, *Sokolow v. PLO*, No. 1:04-cv-397 (S.D.N.Y. Dec. 2, 2016). The Supreme Court later denied *certiorari*. 584 U.S. 915 (2018). The judgment in the original case has thus been "final" for nearly nine years.

Almost two years *after* the district court entered final judgment in favor of Defendants, Plaintiffs initiated a second round of proceedings in this Court by filing a motion to recall the mandate. *See* ECF 255, *Sokolow*

4

*v. PLO*, No. 15-3135 (Oct. 8, 2018). Plaintiffs urged this Court to "salvage" jurisdiction (in a long-closed case) by applying the Anti-Terrorism Clarification Act of 2018 ("ATCA"), which provided that Defendants "consented" to jurisdiction if they accepted either of two government benefits: U.S. foreign assistance, or a formal waiver of prior restrictions on Defendants' ability to maintain a U.S. office. *Id.*; *see also* 18 U.S.C. § 2334(e)(1) (2018) (superseded by PSJVTA).

This Court denied Plaintiffs' motion to recall the mandate on June 3, 2019. *Waldman v. PLO*, 925 F.3d 570 (2d Cir. 2019). As the Court explained, Plaintiffs failed to show that either of the ATCA's factual predicates had been satisfied. *Id.* at 574. Moreover, "[r]ecalling the mandate now would offend the need to preserve finality in judicial proceedings." *Id.* at 575 (quotation omitted). As this Court noted, "it is well-established that retroactive laws generally do not affect valid, final judgments." *Id.* In this case, "[t]he mandate … was issued two and a half years ago, and the Supreme Court denied the plaintiffs' petition for a writ of certiorari more than six months before the plaintiffs filed their motion to recall the mandate." *Id.* Accordingly, "[t]his Court's interest in finality also weighs against recalling the mandate." *Id.*

While Plaintiffs' petition for *certiorari* from that decision was pending, Congress enacted the PSJVTA—prompting the latest round of litigation between the parties. The Supreme Court granted, vacated, and remanded this Court's decision "for further consideration in light of the [PSJVTA]." *Sokolow v. PLO*, 140 S. Ct. 2714 (2020). And the parties proceeded to litigate the constitutionality of the PSJVTA's jurisdictional provisions, culminating in the Supreme Court's recent decision *Fuld*.

As this complicated chronology illustrates, there are at least three issues that remain pending before this Court (aside from the jurisdictional issues under the PSJVTA, which have now been resolved by the Supreme Court). These issues are described briefly below.

*First*, this Court must decide whether to recall the mandate in the action originally filed against Defendants in 2004, and which reached final judgment in 2016. As the Court noted when it denied Plaintiffs' motion to recall the mandate following passage of the ATCA, this Court's (and the parties') interests in finality weigh heavily against recalling the mandate. 925 F.3d at 575. Defendants respectfully submit that those finality interests are even stronger now, given the passage of an additional seven years.

"In light of the profound interests in repose attaching to the mandate of a court of appeals," the power to recall a mandate "can be exercised only in extraordinary circumstances." *Calderon v. Thompson*, 523 U.S. 538, 550 (1998) (internal quotation omitted). "The sparing use of the power demonstrates it is one of last resort, to be held in reserve against grave, unforeseen contingencies." *Id.*; *see also id.* at 569 (Souter, J., dissenting) ("All would agree that the power to recall a mandate must be reserved for 'exceptional circumstances' …."). As such, this Court has emphasized that the power to recall a mandate must be "exercised sparingly" and "only in exceptional circumstances." *United States v. Redd*, 735 F.3d 88, 90 (2d Cir. 2013) (quoting *Fine v. Bellefonte Underwriters Ins. Co.*, 758 F.2d 50, 53 (2d Cir. 1985)).

In this case, the Court's mandate issued on November 28, 2016—over three years *before* passage of the PSJVTA, and nearly nine years before the Supreme Court's decision in *Fuld*. As this Court noted in denying Plaintiffs' motion to recall the mandate seven years ago, it is "well-established" that subsequent changes in the law "generally do not affect valid, final judgments." *Waldman*, 925 F.3d at 575. Given the "profound interests in repose" attached to the final judgment, the

7

mandate should not be recalled. *See Bottone v. United States*, 350 F.3d 59, 62, 64 (2d Cir. 2003) ("Under *Calderon*, recalling the mandate more than six years after its issuance just to apply the benefit of hindsight would constitute an abuse of discretion." (cleaned up)). As this Court previously noted, Plaintiffs already have pending another case in which their claims can be adjudicated. *Waldman*, 925 F.3d at 576 n.2.

*Second*, even if this Court were to recall the mandate, the Court still must decide whether the prior district court proceedings were void because the district court lacked personal jurisdiction over Defendants when it conducted those proceedings.

As Justice Scalia explained in *Burnham*, "[t]he proposition that the judgment of a court lacking jurisdiction is void traces back to the English Year Books." *Burnham v. Superior Ct.*, 495 U.S. 604, 608 (1990) (plurality op.). "Traditionally that proposition was embodied in the phrase *coram non judice*, 'before a person not a judge' – meaning, in effect, that the proceeding in question was not a *judicial* proceeding because lawful judicial authority was not present, and could therefore not yield a *judgment*." *Id.* at 608-09; *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) ("personal jurisdiction … is an essential

8

element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication" (cleaned up)); *Rose v. Himely*, 8 U.S. 241, 276-77 (1808) (proceedings that occurred when the court "had no jurisdiction … are *coram non judice*, and must be disregarded").

In this case, the enactment of the PSJVTA *three years after* the entry of final judgment did not retrospectively provide the district court with personal jurisdiction in Plaintiffs' then-closed action. The PSJVTA expressly grounded personal jurisdiction in specific conduct occurring *after* the Act's effective date (December 20, 2019), *i.e.*, (1) making payments "after the date that is 120 days after the date of the enactment of the [PSJVTA]"; or (2) maintaining any office or conducting any non-exempt activities in the United States "after 15 days after the date of enactment of the [PSJVTA]." 18 U.S.C. § 2334(e)(1). Engaging in such conduct in 2020 and 2021 could not retrospectively supply the district court with personal jurisdiction to conduct trial proceedings in January and February of 2015 (in an action originally filed by Plaintiffs in 2004).[1]

---

[1] The PSJVTA's "applicability" provision, which states that the Act "shall apply to any case pending on or after August 30, 2016," does not change this analysis. *See* Pub. L. 116-94, Div. J, Title IX, § 903(d)(2). As this Court previously noted in analyzing similar language found in the ATCA, this provision "does not suggest that courts should reopen cases that are

*See Klinghoffer v. S.N.C. Achille Lauro*, 937 F.2d 44, 52 (2d Cir. 1991) ("personal jurisdiction depends on the defendant's contacts with the forum state at the time the lawsuit was filed").

Moreover, the Supreme Court repeatedly emphasized in this case that notice is a fundamental requirement of due process. *See, e.g.*, *Fuld*, 145 S. Ct. at 2110 (holding PSJVTA put Defendants "on clear notice … that continuing to engage in certain specified conduct would open them up to potential federal court jurisdiction"). Prior to the PSJVTA, Defendants had no reason to believe that the specified conduct could subject them to personal jurisdiction. For example, the PSJVTA was the first law to tie personal jurisdiction to payments in Palestine. Prior to the Supreme Court's decision, Defendants had no notice that such payments, wholly outside U.S. jurisdiction, could create personal jurisdiction. Prior holdings from this Court and the D.C. Circuit were all to the contrary. *See, e.g., Shatsky v. PLO*, 955 F.3d 1016, 1022-23, 1037 (D.C. Cir. 2020) (holding alleged "martyr payments" did not confer

---

no longer pending," nor does it "provide explicitly or implicitly that closed cases can be reopened." *Waldman*, 925 F.3d at 575. By the time that Congress enacted the PSJVTA, the judgment in *Waldman* had already been final for more than three years.

10

specific jurisdiction); *Waldman*, 835 F.3d at 342-44 (same). When Plaintiffs brought this suit in 2004, Defendants obviously could not know that Congress would determine—fifteen years later—that either the payments or "any" U.S. activity at all could create personal jurisdiction.

The enactment of the PSJVTA in 2019, and the Supreme Court's subsequent affirmance of its constitutionality last month, do not change the fact that the district court lacked personal jurisdiction over Defendants when it conducted the trial in 2015. Because the trial court lacked personal jurisdiction at that time, those prior proceedings were void and must be disregarded. *Burnham*, 495 U.S. at 608.

*Third*, if this Court were to recall the mandate and find that the judgment is not void, it still must address Defendants' argument that Plaintiffs' improper use of ultimate-issue expert testimony requires a new trial. If the Court proceeds to the merits of Defendants' prior appeal, it should decide this outstanding and unresolved appellate issue.

As Defendants have previously argued, a new trial is required because the district court allowed Plaintiffs' three liability experts to testify at trial despite their failure to apply any discernable methodology. *See* Def. Br., Dkt 119 (No. 15-3151) at 50-65; *id.*, Dkt 120 at 65-77; *id.*,

11

Dkt 319 at 27; *id.*, Dkt 473 at 79-83. These "experts"—Kaufman, Shrenzel, and Eviatar—did not "apply any particular methodology or specialized expertise" to their review of the evidence and instead "merely reviewed and weighed the evidence in precisely the same manner as would an ordinary trier of fact." *Gilmore v. Palestinian Interim Self-Government Auth.*, 53 F. Supp. 3d 191, 212 (D.D.C. 2014) (cleaned up), *aff'd*, 843 F.3d 958 (D.C. Cir. 2016). Plaintiffs' entire liability case rested on the testimony of these three witnesses, which accounted for more than half of the trial testimony—Plaintiffs did not call a single lay witness to testify as to Defendants' liability. Def. Br., Dkt 119 (No. 15-3151) at 19.

Relying on this Court's precedent, the D.C. Circuit affirmed the exclusion of testimony from ***one of these same experts*** based on nearly-identical infirmities. *See Gilmore*, 843 F.3d at 972 (citing *United States v. Mejia*, 545 F.3d 179 (2d Cir. 2008)). In *Gilmore*, the expert (Eviatar), claimed to rely on his "cumulative experience and knowledge" as an IDF intelligence officer when reviewing evidence in the case. *Id.* The D.C. Circuit agreed that it was "unclear how [his] approach differed from that of a layperson" and that he applied no particular methodology to reach his conclusions. *Id.* at 973. His impermissible opinion instead

12

"consist[ed] entirely of generalized and conclusory assertions that lack any basis in his specialized knowledge." *Gilmore*, 53 F. Supp. 3d at 213.

Likewise here, Eviatar and the other experts cited their "years of experience," reviewed case files, ran online searches, then surmised what happened and who was responsible without applying any specialized methodology different from a layperson. Def. Br., Dkt 119 (No. 15-3151) at 53-59, 62-64; *id.*, Dkt 473 at 80-82. Expert testimony is reserved for subject matters "beyond the ken of the average juror"—issues that the average juror "is not capable of understanding on his or her own." *Mejia*, 545 F.3d at 191, 194; *United States v. Zhong*, 26 F.4th 536, 555 (2d Cir. 2022) ("manifest error [to admit] expert testimony where … the subject matter … is not beyond the ken of the average juror") (citation removed).

Upon permitting Plaintiffs' experts to testify, the district court then failed to ensure that their testimony was confined to any proper scope, which independently necessitates a new trial. An expert is not permitted to make "sweeping conclusions about the defendants' activities." *Meija*, 545 F.3d at 192 (cleaned up). Nor can an expert simply summarize the evidence. *Id.* at 190, 195-96 (ordering a new trial because expert testimony was "more like a summary of the facts than an aide in

13

understanding them"). Nor are experts permitted to "speculate as to the motivations and intentions of certain parties"—those questions are left to the jury. *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013); *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-MD-01570, 2023 WL 3116763, at \*20 (S.D.N.Y. Apr. 27, 2023) ("Experts in all cases must refrain from offering legal conclusions or testifying to states of mind.").

Here, the experts impermissibly summarized evidence, told the jury what ultimate conclusions to draw, and speculated about the attackers' mental states. *See* Def. Br., Dkt 119 (No. 15-3151) at 50-65. The district court did not limit "the legitimate use of an ... expert ... to explicate an organization's ... structure" but rather permitted "the illegitimate and impermissible substitution of expert opinion for factual evidence." *Mejia*, 545 F.3d at 190. Likewise, Plaintiffs were permitted to use the experts' testimony to "provide [themselves] with an additional summation by having the expert[s] interpret the evidence." *Zhong*, 26 F.4th at 556. For example, Plaintiffs' experts:

- Contended, over objection, the PA incited Palestinians: "all of the different sectors of the Palestinian leadership ... want to convey to the public by messages, by statements, by hinting, by explicit calls, all of these fall under the category of incitement." JA-4154-55.

14

- Conjectured, over objection, about one attacker's thoughts: "for him it was clear, this is what my superiors expect from me .... They want me to go out and ... shoot indiscriminately in the streets of Jerusalem." JA-5690-92.

- Instructed the jury, over objection, that a PA intelligence official had advance knowledge of an attack: "This very document cannot provide us with a conclusive final proof of his prior knowledge of the attack. But ... I think it's more likely than not that he had prior knowledge and involvement in that attack. That's my professional assessment." JA-5716.

- Opined, over objection, "it is the explicit, but no less than that, the implicit messages" to kill Israelis that was a "contributing factor" to cause the attacks in this case. JA-5690-92.

As these experts served as Plaintiffs' only liability witnesses, the verdict was likely prejudiced by their improper and unfounded testimony. Even if the judgment is not void, a new trial is necessary.

*   *   *

Defendants respectfully submit that this Court must resolve these issues before any remand, as they could be case-dispositive. If this Court were to decline to recall the mandate on finality grounds, for example, then no further proceedings would be necessary. Plaintiffs could simply pursue their claims in the suit they filed in the Southern District in 2018, as this Court previously noted. Accordingly, the proper course in *Waldman*, following the Supreme Court's decision, is to proceed with briefing on those three issues that remain pending before this Court.

15

July 22, 2025

Respectfully Submitted,

SQUIRE PATTON BOGGS (US) LLP

/s/ *Gassan A. Baloul*
Gassan A. Baloul
gassan.baloul@squirepb.com
Mitchell R. Berger
mitchell.berger@squirepb.com
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

*Counsel for Defendants-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 27, the undersigned counsel certifies that this document complies as follows:

1.      This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 3,042 words, excluding the parts exempted by Rule 32(f).

2.      This document complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, 14-Point font.

*/s/ Gassan A. Baloul*
Gassan A. Baloul

*Counsel for Defendants-Appellees*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 22, 2025, the foregoing document was filed with the Clerk of the Court and served via CM/ECF upon counsel of record for Plaintiffs.

/s/ *Gassan A. Baloul*
Gassan A. Baloul

18