# 15-3135(L)

## 15-3151 (XAP); 22-1060 (CON)

## United States Court of Appeals
### FOR THE
## Second Circuit

❖

EVA WALDMAN, REVITAL BAUER, individually and as natural guardian of plaintiffs YEHONATHON BAUER, BINYAMIN BAUER, DANIEL BAUER and YEHUDA BAUER, SHAUL MANDELKORN, NURIT MANDELKORN, OZ JOSEPH GUETTA, minor, by his next friend and guardian VARDA GUETTA, VARDA GUETTA, individually and as natural guardian of OZ JOSEPH GUETTA, NORMAN GRITZ, individually and as personal representative of the ESTATE OF DAVID GRITZ, MARK I. SOKOLOW, individually and as a natural guardian of plaintiff JAMIE A. SOKOLOW, RENA M. SOKOLOW, individually and as a natural guardian of plaintiff JAIME A. SOKOLOW,

***(Caption Continued on Inside Cover)***

On Appeal from the United States District Court for the Southern District of New York, Case No. 2004 Civ. 0397

**Defendants' Response to Plaintiffs' Motion to Remand with Instructions to Reinstate Judgment**

JAMIE A. SOKOLOW, minor, by her next friends and guardian MARK I. SOKOLOW AND RENA M. SOKOLOW, LAUREN M. SOKOLOW, ELANA R. SOKOLOW, SHAYNA EILEEN GOULD, RONALD ALLAN GOULD, ELISE JANET GOULD, JESSICA RINE, SHMUEL WALDMAN, HENNA NOVACK WALDMAN, MORRIS WALDMAN, ALAN J. BAUER, individually and as natural guardian of plaintiffs YEHONATHON BAUER, BINYAMIN BAUER, DANIEL BAUER and YEHUDA BAUER, YEHONATHON BAUER, minor, by his next friend and guardians DR. ALAN J. BAUER and REVITAL BAUER, BINYAMIN BAUER, minor, by his next friend and guardians DR. ALAN J. BAUER AND REVITAL BAUER, DANIEL BAUER, minor, by his next friend and guardians DR. ALAN J. BAUER AND REVITAL BAUER, YEHUDA BAUER, minor, by his next friend and guardians DR. ALAN J. BAUER and REVITAL BAUER, RABBI LEONARD MANDELKORN, KATHERINE BAKER, individually and as personal representative of the ESTATE OF BENJAMIN BLUTSTEIN, REBEKAH BLUTSTEIN, RICHARD BLUTSTEIN, individually and as personal representative of the ESTATE OF BENJAMIN BLUTSTEIN, LARRY CARTER, individually and as personal representative of THE ESTATE OF DIANE ("DINA") CARTER, SHAUN COFFEL, DIANNE COULTER MILLER, ROBERT L COULTER, JR., ROBERT L. COULTER, SR., individually and as personal representative of the ESTATE OF JANIS RUTH COULTER, CHANA BRACHA GOLDBERG, minor, by her next friend and guardian KAREN GOLDBERG, ELIEZER SIMCHA GOLDBERG, minor, by her next friend and guardian KAREN GOLDBERG, ESTHER ZAHAVA GOLDBERG, minor, by her next friend and guardian KAREN GOLDBERG, KAREN GOLDBERG, individually, as personal representative of the ESTATE OF STUART SCOTT GOLDBERG/natural guardian of plaintiffs CHANA BRACHA GOLDBERG, ESTHER ZAHAVA GOLDBERG, YITZHAK SHALOM GOLDBERG, SHOSHANA MALKA GOLDBERG, ELIEZER SIMCHA GOLDBERG, YAAKOV MOSHE GOLDBERG, TZVI YEHOSHUA GOLDBERG, SHOSHANA MALKA GOLDBERG, minor, by her next friend and guardian KAREN GOLDBERG, TZVI YEHOSHUA GOLDBERG, minor, by her next friend and guardian KAREN GOLDBERG, YAAKOV MOSHE GOLDBERG, minor, by her next friend and guardian KAREN GOLDBERG, YITZHAK SHALOM GOLDBERG, minor, by her next friend and guardian KAREN GOLDBERG, NEVENKA GRITZ, sole heir of NORMAN GRITZ, DECEASED,

*Plaintiffs - Appellants,*

UNITED STATES OF AMERICA,

*Intervenor - Appellant,*

v.

PALESTINE LIBERATION ORGANIZATION, PALESTINIAN AUTHORITY, a/k/a PALESTINIAN INTERIM SELF-GOVERNMENT AUTHORITY and/or PALESTINIAN COUNCIL and/or PALESTINIAN NATIONAL AUTHORITY,

*Defendants - Appellees,*

YASSER ARAFAT, MARWIN BIN KHATIB BARGHOUTI, AHMED TALEB MUSTAPHA BARGHOUTI, a/k/a AL-FARANSI, NASSER MAHMOUD AHMED AWEIS, MAJID AL-MASRI, a/k/a ABU MOJAHED, MAHMOUD AL-TITI, MOHAMMED ABDEL RAHMAN SALAM MASALAH, a/k/a ABU SATKHAH, FARAS SADAK MOHAMMED GHANEM, a/k/a HITAWI, MOHAMMED SAMI IBRAHIM ABDULLAH, ESTATE OF SAID RAMADAN, DECEASED, ABDEL KARIM RATAB YUNIS AWEIS, NASSER JAMAL MOUSA SHAWISH, TOUFIK TIRAWI, HUSSEIN AL-SHAYKH, SANA'A MUHAMMED SHEHADEH, KAIRA SAID ALI SADI, ESTATE OF MOHAMMED HASHAIKA, deceased, MUNZAR MAHMOUD KHALIL NOOR, ESTATE OF WAFA IDRIS, deceased, ESTATE OF MAZAN FARITACH, deceased, ESTATE OF MUHANAD ABU HALAWA, DECEASED, JOHN DOES, 1-99, HASSAN ABDEL RAHMAN,

*Defendants.*

Gassan A. Baloul
Mitchell R. Berger
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Counsel for Defendants-Appellees*

## INTRODUCTION

The original case, when added to the mandate-recall litigation, may be "old enough to go to law school" (Pl. Mot. at 1), but first-year law students know an appellate court cannot "remand with instructions to reinstate judgment" when weighty issues are yet unresolved. As Plaintiffs readily concede, this Court "did not reach" Defendants' arguments regarding finality, voidness of the trial judgment for lack of jurisdiction, and the improper use of expert testimony at trial. Pl. Mot. at 19; Pl. Opp. at 2. As reflected in Defendants' prior briefing (and in their motion for supplemental briefing), those issues present substantial obstacles to simply "reinstating" the 2015 judgment. The district court lacked personal jurisdiction over Defendants when it entered the 2015 judgment, so under well-established precedent, that judgment is void. *Burnham v. Superior Ct. of California, Cnty. of Marin*, 495 U.S. 604, 608-09 (1990) (explaining this is an inherent limit of "lawful judicial authority"). Moreover, the district court improperly admitted expert testimony critical to Plaintiffs' case that is nearly identical to testimony (from some of the same "experts") that has been either excluded from other cases or led to their reversal on appeal.

1

Plaintiffs raise a host of issues in their motion to remand, which reinforces the need for full consideration of these dispositive matters, and which supplemental briefing will aid. Applying the Supreme Court's decision in cases (such as *Fuld*) that were filed after the PSJVTA's effective date may be straightforward. But exponentially more complicated questions arise when deciding how the PSJVTA applies in *Waldman/Sokolow*—a case that had reached final judgment, and therefore was not pending, years before the PSJVTA was enacted. This Court should adhere to its precedents on finality and refuse to recall its mandate, *see Waldman v. PLO*, 925 F.3d 570, 574 (2d Cir. 2019), as the concerns about finality are even stronger now than six years ago. Plaintiffs rely on cases applying newly-enacted statutes "intervening" in **pending** cases (Pl. Mot. at 6)—an issue not germane here, where final judgment was entered long before the PSJVTA.

Plaintiffs concede that this case was closed and final when the Supreme Court originally denied certiorari in 2018. *See* Pl. Mot. at 7, 9, 16. The Supreme Court's *subsequent* GVR in 2020 did not recall this Court's 2016 mandate, but instead vacated only this Court's 2019

decision *not* to recall that mandate and remanded for additional consideration in light of the PSJVTA. *See infra* at 10.

Plaintiffs also attempt to read holdings into *Fuld v. PLO*, 145 S. Ct. 2090 (2025), that are not there. *Fuld* did not hold that this Court should recall the mandate, or that the PSJVTA provides jurisdiction retroactively to support a money judgment in *Sokolow* that was void when rendered. It held only that the PSJVTA is constitutional under a Fifth Amendment standard that flexes to meet jurisdictional commands from both political branches acting collectively regarding foreign affairs. It reversed this Court's judgment that the PSJVTA was unconstitutional under standards originally developed under the Fourteenth Amendment.

*Fuld's* Fifth Amendment analysis depended on a joint political judgment from both political branches and the clear notice to Defendants provided in the PSJVTA. The analysis in *Fuld* does not support the exercise of jurisdiction *prior to* the PSJVTA—much less the retroactive imposition of jurisdiction in cases closed before the statute even existed.

Finally, Plaintiffs treat *Fuld* as if it decided how to implement the PSJVTA's "applicability" section (Pub. L. 116-94, Div. J, Title IX, § 903(d)(2)), but *Fuld* did not even cite, let alone discuss, that section.

3

Plaintiffs' preferred construction of that section faces a host of plain language and constitutional barriers, which should lead this Court to conclude that the PSJVTA does not create jurisdiction over a case that closed before its passage.

## I. This Court Should Not Recall its Nine-year-old Mandate.

Nine years have passed since this Court issued its mandate and the district court entered final judgment, and seven years have passed since the Supreme Court denied certiorari to review that final judgment. If finality is to mean anything, this Court should not allow new statutes to overturn years-old mandates in closed cases. As this Court explained, the "Court's interest in finality ... weighs against recalling the mandate" and "[r]ecalling the mandate now would offend 'the need to preserve finality in judicial proceedings.'" *Waldman II*, 925 F.3d at 574-76 (citation omitted). If the passage of the ATCA did not persuade this Court in *Waldman II* to disrespect the finality of its *Waldman I* judgment, then the later passage of the PSJVTA should have the same result.

Plaintiffs ask this Court to enter a brave new world of undermining finality by erasing historical facts. They want this Court to recall the mandate and then hold that PSJVTA predicate conduct occurring solely

4

between 2020 and early 2025[1]—*while the case was closed*—requires this Court to hold that decisions made without personal jurisdiction in 2015 must be rewritten to have been made with personal jurisdiction. No court has ever done such a thing, and Plaintiffs stretch existing doctrines far beyond their intended bounds to reach their desired result. Courts do not recall years-old mandates just because a new statute changed the law. Much less do they recall mandates to hold that actions taken years after a final judgment can justify reopening that judgment to interpolate the current jurisdictional consequences of those actions into a long-closed case. Plaintiffs' preferred result turns finality into a Rube Goldberg contraption attached to an H.G. Wells time machine. *Roman Cath. Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 589 U.S. 57, 65 (2020) (courts should not issue orders creating an "Orwellian vehicle

---

[1] Defendants have since changed the payment programs at issue in one of the two PSJVTA predicates, so that they are now needs-based and general in application. The payments no longer trigger the factual predicates of the PSJVTA. WAFA, *President Mahmoud Abbas issues decree-law restructuring the social welfare system* (Feb. 10, 2025), https://english.wafa.ps/Pages/Details/154504 (the new law "revok[es] … the laws and regulations related to the system of paying financial allowances to the families of prisoners, martyrs, and the wounded").

for revisionist history—creating 'facts' that never occurred in fact")
(citation omitted).

Not surprisingly, the cases Plaintiffs cite are all distinguishable, as
**they fail to identify a single case** recalling a mandate because the
defendant "consented" to jurisdiction in the forum by its actions after the
case became final. In *Corporación Mexicana de Mantenimiento Integral,
S. de R.L. de C.V. v. Pemex-Exploración y Producción*, 832 F.3d 92, 101
(2d Cir. 2016), the defendant strategically withdrew its objection to
personal jurisdiction during its direct appeal to avail itself of a perceived
advantage on the merits, and then tried to reinstate its jurisdictional
objection after losing on the merits. In *Banco Nacional de Cuba v. Farr*,
383 F.2d 166, 178 (2d Cir. 1967), the cases were never closed, and both
cases involved new laws on subject matter jurisdiction, not personal
jurisdiction. *Shatsky v. PLO*, 955 F.3d 1016, 1029 (D.C. Cir. 2020),
merely points out that personal jurisdiction is a forum objection that can
be forfeited or withdrawn (which Defendants have not done here). Every
other case Plaintiffs cite (including *Henderson*, *Landgraf*, and *United
States v. Alabama*) involved either a direct appeal or a statute that was
interpreted to apply *only to pending cases*. Changes to subject matter

6

jurisdiction are about the court's own power, in any event, and so do not involve the same due process constraints as personal jurisdiction.

Plaintiffs rely heavily on three cases, none of which supports their argument. First, they cite *ACLU v. Dep't of Def.*, No. 06-3140 (2d Cir.), in which the Court recalled its mandate in light of pending legislation. Plaintiffs fail to mention that the case *had not yet become final* because the time for certiorari had not passed. *See id.*, 06/10/2009 Order ("the mandate is recalled and shall hereafter be stayed pending disposition of the Petition for Certiorari…"). The second case, *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1530 (9th Cir. 1989), also involved a stay, not a recall, of a mandate *that had not yet become final*. Indeed, immediately after the dicta cited by Plaintiffs (Pl. Mot. at 10), the court explained: "… Congress's action while this case was pending on certiorari justifies a stay of the mandate, and we choose to exercise our discretion to do just that." *Id.* In those cases, concerns about finality and separation of powers that follow from applying a new statute to overturn a final judgment were not present *because the judgments were not final*.

Third, Plaintiffs rely on *Salazar v. Buono*, 559 U.S. 700, 717 (2010), in which a permanent injunction against placing a cross on certain public

lands was reconsidered based on subsequent legislation. The Court was careful to explain that "Congress, of course, may not use its legislative powers to reopen final judgments." *Id*. But, given rules of equity, courts could reexamine the injunction in light of the new legislation allowing the Government to sell the land in question because the new issue – the Government's "right to transfer the land" – "was not adjudicated in [the first case] or compromised by the [prior] injunction." *Id*. Unlike the money judgment at issue in *Sokolow*, injunctions involve continuing, prospective relief, allowing courts to consider changed circumstances. *Id*. at 718. In this case, this Court's final judgment was that the district court lacked personal jurisdiction over Defendants when it issued a money judgment after trial. Plaintiffs' arguments run afoul of *Salazar's* explicit warning against using new statutes to reopen final judgments. Nor does this case involve injunctive relief and equity principles governing injunctions.

The complete lack of support for Plaintiffs' bold, history-changing request provides ample reason not to grant their motion for an immediate remand with instructions to reinstate the verdict. This Court should come down on the side of finality rather than endless litigation about

reinstating old judgments. At a minimum, these issues require careful consideration before making new law.

## II. The Supreme Court's Decision in *Fuld* Did Not Reopen the Mandate or Create Personal Jurisdiction over Defendants Prior to the PSJVTA.

This Court should also reject Plaintiffs' claims that the Supreme Court already decided the issues presented by the parties. The Supreme Court did not itself recall the mandate or determine that the PSJVTA requires the resurrection of the jury verdict in this closed case. It said nothing about any of those issues. *Fuld* was focused on whether the PSJVTA violated the Fifth Amendment's Due Process Clause by creating personal jurisdiction based on predicate conduct following enactment of the statute. The decision's focus on the joint exercise of sovereign power by the political branches in the PSJVTA, combined with the clear notice to Defendants about the prospective consequences of post-enactment conduct, contradicts Plaintiffs' arguments that the Supreme Court's jurisdictional analysis applies prior to the statute's passage. No personal jurisdiction existed over Defendants prior to the PSJVTA.

**A. The Supreme Court did not recall the mandate and reopen the case.**

This Court should reject Plaintiffs' claim that *Fuld* recalled this Court's mandate and reopened this case. The Supreme Court used the word "recall" just once, and that was when discussing the procedural posture. *Fuld*, 145 S. Ct. at 2100. No party argued about the mandate-recall issue or finality in their merits briefs and those issues were never mentioned at oral argument. As importantly, the *Fuld* decision never discusses those issues and merely concludes that this Court's judgment was reversed and remanded for "further proceedings consistent with this opinion." *Id.* at 2110. That is not a remand requiring this Court to recall its mandate, despite the Supreme Court surely knowing the issue would have to be decided on remand.

If the Supreme Court intended to depart from its practice of remanding matters "within the court's discretion" for "only further consideration," *Amara v. CIGNA Corp.*, 775 F.3d 510, 531 (2d Cir. 2014), and meant to order the mandate recalled or decide any of these other issues, it would have said so. *See Calderon v. Thompson*, 523 U.S. 538, 566 (1998) (remanding "with instructions to reinstate the June 11, 1997, mandate"); *Wise v. Lipscomb*, 434 U.S. 1329, 1334 (1977) (order "recalling

10

the mandate and staying the judgment") (Powell, J.); *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 250-51 (1944) (reversing "with directions to set aside the 1932 judgment" and "recall the 1932 mandate"). The Supreme Court did not do so here.

Plaintiffs interpret the word "judgment" to mean the Supreme Court must have reversed this Court's 2016 judgment. Pl. Mot. at 7-9. This is the same argument they made after the Supreme Court's remand to consider the PSJVTA, Pl. Br., Doc. 351 at 3-4, 10-13; Pl. Br., Doc. 356 at 2-7, which this Court rejected in considering the ATCA, *Waldman*, 925 F.3d at 573-74. Once again, the only judgment reversed was the one appealed by Plaintiffs in their certiorari petition. Here, it was the "judgment mandate" this Court entered on May 23, 2024, after it denied Plaintiffs' motion to recall the mandate and found the PSJVTA unconstitutional. *See* Judgment Mandate, Doc. 614. In any case, as Defendants previously explained, the Supreme Court uses "judgment" to refer to all orders subject to certiorari review, whether or not the court below calls them judgments. *See* Def. Br., Doc. 354 at 15-20.

The Supreme Court did "reverse" this Court's judgment not to recall the mandate based on the PSJVTA's unconstitutionality. As a result,

this Court must again decide whether to recall the mandate, this time on other grounds. But nothing about the Supreme Court's decision requires this Court to recall its mandate notwithstanding finality concerns or requires this Court to somehow resurrect a void judgment. Given the availability of another pending case for the litigation of Plaintiffs' claims, and the novelty and danger of being the first court to ever apply a new statute to a vacated money judgment years after it achieved finality, this Court should not recall its mandate. Recalling a mandate is an "extraordinary" power "of *last resort*, to be held in reserve against *grave, unforeseen contingencies*." *Calderon*, 523 U.S. at 550 (emphasis added). Recalling the mandate in this case would undermine the "profound interests in repose attaching to the mandate of a court of appeals." *Id*. (quotation omitted).

### B. The Supreme Court did not hold that personal jurisdiction existed prior to the PSJVTA.

Even if this Court recalls its mandate, Plaintiffs are wrong to claim that the Supreme Court's Fifth Amendment analysis created retroactive jurisdiction supporting the original trial judgment, whether under the ATA or under specific or general jurisdiction. *See* Pl. Mot. at 13-15. *Fuld's* analysis depended on the political branches' exercise of sovereign

12

power together with due notice to Defendants. *Fuld* explained that in "passing and signing the PSJVTA into law, Congress and the President made a considered judgment to subject the PLO and PA to liability in U.S. courts." *Fuld*, 145 S. Ct. at 2107. *Fuld* held that the PSJVTA "reflects the political branches' balanced judgment of competing concerns over 'sensitive and weighty interests of national security and foreign affairs' and fairness to these particular defendants." *Id*. (citations omitted). The focus of the flexible Fifth Amendment analysis is to accept the "balanced judgment" the political branches made between "national security" and "fairness" through the 2019 passage of the PSJVTA. *Id*.

Personal jurisdiction is "more flexible" under the Fifth Amendment precisely **because** the political branches exercise "the Federal Government's broader sovereign authority." *Id*. at 2105. The PSJVTA was a constitutional exercise of power that "ties jurisdiction to specific and narrow conduct that directly implicates issues of sensitive and ongoing concern in respondents' relationships with the United States." *Id*. at 2108. Absent the statute, there would be no jurisdiction over Defendants. It was not the predicate conduct standing alone that created jurisdiction, but rather the political branches' statutory action to "tie[]

13

the assertion of jurisdiction to [that] predicate conduct" based on a 2019 legislative determination that such conduct "bears a meaningful relationship to the United States." *Id*. at 2109. Before the political branches acted together to make that determination, the judicial branch had held, in final decisions, that the same type of predicate conduct was insufficiently related to the United States or to Plaintiffs' claims to support jurisdiction over Defendants. *Sokolow v. PLO*, 584 U.S. 915 (2018) (denying certiorari); *Livnat v. Palestinian Auth.*, 851 F.3d 45, 55-58 (D.C. Cir. 2017), *cert. denied*, 586 U.S. 952 (2018); *Klieman v. Palestinian Auth.*, 923 F.3d 1115, 1127-30 (D.C. Cir. 2019); *Shatsky*, 955 F.3d at 1037-38.

Prior to the PSJVTA, the political branches had not exercised their authority to create personal jurisdiction over Defendants. To the contrary, the Executive Branch explicitly stated that this Court's *Waldman I* decision vacating the original trial judgment for lack of jurisdiction did not "implicate any conflict among the courts of appeals, *or otherwise warrant [the Supreme] Court's intervention*." Br. of U.S. as Amicus Curiae at 7, Sup. Ct. No. 16-1071 (Feb. 22, 2018) (emphasis added). The United States again took a position against jurisdiction over

14

Defendants under the ATCA. Br. of U.S. as Amicus Curiae, *Klieman v. PA*, No. 15-7034 (D.C. Cir., Mar. 13, 2019).

Moreover, the Supreme Court emphasized that due process requires notice despite the exercise of sovereign power. The PSJVTA's "targeted applicability put the PLO and PA on full notice." *Fuld*, 145 S. Ct. at 2108. *Fuld* reiterated that Congress gave "clear notice" "that continuing to engage in certain specified conduct would open them up to potential federal court jurisdiction." *Id.* at 2110; *see also Lelchook v. Societe Generale de Banque au Liban S.A.L.*, No. 21-975, 2025 WL 2301325, at *12 (2d Cir. Aug. 11, 2025) (finding the defendant had notice required by due process of jurisdiction over ATA claims "in any venue" where liability accrued). The PSJVTA marked a sea change in jurisdiction over Defendants, as all prior courts held that the same type of predicate conduct did *not* create general jurisdiction following *Daimler* and could not support specific jurisdiction in ATA cases. *See Waldman v. PLO*, 835 F.3d 317, 322-23 (2d Cir. 2016), *cert. denied*, 584 U.S. 915 (2018); *Livnat*, 851 F.3d at 55-58. *Fuld's* Fifth Amendment analysis, which depended on *post-enactment* conduct, does not allow the exercise

of jurisdiction to support a *pre-PSJVTA* money judgment in *Sokolow*.  145 S. Ct. at 2107.

Plaintiffs argue that *Fuld* means that the ATA itself is now sufficient to create personal jurisdiction.  Pl. Mot. at 13.  But the ATA only authorizes nationwide service of process, with language parallel to that in the federal antitrust, securities, and RICO laws.  Like those laws, it does not purport to independently create personal jurisdiction.  *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 233 (5th Cir. 2022) (en banc) ("Rule 4(k)(2) is a procedural rule governing the territorial limits of service[,]" rather than a statute directly creating jurisdiction); *see Sullivan v. UBS AG*, No. 19-1769(L), 2025 WL 2423899 (2d Cir. Aug. 22, 2025) (post-*Fuld*, holding personal jurisdiction for federal antitrust and RICO claims requires nationwide contacts sufficient to satisfy due process, notwithstanding statutory allowance of nationwide service of process).

Nor did the ATA's civil provisions even address personal jurisdiction over Defendants *until the passage of the ATCA and PSJVTA*.  *See* 18 U.S.C. §§ 2333 & 2334 (2016).  Before that, the only provision on civil jurisdiction in the ATA was limited to attacks occurring "within the

… territorial jurisdiction of the United States." 18 U.S.C. § 2334(b) (2016). That is the *opposite* of an intention to create world-wide personal jurisdiction over all ATA defendants. Before the PSJVTA, there was no "considered judgment" by both branches to subject Defendants to personal jurisdiction. *See Fuld*, 145 S. Ct. at 2107.

*Fuld's* reasonableness analysis was also dependent on the PSJVTA. As to the forum's interest, *Fuld* held that for "largely the same reasons" there is "a close connection between the PSJVTA's predicate conduct and the United States … the forum sovereign has a substantial interest in adjudicating the dispute." *Id*. at 2109. This interest was thus created in 2019 by the concurrent actions of both political branches. *Id*. at 2107-08; *see also id*. at 2108 n.3 (expressing "no view" on whether the old payments program actually incentivized terrorism). Similarly, the burden on Defendants of litigating in a U.S. forum was far greater before the PSJVTA put them "on clear notice" that "certain specified conduct would open them up to potential federal court jurisdiction." *Id*. at 2110. Nor does the PSJVTA provide jurisdiction based on "*any* U.S. conduct" (Pl. Mot. at 15), but instead contains important exclusions. The scope of those

17

exclusions remains unresolved, as are Plaintiffs' claims that Defendants triggered the activities predicate.

The PSJVTA is "a narrow jurisdictional provision," *id.* at 2107, not an invitation to open closed cases or take any action that (Plaintiffs argue) serves "national security and foreign policy."  Pl. Mot. at 11.

## III.  The PSJVTA's Applicability Section Does Not Impose Jurisdiction Over Closed Cases.

The PSJVTA's applicability provision should not affect this Court's decision to recall its mandate because it does not create retroactive jurisdiction based on post-judgment actions.   The section states: "APPLICABILITY. This section, and the amendments made by this section, shall apply to any case pending on or after August 30, 2016." Pub. L. 116-94, Div. J, Title IX, § 903(d)(2).  This language does not purport to overturn final judgments or reinstate decisions that were void because they were made without personal jurisdiction at the time they were entered.  Congress knows how to draft language to reinstate a closed case if it wants to, *see, e.g., Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211,

214-15 (1995) (statute provided that closed cases "shall be reinstated on motion by the plaintiff"), but it did not do so with the PSJVTA.[2]

Congress's decision not to add language overturning closed cases in the PSJVTA is no surprise: actions in the present do not retroactively create jurisdiction in a case that became final nine years ago. As this Court recognizes, "it is well-established that retroactive laws generally do not affect valid, final judgments." *Waldman II*, 925 F.3d at 575, citing *Bank Markazi v. Peterson*, 575 U.S. 212, 226 (2016) ("Congress ... may not 'retroactively comman[d] the federal courts to reopen final judgments.'"). "[I]t has long been established that a final civil judgment entered under a given rule of law may withstand subsequent judicial change in that rule." *Teague v. Lane*, 489 U.S. 288, 308-09 (1989); *see Reynoldsville Casket Co. v. Hyde*, 514 U.S. 749, 758-59 (1995) (the "principle" of "'finality' present in the *Teague* context … limits the principle of retroactivity itself"). The PSJVTA's applicability provision

---

[2] Whether or not it hoped to reinstate the old judgment in *Sokolow* and chose the August 30, 2016 date as an acknowledgement of that wish, Congress ultimately chose ***not*** to include reinstatement or reopening language in the PSJVTA.

should be read to have the same limits as every other similar statute—it does not apply to cases that have already become final.

In *Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 374 (1940), the Supreme Court explained that a judgment entered through a mistake of constitutional law was still "an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration." When courts are asked "to determine whether or not they have jurisdiction … and for this purpose to construe and apply the statute under which they are asked to act," their "determinations of such questions, while open to direct review, ***may not be assailed collaterally***." *Id*. at 376 (emphasis added). This case has not been on direct review for many years.

Plaintiffs' reading of the PSJVTA as ordering the prior judgment to be reinstated creates two additional constitutional problems. First, due process rights attach once a case has closed with a final judgment—which occurred in this case when the Supreme Court denied certiorari and declined to review this Court's 2016 judgment that there was no personal jurisdiction to support the *Sokolow* trial proceedings and verdict. *See Hodges v. Snyder*, 261 U.S. 600, 603 (1923) (private rights "vested by the

20

judgment of a court cannot be taken away by subsequent legislation"); *Johnson v. Cigna Corp.*, 14 F.3d 486, 490 (10th Cir. 1993) ("once rights are fixed by judgment, they are a form of property over which the legislature has no greater power than it has over any other form of property").

Interpreting the PSJVTA to reopen a long-closed case and disturb finality would violate those due process rights in the judgment. *Bank Markazi*, 578 U.S. at 229 ("The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation…"); *see Plaut*, 514 U.S. at 217 (implying that retroactive application of a statute to a closed case violates due process but holding that separation of powers was a "narrower ground for adjudication"); *see also Germania Sav. Bank v. Vill. of Suspension Bridge*, 159 N.Y. 362, 368 (1899) (statute allowing appeal after a case had become final "would not be what is known as due process of law"); *Leidos, Inc. v. Hellenic Republic*, 881 F.3d 213, 218 (D.C. Cir. 2018) ("The benefit of finality applies equally to all litigants.").

Second, interpreting the PSJVTA to require the reopening of a final judgment would violate separation of powers. This Court explained: "a

statute that would require an Article III court to set aside a final judgment entered before its enactment would violate the constitutional principle of separation of powers." *Schwartz v. Merrill Lynch & Co.*, 665 F.3d 444, 454 (2d Cir. 2011) (cleaned up); *Aneja v. M.A. Angeliades, Inc.*, No. 05-9678, 2010 WL 199681, at *3 (S.D.N.Y. Jan. 12, 2010) (Preska, C.J.) ("To the extent Plaintiff is asserting that in passing the LLFPA Congress instructed courts to set aside *final judgments*, as opposed to cases that remain under review … Congress is without authority to mandate that Article III courts reopen previously adjudicated cases.").

The Supreme Court has similarly held that "[h]aving achieved finality, however, a judicial decision becomes the last word of the judicial department with regard to a particular case or controversy, and Congress may not declare by retroactive legislation that the law applicable *to that very case* was something other than what the courts said it was." *Plaut*, 514 U.S. at 227. The Court knew of "no instance in which Congress has attempted to set aside the final judgment of an Article III court by retroactive legislation. That prolonged reticence would be amazing if such interference were not understood to be constitutionally proscribed." *Id.* at 230.

22

This Court should not interpret the PSJVTA in a way that violates *Plaut*. *See Benjamin v. Jacobson*, 172 F.3d 144, 161 (2d Cir. 1999) (en banc) ("We understand the parameters drawn by *Plaut* and *Wheeling Bridge II* to be as follows: Under the separation of powers, Congress lacks the authority to alter a finally rendered judgment ordering the payment of money."); *Elramly v. I.N.S.*, 131 F.3d 1284, 1285 (9th Cir. 1997), *as amended on denial of reh'g* (Dec. 15, 1997) ("*Plaut* made a clear distinction, however, 'between judgments from which all appeals have been forgone or completed, and judgments that remain on appeal (or subject to being appealed).' The former are final and protected from the effects of new legislation."); *Thyssenkrupp Steel N. Am. v. United States*, 886 F.3d 1215, 1223 n.3 (Fed. Cir. 2018) ("*Plaut*… relied on the standard concept of direct-review 'finality'—which generally does not occur, for this purpose, until all the steps in the direct review process are completed or the time has passed for taking further steps in the process."). Reading the PSJVTA as a Congressional attempt to overturn a final judgment violates separation of powers.

Contrary to Plaintiffs' arguments, the Supreme Court did not decide this issue. *Fuld* did not cite, let alone discuss, the PSJVTA's

"applicability" section, Pub. L. 116-94, Div. J, Title IX, § 903(d)(2), and did not decide how that section might apply in this case.  Neither Plaintiffs nor the Government discussed that issue (or even cited § 903(d)(2)) in their merits briefs before the Supreme Court.

Finally, this Court should reject Plaintiffs' claim of "consent" to retroactivity.  *Fuld* did not decide whether Defendants' "deemed consent" comported with the Fifth Amendment.  It expressly declined to "consider the matter through the lens of consent," holding instead that the political branches could create personal jurisdiction based on post-enactment predicate conduct and the notice of those prospective consequences that the PSJVTA gave Defendants.  145 S. Ct. at 2109.  In any case, the time-traveling consent Plaintiffs imagine here is also inconsistent with the voidness doctrine, as Defendants previously explained.  Def. Br., Doc. 354 at 25-28; Def. Br., Doc. 523 at 73-79; *Acevedo*, 589 U.S. at 63-65 (judgment and all "proceedings" performed without jurisdiction are "not simply erroneous, but absolutely void") (cleaned up).[3]  The Supreme Court did

---

[3] *See also McCulley v. Brooks & Co. Gen. Contractors*, 816 S.E.2d 270, 273-74 & n.4 (Va. 2018) ("Just as medicine may cure a sick man of a fatal disease but not revive him after his burial, a litigant can 'cure' the absence of personal jurisdiction by making a general appearance prior to final judgment but cannot resurrect a void judgment thereafter.")

not hold that Defendants' predicate conduct between 2020 and early 2025 could have, consistent with due process, constituted consent to personal jurisdiction in a case that was closed years before. Thus, even if this Court recalls its mandate, it should not reinstate the 2015 judgment.

## CONCLUSION

As Plaintiffs acknowledge, this Court must resolve a host of weighty issues before any remand in *Sokolow*, including whether the Court should recall its mandate despite finality interests, whether a judgment void for lack of personal jurisdiction can be reinstated based on a statute that centers on post-enactment conduct, and whether the improper testimony of Plaintiffs' experts requires a new trial. Accordingly, this Court should deny Plaintiffs' motion for a summary remand.

---

(collecting cases); *G.L. v. D.L.*, 141 Hawai'i 144, 406 P.3d 367 (Haw. App. 2017) (void judgment not "resurrected or reinstated" by post-judgment waiver of personal jurisdiction); *BAC Home Loans Servicing, LP v. Mitchell*, 6 N.E.3d 162, 167 (Ill. 2014) ("Rather, 'where a judgment is void when entered, it remains void' despite subsequent submission by a party to the circuit court's jurisdiction.") (citation omitted); *Miller v. Steichen*, 682 N.W.2d 702, 707 (Neb. 2004) ("Coregis subjected itself to the jurisdiction of the district court after entry of the default judgment but is not foreclosed from challenging the validity of that judgment on the ground that the court lacked personal jurisdiction.").

Respectfully Submitted,

September 2, 2025

SQUIRE PATTON BOGGS (US) LLP

/s/ *Gassan A. Baloul*
Gassan A. Baloul
gassan.baloul@squirepb.com
Mitchell R. Berger
mitchell.berger@squirepb.com
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

*Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27, the undersigned counsel certifies that this document complies as follows:

1.     This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 5,105 words, excluding the parts exempted by Rule 32(f).

2.     This document complies with the typeface and type style requirements of Federal Rules of Appellate Procedure 27(d)(1)(E) and 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook, 14-Point font.

*/s/ Gassan A. Baloul*
Gassan A. Baloul

*Counsel for Defendants-Appellees*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 2, 2025, the foregoing document was filed with the Clerk of the Court and served via CM/ECF upon counsel of record for Plaintiffs.

*/s/ Gassan A. Baloul*
Gassan A. Baloul