# 15-3135(L)

## 15-3151 (XAP); 22-1060 (CON)

# United States Court of Appeals
### FOR THE
# Second Circuit

EVA WALDMAN, REVITAL BAUER, INDIVIDUALLY AND AS NATURAL GUARDIAN OF PLAINTIFFS YEHONATHON BAUER, BINYAMIN BAUER, DANIEL BAUER AND YEHUDA BAUER, SHAUL MANDELKORN, NURIT MANDELKORN, OZ JOSEPH GUETTA, MINOR, BY HIS NEXT FRIEND AND GUARDIAN VARDA GUETTA, VARDA GUETTA, INDIVIDUALLY AND AS NATURAL GUARDIAN OF PLAINTIFF OZ JOSEPH GUETTA, NORMAN GRITZ, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DAVID GRITZ, MARK I. SOKOLOW, INDIVIDUALLY AND AS A NATURAL GUARDIAN OF PLAINTIFF JAMIE A. SOKOLOW, RENA M. SOKOLOW, INDIVIDUALLY AND AS A NATURAL GUARDIAN OF PLAINTIFF JAIME A. SOKOLOW, JAMIE A. SOKOLOW, MINOR, BY HER

*(Caption Continued on Inside Cover)*

On Appeal from the United States District Court for the
Southern District of New York, Case No. 2004 Civ. 0397

**DEFENDANTS-APPELLEES' SUPPLEMENTAL REPLY BRIEF
REGARDING THE IMPROPER EXPERT TRIAL TESTIMONY**

NEXT FRIENDS AND GUARDIAN MARK I. SOKOLOW AND RENA M. SOKOLOW, LAUREN M. SOKOLOW, ELANA R. SOKOLOW, SHAYNA EILEEN GOULD, RONALD ALLAN GOULD, ELISE JANET GOULD, JESSICA RINE, SHMUEL WALDMAN, HENNA NOVACK WALDMAN, MORRIS WALDMAN, ALAN J. BAUER, INDIVIDUALLY AND AS NATURAL GUARDIAN OF PLAINTIFFS YEHONATHON BAUER, BINYAMIN BAUER, DANIEL BAUER AND YEHUDA BAUER, YEHONATHON BAUER, MINOR, BY HIS NEXT FRIEND AND GUARDIANS DR. ALAN J. BAUER AND REVITAL BAUER, BINYAMIN BAUER, MINOR, BY HIS NEXT FRIEND AND GUARDIANS DR. ALAN J. BAUER AND REVITAL BAUER, DANIEL BAUER, MINOR, BY HIS NEXT FRIEND AND GUARDIANS DR. ALAN J. BAUER AND REVITAL BAUER, YEHUDA BAUER, MINOR, BY HIS NEXT FRIEND AND GUARDIANS DR. ALAN J. BAUER AND REVITAL BAUER, RABBI LEONARD MANDELKORN, KATHERINE BAKER, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BENJAMIN BLUTSTEIN, REBEKAH BLUTSTEIN, RICHARD BLUTSTEIN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BENJAMIN BLUTSTEIN, LARRY CARTER, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF DIANE ("DINA") CARTER, SHAUN COFFEL, DIANNE COULTER MILLER, ROBERT L COULTER, JR., ROBERT L. COULTER, SR., INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF JANIS RUTH COULTER, CHANA BRACHA GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, ELIEZER SIMCHA GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, ESTHER ZAHAVA GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, KAREN GOLDBERG, INDIVIDUALLY, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF STUART SCOTT GOLDBERG/NATURAL GUARDIAN OF PLAINTIFFS CHANA BRACHA GOLDBERG, ESTHER ZAHAVA GOLDBERG, YITZHAK SHALOM GOLDBERG, SHOSHANA MALKA GOLDBERG, ELIEZER SIMCHA GOLDBERG, YAAKOV MOSHE GOLDBERG, TZVI YEHOSHUA GOLDBERG, SHOSHANA MALKA GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, TZVI YEHOSHUA GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, YAAKOV MOSHE GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, YITZHAK SHALOM

GOLDBERG, MINOR, BY HER NEXT FRIEND AND GUARDIAN KAREN GOLDBERG, NEVENKA GRITZ, SOLE HEIR OF NORMAN GRITZ, DECEASED,

*PLAINTIFFS - APPELLANTS,*

UNITED STATES OF AMERICA,

*INTERVENOR - APPELLANT,*

v.

PALESTINE LIBERATION ORGANIZATION, PALESTINIAN AUTHORITY, AKA PALESTINIAN INTERIM SELF-GOVERNMENT AUTHORITY AND OR PALESTINIAN COUNCIL AND OR PALESTINIAN NATIONAL AUTHORITY,

*DEFENDANTS - APPELLEES,*

YASSER ARAFAT, MARWIN BIN KHATIB BARGHOUTI, AHMED TALEB MUSTAPHA BARGHOUTI, AKA AL-FARANSI, NASSER MAHMOUD AHMED AWEIS, MAJID AL-MASRI, AKA ABU MOJAHED, MAHMOUD AL-TITI, MOHAMMED ABDEL RAHMAN SALAM MASALAH, AKA ABU SATKHAH, FARAS SADAK MOHAMMED GHANEM, AKA HITAWI, MOHAMMED SAMI IBRAHIM ABDULLAH, ESATATE OF SAID RAMADAN, DECEASED, ABDEL KARIM RATAB YUNIS AWEIS, NASSER JAMAL MOUSA SHAWISH, TOUFIK TIRAWI, HUSSEIN AL-SHAYKH, SANA'A MUHAMMED SHEHADEH, KAIRA SAID ALI SADI, ESTATE OF MOHAMMED HASHAIKA, DECEASED, MUNZAR MAHMOUD KHALIL NOOR, ESTATE OF WAFA IDRIS, DECEASED, ESTATE OF MAZAN FARITACH, DECEASED, ESTATE OF MUHANAD ABU HALAWA, DECEASED, JOHN DOES, 1-99, HASSAN ABDEL RAHMAN,

*DEFENDANTS.*

Gassan A. Baloul
Mitchell R. Berger
SQUIRE PATTON BOGGS (US) LLP
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

*Counsel for Defendants-Appellees*

Plaintiffs' supplemental brief on the expert testimony issue is most notable for what it does ***not*** say. Despite promising to "direct[] the Court to record evidence" that Defendants were "legally responsible for the actions of the terrorists" (ECF 653), Plaintiffs fail to identify any evidence—other than improper expert testimony—ostensibly establishing that Defendants knowingly supported or authorized the attacks. Instead, they cite dozens of exhibits (mostly admitted through their experts) purportedly "linking" Defendants to the attacks. But linkage is not legal responsibility, and none of the *non-expert* evidence could support the liability options ticked by the jury, *i.e.*, Defendants' knowing support or authorization of the attacks. Because the improper expert testimony was the linchpin of Plaintiffs' liability case, there is more than a "distinct possibility" that it tainted the verdict. *Nimely v. City of New York*, 414 F.3d 381, 400 (2d Cir. 2005).

## I.    Plaintiffs Do Not Defend the Experts' Improper State of Mind Testimony and Fail to Identify Any Reliable Expert "Methodology."

Plaintiffs fail to address—let alone defend—the repeated use of improper state of mind testimony. Throughout the trial, Eviatar and Shrenzel speculated about the mental states of specific attackers and PA employees (*e.g.*, JA-4583, 4589, 5222, 5287-90 (speculating attacker "looked for opportunities"), 5302, 5326-29 ("Soviet" mind control), 5690-92 ("for him it was clear, this is what my superiors expect"), 5716 (speculating "he had prior knowledge")). Such statements are hornbook examples of improper expert testimony, as this Court has recognized. ECF 650 at 7-11 (collecting authorities). Plaintiffs' brief does not argue otherwise.

- 1 -

Plaintiffs' defense of their experts' "methodology" is similarly feeble. Whether the experts summarized "hearsay" (Pl. Br. 1-3)[1] is an irrelevant diversion from the dispositive question whether they used a reliable methodology to opine on Defendants' legal responsibility for the attacks. That absence of methodology, rather than reliance on "hearsay," drove the holding in *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191 (D.D.C. 2014), *aff'd*, 843 F.3d 958 (D.C. Cir. 2016). *Gilmore* excluded Eviatar entirely, including his opinion that "it is very likely, and certainly more likely than not" an individual was responsible for an attack, because it was "not based on any reliable principles or methodology … and does not draw on any specialized knowledge." *Id.* at 212-14 ("Eviatar has not identified any particular methodology he used"). The D.C. Circuit affirmed Eviatar's exclusion because "he did not explain how this methodology led to his opinions," and it was "unclear how Eviatar's approach differed from that of a layperson." 843 F.3d at 973. "'[W]here the jury is just as competent to consider and weigh the evidence as is an expert witness and just as well qualified to draw the necessary conclusions therefrom, it is improper to use opinion evidence for the purpose.'" *Id.*

The experts here used the same flawed methodology, opining it is "more likely than not" the PA "had prior knowledge and involvement in that attack." JA-5716. "These are precisely the type of generalized inferences that a lay person, and the jury

---

[1] They did. Eviatar explicitly "summarize[d] for the jury" inadmissible hearsay from an Israeli intelligence report. JA-4442-44. His "summary" was that the PA supported terrorism. *Id.*

itself, could draw without any expert assistance." *Gilmore*, 53 F. Supp. 3d at 213.

Plaintiffs attempt to sidestep *Gilmore* by citing inapposite criminal cases. *United States v. Pollok*, 139 F.4th 126 (2d Cir. 2025), approved expert testimony "on general background concepts" and "practices typically present in instances of sexual abuse." This Court was careful to note the expert did not use "any knowledge of [the defendant], his victims, or materials specific to this case" and made no claim the defendant "engaged in" the alleged "coercive control tactics." *Id*. at 139-42. Similarly, *Diaz v. United States*, 602 U.S. 526, 536 (2024), involved an opinion about the mental state of a "majority of [drug] couriers," not the specific defendant. By contrast here, Eviatar and Shrenzel improperly claimed their *expertise happens to be Defendants. See United States v. Mejia*, 545 F.3d 179, 191 (2d Cir. 2008) (excluding such "expertise"). Neither *Pollok* nor *Diaz* allows experts lacking a proper methodology to offer ultimate-issue testimony.

## II. Eviatar and Shrenzel Provided the Only "Evidence" of Legal Responsibility: Knowing Assistance or Authorization for the Attacks.

Despite their lofty claims, Plaintiffs fail to show they introduced lay testimony and documents capable of proving that Defendants knowingly supported or authorized the attacks, as *required* to establish liability. JA-8261-68 (verdict form summarizing liability elements); *see also* JA-8218-22, 8226 (jury charge on authorization and scope of employment), JA-8209-10 (willful blindness).

### A. The Exhibits Did Not Prove Responsibility for the Attacks.

No lay witnesses established knowing support for, or authorization of, the

attacks. Plaintiffs fail to explain how the exhibits they cite show Defendants' legal responsibility for the attacks absent the improper expert testimony:[2]

- Palestinian intelligence files,[3] which Plaintiffs offered primarily to highlight general statements about "security and morals." *E.g.*, JA-4695. These did not show legal responsibility. *See* JA-8413-14.

- Israeli court documents,[4] which post-dated the attacks and did not show Defendants' prior knowledge or authorization.

- IDF intelligence documents,[5] which the court should have excluded as inadmissible hearsay suffering from obvious credibility issues, but which Eviatar was allowed to vouch for as "100 percent accurate," JA-4443, and promised that he "corroborate[d] every word," JA-4433.

- Inflammatory passages from magazines published in Palestine,[6] which did not link Defendants to any specific attack, let alone provide any indicia of knowing support or authorization.

- Documents regarding the PA's old welfare program.[7] Even the district court recognized that post-attack payments did not create legal responsibility. JA-7654-55 ("There's no evidence here that anyone said okay, this guy is a terrorist, and somebody else said okay, yeah, so let's give him some money" or that "those decisions were made in contemplation of any individual terrorist act that was committed"); SPA-35 n.11 ("[a] showing of support—even post-attack financial support to the families of terrorists—is not sufficient to demonstrate that Defendants were somehow responsible for the attacks").

Plaintiffs' boldest claim is that "internal PA documents show[] defendants' orchestration of attacks." Pl. Br. 5 & n.14. But the five exhibits they cite show no

---

[2] Plaintiffs cite exhibits not found on the docket (Ex. 137), that were excluded (Ex. 201; *see* JA-5400-01), or that are just pictures of people (Exs. 1129, 1170, 1178).

[3] Pl. Br. 5 n.12 (listing 22 exhibits), and Ex. 146.

[4] Pl. Br. 2 n.3 (listing exhibits), *id.* at 4 n.10 (listing exhibits).

[5] Exs. 626, 631, 826, 829-30.

[6] Pl. Br. 5 n.15 (listing 11 exhibits).

[7] Pl. Br. 5 n.11 & 13 (listing dozens of exhibits), and Exs. 51, 962-63, 1143.

such thing. *Id*. Exhibit 233 demonstrates a PA official did *not* know the identity of the attacker until afterward, and that even her family did *not* know she was going to commit the attack beforehand. Asking the family not to announce the attacker's identity after learning about it himself does not show liability. *Id*. Shrenzel admitted this did not show "prior knowledge of the attack," but *still* gave his "professional" guess that "it's more likely than not that [the official] had prior knowledge." JA-5716 (over objections). Plaintiffs also heavily rely on Exhibit 831, a PA intelligence letter on "Fatah Armed Men" in Tulkarm. That letter, however, shows no connection to any attack at issue, much less PA assistance to any such attack. The PA is *supposed* to track armed groups—such investigations are not proof of support.

Similarly, Exhibit 1060 describes an arrest of a criminal "in cooperation with" the PA. JA-5292. The document does not support liability. Shrenzel turned the document on its head, speculating the arrest was a "sham" because the individual was later released. JA-5294-95. Arrests and releases happen constantly, and do not make a government liable for later crimes. Finally, Exhibits 962 and 963 show payments to the AAMB nearly a year before the June 19, 2002 attack and prior to AAMB's designation as an FTO. No evidence connected those payments to an attack, nor was there any indication what the money was used for. *See* JA-8412.

Each of these five exhibits was admitted through Eviatar and Shrenzel, who claimed they proved Defendants' knowledge and assistance. Without expert

- 5 -

vouching and speculation, the exhibits did not show that Defendants knowingly supported or authorized the attacks. *The same could be said for the remaining "liability" exhibits cited in Plaintiffs' brief*, most of which were introduced through Eviatar[8] and Shrenzel[9]: they did not prove liability absent improper testimony.

Plaintiffs' block quote from closing argument emphasizes this very point. Pl. Br. 7. Without expert speculation and narratives, the "convictions," "confessions," "government reports," "raw documents," and "binders" of exhibits would not have been admitted—and would have been meaningless even if they were. *Id*. Similarly, without the improper testimony, Plaintiffs' counsel would have no basis to argue that "[a]nytime that there's martyr payments, you can check yes" as to material support. JA-8110; *see also* JA-8104-08, 8134-36. The district court, of course, rejected Defendants' requested curative instructions on the expert issues, ECF 650 at 4 (citing JA-7915-18, 8128-31, 10701-03, 10690-91), and its ultimate instruction on expert witnesses (JA-8201-02) was altogether cursory and forgettable.

---

[8] Eviatar exhibits: pictures (1129, 1170); court records (357, 452); U.S. documents (496, 537, 1142); payments (41-2, 61, 71-3, 86, 512, 831, 962-63, 1143); others (147, 151, 164-65, 935, 1035, 1037); Israeli documents (354, 384, 428, 451, 626, 631, 826, 829-30, 889).

[9] Shrenzel exhibits: picture (1178); court records (322, 356, 375, 451, 889); videos (196, 372); U.S. documents (496, 537, 1142); payments (3, 8, 9, 26, 36B-C, 62-3, 66, 84-5, 87-8, 109, 962-63); others (14, 17, 19, 22-3, 49, 58, 60, 83, 95-6, 116, 127, 129-33, 135-36, 139-40, 142, 146, 148, 153, 159, 175, 178, 198, 200, 233, 338, 354, 465, 467, 477, 626, 829, 935-36, 949, 965, 1060, 1194-95).

## B.     Plaintiffs' Other Arguments Fail.

Plaintiffs do not dispute that their own lay witnesses did not address liability. *See* ECF 650 at 1-2 & n.1-3. Instead, Plaintiffs rely on three defense and non-party witnesses, focusing on testimony that Defendants agreed to release Barghouti from custody. But whether the PA released Barghouti is not evidence the PA was responsible for Barghouti's later attacks. If this were the case, governments would be liable for crimes committed by released prisoners.[10] The remainder were generalized opinions, as Plaintiffs' counsel characterized, that such payments did not *prevent* terrorism (Pl. Br. 6)—not evidence of knowing support or authorization.

Plaintiffs' waiver arguments also fail. Their lead claim (Pl. Br. 1) was itself forfeited,[11] and Defendants preserved their methodology challenge. ECF 650 at 13-15. The court repeatedly refused to exclude the experts, including just two pages after Plaintiffs' own citation. JA-3644-49. It promised to review specific objections, but it always held that the experts would testify. *Id*. Plaintiffs also appear to argue waiver because Defendants did not address a ruling denying summary judgment. Pl. Br. 5. That decision was not appealable, and expressly assumed all evidence in their Rule 56.1 proffer was admissible. That ruling has nothing to do with Plaintiffs' failure of proof at trial.

---

[10] For example, a document Plaintiffs cite (Ex. 138) shows Israel "released" Walid Anjas "in the prisoners' exchange deal" with Hamas. Doc. 927-67 at 8.

[11] Defendants argued for exclusion in their initial brief in 2015. ECF 87 at 19-21, 50-66. Plaintiffs' response did not raise waiver or plain-error. ECF 96 at 53-68.

- 8 -

Dated: November 17, 2025

Respectfully submitted,

SQUIRE PATTON BOGGS (US) LLP

*/s/Gassan A. Baloul*

Gassan A. Baloul
Mitchell R. Berger
2550 M Street, NW
Washington, DC  20037
Telephone: (202) 457-6000
Facsimile:  (202) 457-6315

*Counsel for Defendants-Appellees*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned certifies that the foregoing supplemental reply brief complies with this Court's Order dated October 27, 2025, because it is no more than seven pages and has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman, 14-point font.

*/s/Gassan A. Baloul*
*Counsel for Defendants-Appellees*

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2025, the foregoing document was filed with the Clerk of the Court and served via CM/ECF upon all counsel of record.


Dated: November 17, 2025                     */s/Gassan A. Baloul*
                                              *Counsel for Defendants-Appellees*